GORDON SILVER
MICHAEL N. FEDER (NV Bar No. 7332)
Email:  mfeder@gordonsilver.com
JENNIFER KO CRAFT (NV Bar No. 8038)
Email:  jcraft@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone:  702.796.5555
Facsimile:  702.369.2666

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
HOWARD WEITZMAN (to be admitted *pro hac vice*)
  hweitzman@kwikalaw.com
GREGORY KORN (to be admitted *pro hac vice*)
  gkorn@kwikalaw.com
JONATHAN STEINSAPIR (to be admitted *pro hac vice*)
  jsteinsapir@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys Specially Appearing
for All Defendants

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA, SOUTHERN DIVISION

| | |
|---|---|
| HOLOGRAM USA, INC., et al.,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>PULSE ENTERTAINMENT, INC., et al.,<br><br>　　　　Defendants. | Case No. 2:14-cv-00772<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Trial Date:　　None Set |

10386.00001/214774.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiffs have not come close to meeting the standard for imposing a mandatory injunction (on less than 24 hours' notice and without the benefit of a full opportunity for Defendants to be heard).  First, Plaintiffs cannot show that they have a likelihood of success on the merits of their claims for patent infringement.  Indeed, they have not even tried to make that showing.  As explained below, in order to prove patent infringement, the patentee must show that the accused infringer's product or process meets every element of at least one claim of the patent.  Yet Plaintiffs' papers do not even discuss a single claim of the patents, let alone attempt to compare those claims to Defendants' processes.  On that basis alone, the request for extraordinary relief must be denied.

Second, and even setting aside the complete lack of any likelihood of success on the merits, Plaintiffs cannot show irreparable harm.  If Defendants are correct, and Plaintiffs infringe their patents, Defendants have adequate remedies-at-law: they can obtain actual damages in the form of lost profits or price erosion, or (if they cannot prove actual damages), they will be entitled to a reasonable royalty.  There is no reason why such remedies do not completely suffice in a case like this, where Plaintiffs admit that they are attempting to license their allegedly patented technology to others (and indeed, Defendants are licensed, but that is an issue for another day).

Third, the balance of harms tips sharply in favor of Plaintiffs.  The hologram at issue here has been in planning for some time now.  The press has reported on rumors of it for weeks.  And Plaintiffs themselves were specifically told over a month ago that Defendants were planning to launch a Michael Jackson hologram at the same time Michael's new album was released.  See Ex. A hereto.  And it has been public knowledge for since the end of March that Michael's album was being released this week.  See Ex. B hereto. Yet Plaintiffs have sat on their hands and did

not do a thing until just before 7 p.m. Pacific Time last night, when they advised that they were seeking this injunction. Even then, Plaintiffs chose to wait until after 1 a.m. this morning to serve their papers.

Simply put, Defendants have not met their burden for the extraordinary relief they seek, and they should not be rewarded for their last-minute, ambush tactics.

## II.   PLAINTIFFS FAIL TO CARRY THEIR BURDEN TO PROVE A LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs' papers make no serious attempt to show that they have a likelihood of success on the merits of their claim for infringement of the two patents at issue. On a motion for a preliminary injunction, it is the patentee's burden to "make[ ] a 'clear showing' that the asserted patent is not invalid and that it is infringed, then the patentee is entitled to a presumption of irreparable harm." *Novo Nordisk of N. Am., Inc. v. Genentech, Inc.*, 77 F.3d 1364, 1367 (Fed. Cir. 1996). Plaintiffs have not even *attempted* to make this showing. Rather, they simply state – with no analysis of *any* claim of *either* patent – that "Defendants are using the Musion Eyeliner technology encompassed by the '519 and '212 patents to create a holographic projection of Michael Jackson." (Ex Parte App. at 10:19-21.)

An infringement analysis requires quite a bit more than a *mere assertion* that an accused infringer is "using … technology encompassed by" a relevant patent. As the Court undoubtedly knows, a U.S. Patent consists of draws, and a written description describing the alleged inventsion. 35 U.S.C. § 112(a). The patent then concludes with one or more claims. *Id.* § 112(b). The *claims* of the patent "define the patent owner's property rights." *Hoechst-Roussel Pharmaceuticals, Inc. v. Lehman*, 109 F.3d 756, 759 (Fed. Cir. 1997).

A patent is infringed "if at least one claim of an asserted patent reads on a product or process that the accused infringer has introduced into the U.S. marketplace." *Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1186 (Fed. Cir. 2014). To assess whether a claim is infringed requires a two-step process:

"First, the court determines the scope and meaning of the patent claims asserted ... [Secondly,] the properly construed claims are compared to the allegedly infringing device." *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). To prove infringement, the Plaintiffs would have to show that "the accused product or process meets *every element or limitation* of a claim." *Rohm and Haas Co.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997) (rejecting "evidence" of conclusory opinion to show infringement). *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).

The particular patents at issue here have 15 claims and 18 claims, respectively. (Complaint, Ex. A ('519 patent, cols. 4-6), Ex. B ('212 patent, cols. 9-12).) Yet Plaintiffs do not specifically discuss *a single claim* of the patents, let alone how Defendants' accused hologram could possibly meet *every element* of a particular claim. "Of course, whether performed at the preliminary injunction stage or at some later stage in the course of a particular case, infringement … analyses must be performed on a claim-by-claim basis." *Amazon.com, Inc. v. Barnesandnoble.com, Inc*., 239 F.3d 1343, 1351 (Fed. Cir. 2001). Plaintiffs' complete failure to even discuss the actual claims of their patents—let alone compare the claims to the accused hologram—speaks volumes about the "merits" of their case.

Because Plaintiffs have not even tried to show that Defendants are infringing a single claim of their patents, they have utterly failed to meet *their affirmative burden* of making a "clear showing" that their patents are infringed. *Novo Nordisk*, 77 F.3d at 1367. Plaintiffs have accordingly not shown a likelihood of success on the merits, and their injunction should be denied on that basis alone. *Munaf v. Geren*, 553 U.S. 674, 690 (2008) ("A preliminary injunction is an 'extraordinary and drastic remedy' … a party seeking a preliminary injunction must demonstrate, among other things, 'a likelihood of success on the merits.'").

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

## III. PLAINTIFFS FAIL TO DEMONSTRATE A LIKELIHOOD OF IRREPARABLE HARM

Like their deficient showing of infringement, Plaintiffs fail to present a single piece of evidence that a <u>single</u> performance of a holographic Michael Jackson at Sunday's Billboard Music Awards will irreparably harm their alleged patent portfolio or business. The claim of irreparable harm is based entirely on the declaration of Plaintiffs' principal, Alkiviades David, whose assertions are speculative, self-serving, and not the least bit credible.

Following the U.S. Supreme Court's seminal decision in *eBay Inc. v. MercExchange*, 547 U.S. 388 (2006), the Federal Circuit Court of Appeals concluded that the presumption of irreparable harm, which at one time followed from a finding of likelihood of success on the merits, is defunct in cases alleging patent infringement. The Court stated in a definitive opinion in 2011: "We take this opportunity to put the question to rest and confirm that *eBay* jettisoned the presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief." *Robert Boesch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011).

Plaintiffs' application correctly recognizes that, in light of the absence of a presumption of irreparable harm, a "plaintiff seeking a preliminary injunction must demonstration that irreparable injury is <u>likely</u> in the absence of preliminary relief." *Aevoe Corp. v. Shenzhen Membrane Precise Electron Ltd.*, 2012 WL 1532308 *5 (D. Nev. 2012) (emphasis added). They ignore, however, the word "likely." A "[m]ere possibility of harm is not enough." *Id.*

Nor does unfounded speculation suffice to prove a likelihood of irreparable harm. *See Precision Links Inc. v. USA Products Group,* 527 Fed.Appx. 852, 857 (Fed. Cir. 2013) (holding that the plaintiff's "theory of irreparable harm was based on pure speculation by its owner," and that "the district justifiably held that speculation plainly insufficient to warrant the exceptional remedy of a preliminary

injunction").

Plaintiffs predicate their claim of irreparable harm on Mr. David's declaration, who states (under oath):

> The acts of the Defendants have already caused me significant harm. By advertising and promoting a Michael Jackson holographic image at the Billboard Award Show, Defendants have created significant confusion in the marketplace. That confusion has diluted the value of the Hologram USA brand by causing confusion among potential customers. The actions of the Defendants have interfered with numerous potential deals.

David Decl. ¶ 12. These conclusory assertions are the sum total of Plaintiffs' "evidence" of irreparable harm.

Mr. David's assertions of "significant confusion in the marketplace" are entirely without foundation and are speculative. Not a single instance of confusion is cited, nor does Mr. David explain how such "significant confusion in the markeplace" could have been created in just a few days since the holographic performance of Michael Jackson was publicly announced. Mr. David offers no examples of the "potential customers" who he claims have been confused, nor does he explain (let alone provide evidence to support) the allegation that Hologram USA's brand has been diluted.

It is curious that Mr. David was able to ferret out all of the consumer confusion and dilution he attests to under oath between the "morning of May 15, 2014" (David Decl. ¶ 7), when he purportedly learned time Defendants' intended use of holographic technology, and Plaintiffs' filing of extensive papers less than a day later. He fails to explain how he verified all of this supposed consumer confusion and dilution in less than one day as needed to provide a declaration under penalty of perjury.

Likewise, Mr. David declares under oath that "Defendants have interfered

1 with numerous potential business deals" but tellingly offers no specifics concerning those deals and fails to explain how "numerous" deals were hindered in the less than one day since he claims to have learned of Defendants' plans.

Comparable assertions throughout Plaintiffs' memorandum are likewise without factual support.  Plaintiffs argue that "Plaintiffs' goodwill and brand will have been forever diluted by the enormous confusion Defendants' infringement will create among consumers and the viewing public as to the true owner of the holographic technology." App. at p. 9:18-20.  Plaintiffs do not explain why this "viewing public" is relevant to the inquiry.  Needless to say, the average television viewer is not the person to whom Plaintiffs market their expensive products and services.

Further, Plaintiffs do not and cannot explain how the "viewing public" would know one way or the other who is responsible for the holographic technology that is used on Sunday evening at the Billboard Awards.  All of this will be transparent to viewers, who will know nothing of the company responsible for providing the technology at issue.

Even if someone is apprised that certain of Defendants (e.g., Pulse Entertainment and/or John Textor) are responsible for providing the holographic technology used a the Billboard Awards, no evidence is offered to prove that this causes irreparable harm.  To the contrary, Plaintiffs <u>are in the business of licensing their patented technology to others</u>.  Plaintiffs boast, for example, that their Musion technology was famously used by third-party Digital Domain for production of the holographic image of rapper Tupac Shakur at the 2012 Coachella Music Festival. App. p. 5.  Ostensibly, Plaintiffs do not contend that Digital Domain's licensed use of their technology for the Coachella production caused irreparable harm, that it created confusion in the marketplace, or that it diluted the value of their brand.  And Plaintiffs do not explain why the result here would be any different.  Because Plaintiffs are in the business of licensing their technology, all they can claim to have

lost—assuming, of course, that their technology is even being used in this instance, which is unproven and contested—is the value of a license.  It is axiomatic that such "monetary harm does not constitute irreparable harm sufficient to support a preliminary injunction."  *Aevoe*, 2012 WL 1532308 *5.

This is all the more true given that Plaintiffs do not seek to enjoin continuing conduct by Defendants.  In the several cases Plaintiffs cite in which courts preliminarily enjoined accused patent infringers, those accused infringers were allegedly using the patented technology on an ongoing basis.  They were threatening to compete with the patentees indefinitely.  Here, by contrast, Plaintiffs seek to enjoin a single event in which they believe—but do not come close to proving—that their technology will be used.  In this circumstance, Plaintiffs' various concerns about price erosion, the dilution of their goodwill, and consumer confusion are untenable.

The absence of irreparable harm is further evidenced by Plaintiffs' delay in filing suit, which they misrepresent to the Court in both pleadings and declarations.  Mr. David declares under oath that on "[o]n the morning of May 15, 2014," he was "extremely surprised to learn through media reports" that his technology would be used to produce a Michael Jackson hologram.  David Decl. ¶ 7.  The evidence supports, however, that Mr. David and/or his colleagues had been discussing the holographic Michael Jackson performance for weeks before May 15.  An April 3, 2014 email from Defendant John Textor to Mr. David discusses at length that Pulse Entertainment was preparing to assist the Michael Jackson estate with a "virtual Michael" that would be used to support the marketing of a new album.  *See* Exh. A hereto.

In addition, Exhibit D to Mr. David's declaration is an email chain between

Textor and Mr. David's business partner, Giovanni Palma.[1]  In an April 8, 2014 email, Mr. Textor mentions to Mr. Palma "our big event together in a few weeks." David Decl., Exh. D (Dkt. No. 4, p. 25).  Then in an April 11, 2014 email, a second representative of Defendant Pulse Entertainment, Frank Patterson, emailed Mr. Palma to discuss certain elements of "presenting our new virtual artist," and added: "I'm running out of time and do not want to be unprepared when the Estate asks me to jump!"  The "Estate," of course, was a reference to the Michael Jackson estate.

Manifestly, Plaintiffs knew <u>before</u> May 15 of Defendants' intent to present a holographic performance of Michael Jackson and delayed filing suit until the last business day before the Sunday performance as a tactical maneuver.  On this basis alone, the request for a temporary restraining order should be denied.  *See Halo Elec. v. Pulse Elec.*, 2013 WL 3043668 *6 (D. Nev. 2013) ("[D]elay in bringing an infringement action and seeking a preliminary injunction are factors that could suggest that the patentee is not irreparably harmed by the infringement.") (inner quotations and citation omitted).

## IV. THE BALANCE OF EQUITIES TIPS DECIDEDLY IN DEFENDANTS' FAVOR

The balance of equities tips overwhelmingly in Defendants' favor.  For reasons described above, this Court cannot have the slightest confidence that Defendants will be found to infringe Plaintiffs' patents.  And even if they are found to infringe, Defendants' use of Plaintiffs' technology at a single performance is compensable by monetary damages.  Plaintiffs, who are in the business of licensing their technology, will suffer no unfair prejudice in that event.

Conversely, a temporary restraining order by this Court would impose an incredible hardship upon Defendants, who are just two days from presenting the

---

[1] *See* David Decl., ¶ 4 (describing Mr. Palma's role in Hologram USA).

Billboard Music Awards to an international television audience. An injunction would irreparably harm the show, causing damages to all of Defendants that would be difficult to quantify. Especially given Plaintiffs' gamesmanship in in waiting until the last court day before the Billboard Music Awards to file this application, which has hindered Defendants' ability to fully respond, the equities strongly favor a denial of injunctive relief.

## V. STAY OF RELIEF

If the Court is inclined to grant injunctive relief, Defendants respectfully request that it stay entry of its Order for a sufficient amount of time to permit Defendants to seek emergency relief with the Federal Circuit Court of Appeals.

DATED: May 16, 2014            Gordon Silver

                               By: /s/ Michael N. Feder
                                   Michael N. Feder
                                   Attorneys Specially Appearing for All Defendants

DATED: May 16, 2014            KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP

                               By: /s/ Howard Weitzman
                                   Howard Weitzman
                                   Attorneys Specially Appearing for All Defendants