CRAIG A. NEWBY (NSBN 8591)
McDONALD CARANO WILSON LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV  89102
Telephone:     702.873.4100
Facsimile:      702.873.9966
cnewby@mcdonaldcarano.com

RYAN G. BAKER (to be admitted *pro hac vice*)
BAKER MARQUART LLP
10990 Wilshire Boulevard
Fourth Floor
Los Angeles, CA  90024
Telephone:   424.652.7800
Facsimile:   424.652.7850
rbaker@bakermarquart.com

*Attorneys for Plaintiffs*
*Hologram USA, Inc., Musion Das Hologram*
*Limited and Uwe Maass*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HOLOGRAM USA, INC., a Delaware corporation; MUSION DAS HOLOGRAM LIMITED, a corporation organized under the laws of the United Kingdom; and UWE MAASS, an individual, | Case No.:  2:14-cv-00772-GMN-NJK |
| Plaintiffs, | **FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL** |
| v. | |
| PULSE EVOLUTION CORPORATION, a Nevada corporation; PULSE ENTERTAINMENT CORPORATION, a Delaware corporation; JOHN C. TEXTOR, an individual; DICK CLARK PRODUCTIONS, INC., a Delaware corporation; JOHN BRANCA and JOHN MCCLAIN, Executors of the Estate of Michael J. Jackson; MJJ PRODUCTIONS, INC., a California corporation; MUSION EVENTS LTD., a United Kingdom private company; MUSION 3D LTD., a United Kingdom private company; WILLIAM JAMES ROCK, an individual; IAN CHRISTOPHER O'CONNELL, an individual; and DOES 1 through 10, | |
| Defendants. | |

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE • SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

**INTRODUCTION**

1. In 1862, John Pepper and Henry Dircks invented "Pepper's Ghost," an illusion technique, which, over the last 150 years, has appeared in movies, concerts, magic shows and amusement park rides. Many of us have sat with the original Pepper's Ghost in Disneyland's Haunted Mansion. Today, thanks to technology patented in over 180 countries (the "Patented Technology"), a new incarnation of Pepper's Ghost has appeared. The Patented Technology renders three-dimensional images virtually indistinguishable from real-life bodies.

2. Plaintiff Hologram USA acquired exclusive rights to the patented technology directly from plaintiffs Musion das Hologram ("MDH") and Uwe Maass, holders of the relevant patents. Hologram USA was created to specifically promote and publicize the type of three-dimensional entertainment only made possible by the Patented Technology. Recognizing Plaintiffs' exclusive rights, certain Defendants approached Plaintiffs in April and May of 2014, attempting to license those rights. Plaintiffs refused to grant Defendants any right to the Patented Technology.

3. Having failed in their attempts to acquire any right to the Patented Technology, Defendants elected to ignore the rights they previously sought to obtain. On or about May 15, 2014, it was reported in the press that Defendants planned to misappropriate the Patented Technology and infringe Plaintiffs' patents by creating a hologram of Michael Jackson who would "dance across the stage" at the Billboard Music Awards, on May 18, 2014. On that day, without any valid authorization, Defendants employed the Patented Technology to produce a three-dimensional image of Michael Jackson during the international television broadcast of the Billboard Music Awards. Plaintiffs' infringing act garnered significant attention around the globe and will continue to do so, as the performance is disseminated online and through other popular media sources.

4. Plaintiffs have never authorized any of the Defendants to use the Patented Technology. Yet Defendants used that technology on May 18, 2014, to conjure a posthumous performance by Michael Jackson for an audience of millions. Defendants' willful infringement has damaged, and continues to greatly damage, Plaintiffs. Plaintiffs seek the assistance of this Court to recover damages and enjoin Defendants' wrongful conduct.

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE · SUITE 1200 · LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 · FAX (702) 873-9966

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE • SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

## THE PARTIES

5.      Plaintiff Hologram USA, Inc. ("Hologram USA") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 301 N. Canon Drive, Beverly Hills, California 90210.  Hologram USA has licensed exclusive rights to practice U.S. Patent No. 7,883,212 (the "'212 patent") and U.S. Patent No. 5,865,519 (the "'519 patent," and, along with the '212 patent, the "Patents At Issue") from MDH and Maass.

6.      Plaintiff Maass is a citizen of Germany and an individual residing in Dubai in the United Arab Emirates.  Plaintiff Maass holds the '519 patent.  A true and correct copy of the '519 patent is attached as Exhibit A.

7.      Plaintiff MDH is a corporation organized and existing under the laws of the United Kingdom, having a principal place of business at 90 High Holborn, London, United Kingdom WC1V 6XX.  Plaintiff MDH holds the '212 patent.  A true and correct copy of the '212 patent is attached as Exhibit B.

8.      On information and belief, defendant Pulse Evolution Corporation is a corporation organized and existing under the laws of the State of Nevada, having a principal place of business in Port St. Lucie, Florida.

9.      On information and belief, defendant Pulse Entertainment Corporation is a corporation organized and existing under the laws of State of Delaware, having a principal place of business in Hobe Sound, Florida.  Pulse Evolution Corporation and Pulse Entertainment Corporation are referred to collectively as "Pulse."

10.      On information and belief, defendant John C. Textor is a citizen of the United States residing in Florida.  He is the Chairman of Pulse Evolution Corporation and Pulse Entertainment Corporation.  Textor was personally involved in infringing the Patents At Issue, and caused, urged, encouraged, and aided in the direct infringement.  Among other things, Textor was personally present at the 2014 Billboard Music Awards where Plaintiffs' patented technology was misappropriated to create a holographic performance by Michael Jackson.  Textor has also attempted to claim credit for a 2012 three-dimensional rendering of rapper Tupac Shakur at the Coachella Valley Music Festival.  But Textor had nothing to do with that performance, which had been

McDONALD·CARANO·WILSON LLP
2300 WEST SAHARA AVENUE·SUITE 1200·LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 · FAX (702) 873-9966

1    properly licensed by Digital Domain, Inc. ("Digital Domain"), a company from which Textor was

2    fired.  Textor has been credited with leading Digital Domain's collapse.  Not surprisingly, Digital

3    Domain has recovered since parting ways with Textor.

4           11.     On information and belief, defendant Dick Clark Productions, Inc. ("Dick Clark

5    Productions") is a corporation organized and existing under the laws of the State of Delaware,

6    having a principal place of business in Santa Monica, California.  Dick Clark Productions is the

7    producer of the 2014 Billboard Music Awards, which was held at the MGM Grand Hotel & Casino

8    in Las Vegas on May 18, 2014.

9           12.     On information and belief, defendants John G. Branca and John McClain are

10   individuals residing in Los Angeles, California.  Branca and McClain have been appointed as the

11   Executors of the Estate of Michael J. Jackson (the "Estate").  They are sued in that capacity.

12          13.     On information and belief, defendant MJJ Productions, Inc. is a corporation organized

13   and existing under the laws of California, having a principal place of business in Hollywood,

14   California.

15          14.     On information and belief, defendant Musion Events Ltd. is a private company

16   organized and existing under the laws of the United Kingdom, having a principal place of business

17   in Leicester, England.

18          15.     On information and belief, defendant Musion 3D Ltd. is a private company organized

19   and existing under the laws of the United Kingdom, having a principal place of business in London,

20   England.  Musion 3D Ltd. and Musion Events Ltd. are referred to collectively as "Musion."

21          16.     On information and belief, defendant James Rock is a citizen of the United Kingdom

22   residing in West Midlands, England.  He is a director of Musion Events Ltd. and Musion 3D Ltd.

23   Rock was personally involved in infringing the Patents At Issue, and caused, urged, encouraged, and

24   aided in the direct infringement.  Among other things, Rock was personally present at the 2014

25   Billboard Music Awards where Plaintiffs' patented technology was misappropriated to create a

26   holographic performance by Michael Jackson.  He also was present during Plaintiffs' inspection of

27   Defendants' system after the conclusion of the awards show.

28          17.     On information and belief, defendant Ian O'Connell is a citizen of the United

Kingdom and residing in London, England. He is a director of Musion Events Ltd. and Musion3D Ltd. O'Connell was personally involved in infringing the Patents At Issue, and caused, urged, encouraged, and aided in the direct infringement.

18. The true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued in this complaint as DOES 1-10 (collectively, the "Doe Defendants") are presently unknown to Plaintiffs, who therefore sue them by fictitious names. Plaintiffs will amend the complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and therefore allege that all Defendants, which include the Doe Defendants, were or are, in some way or manner, responsible for and liable to Plaintiffs for the events, happenings, and damages alleged in this complaint.

19. Plaintiffs are informed and believe and thereon allege that at all times mentioned each Defendant was the agent, servant, employee, co-venturer, representative, or co-conspirator of each of the other defendants, and acted with the knowledge, consent, ratification, authorization and/or at the direction of each defendant, or is otherwise responsible in some manner for the occurrences alleged in this complaint.

## JURISDICTION AND VENUE

20. This is a civil action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 101, *et seq.*

21. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §§ 1331 and 1338.

22. This Court has personal jurisdiction over Defendants for at least the following reasons: (i) Defendants regularly do business or solicit business, engage in other persistent courses of conduct, and/or derive substantial revenue from products and/or services provided to individuals in this District and in this State; (ii) and Defendants have purposefully established substantial, systematic, and continuous contacts with this District and expect or should reasonably expect to be in court here. Thus, this Court's exercise of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice.

23. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)-(c) and

1   1400(b) because Defendants do business in this District, Defendants are subject to personal

2   jurisdiction in this District and a substantial portion of the events giving rise to the claims for relief

3   stated in this Complaint occurred in this district.

4   **FACTUAL ALLEGATIONS**

5   **A.     The Patented Technology**

6          24.    The Patented Technology is an amazing technique of projecting video to create the

7   illusion of life-size, full color, 3D moving images.  All of the images used in this system are three-

8   dimensional, but are projected as two-dimensional images into a three-dimensional stage set.  This

9   technology is capable of creating the appearance of life-size, three-dimensional moving images on

10   stage that are nearly indistinguishable from real people.

11          25.    Maass invented the Patented Technology after researching an old stage trick called

12   "Pepper's Ghost," originally developed in the 1800s.  This illusion was capable of creating the

13   illusion of a ghost on stage.  The trick relied, in part, on a heavy pane of glass positioned on stage to

14   reflect the image of an actor positioned off-stage.  This trick is still used today, such as at Disney's

15   Haunted Mansion.  While Pepper's Ghost is a relatively simple technique for creating an illusion, it

16   is not capable of producing large effects that could move around on a large stage.  Before the

17   development of the Patented Technology, people had to use technology that relied on 3D glasses to

18   create the illusion of a large three-dimensional moving image on stage or on screen.

19          26.    After studying Pepper's Ghost, Maass invented a proprietary high definition video

20   projection system using a transparent smooth foil, capable of creating the illusion of life-size and

21   three-dimensional images that may move around on a large stage.  Importantly, the use of

22   transparent smooth foil is practical to transport and setup on an existing stage and safe in

23   comparison to the glass traditionally used in Pepper's Ghost.  The invention also eliminated the need

24   for using 3D glasses.

25          27.    The Patented Technology is known for producing high quality holographic-like

26   projection systems.  In 2006, it was used to create a "live" performance by the animated band

27   Gorillaz at the Grammy Awards.  Subsequently, in 2012, pursuant to a license it had obtained from

28   the patent holders at the time, Digital Domain used the Patented Technology at the Coachella Music

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE • SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

1  Festival to produce a life-size, three-dimensional moving image of deceased rapper Tupac Shakur

2  performing on stage with Dr. Dre and Snoop Dogg.  Although defendant Textor continues to claim

3  credit for the Shakur performance, he was not involved in its production; nor was he involved in

4  Digital Domain's licensing of the right to practice the Patents At Issue, which was required for that

5  performance.  It was only after that performance lead to a surge in Digital Domain's stock price that

6  Textor started to associate himself with the Shakur hologram.

7         28.     In February 2014, Hologram USA outbid Digital Domain to acquire exclusive rights

8  to the Patented Technology.  Hologram USA entered into an agreement with Maass and MDH to

9  acquire exclusive rights to the Patented Technology.  As a result of the parties' agreement,

10  Hologram USA has licensed the exclusive right to exploit the Patented Technology in all markets in

11  the United States and Canada, with the exception of adult entertainment.  Thus, Hologram USA has

12  the exclusive right to use the Patented Technology and to sublicense its use to third parties in those

13  territories for use in performances such as the performance at issue in this case.

14  **B.    The 2014 Billboard Music Awards**

15         29.     On Sunday, May 18, 2014, the Billboard Music Awards aired live on ABC from the

16  MGM Grand Garden Arena in Las Vegas, Nevada.  The televised awards show included *live*

17  performances by some of the most popular and up-and-coming entertainers in the world, including

18  Miley Cyrus, Ricky Martin, Jennifer Lopez, Pitbull, 5 Seconds of Summer, Florida Georgia Line,

19  Jason Derulo, Imagine Dragons, Luke Bryan, John Legend, OneRepublic, Miranda Lambert and

20  Carrie Underwood.  Most notably, for the first time in history, the awards show also included a

21  "live" performance by a hologram: The deceased King of Pop, Michael Jackson.

22         30.     Ten days before the awards show, on May 8, Billboard issued a press release in which

23  it promised "to be one the year's stand-out music events."  Although Billboard did not disclose that a

24  hologram-like image of Michael Jackson would perform at the awards ceremony, it promised to

25  "raise the bar even higher with a world premier experience featuring the late King of Pop."  It

26  announced that "[t]he Estate of Michael Jackson created the spot, which will present the superstar

27  'like you've never seen him before.'  It's sure to be a thriller, but the finer details remain under lock-

28  and-key."  *See* <u>Michael Jackson to Unleash World Premiere Experience at Billboard Music Awards,</u>

Billboard (May 8, 2014, 6:00 AM), http://www.billboard.com/articles/events/bbma-

2014/6077688/michael-jackson-to-unleash-world-premiere-experience-at-billboard.

31.    Several days later, beginning on or about May 15, media outlets began to report on "a

rumor swirling that a Michael Jackson hologram will appear at the 2014 Billboard Music Awards"

for a "performance" of a new, never-before released Jackson song called "Slave to the Rhythm."

*See* Carl Williott, Michael Jackson "Hologram" Rumored to Appear at 2014 Billboard Music

Awards, Idolator (May 15, 2014), http://www.idolator.com/7518371/michael-jackson-hologram-

billboard-music-awards-rumor.  Another report stated that "[a] hologram of Michael Jackson will

reportedly dance across the stage at Sunday's Billboard music awards.  The digital rendering of the

late pop star has been booked to perform one of his 'new' songs, Slave to the Rhythm."  *See* Sean

Michaels, Will Michael Jackson's Hologram Dance at the Billboard Music Awards?, The Guardian

(May 15, 2014, 5:45 AM), http://www.theguardian.com/music/2014/may/15/michael-jackson-

hologram-billboard-music-awards-2014.  On information and belief, Textor circulated the Michael

Jackson "rumor" to generate publicity for himself and the other Defendants.

32.    The highly anticipated Jackson hologram finally appeared half-way through the

Billboard Music Awards on May 18.  After an introduction by entertainers Ludacris, Brad Paisley

and Kesha, the performance began with a synchronized SWAT Team dancing until a curtain rose to

reveal the late King of Pop sitting on a throne.  Surrounded by live dancers, Jackson's hologram

sang "Slave to the Rhythm," lifted from his recent posthumous album "Xscape."   During the

performance, the hologram walked, danced, twirled, crouched and moonwalked around the stage.  It

was the biggest moment at the awards show.

33.    The Jackson performance catapulted the Billboard Music Awards into the top

television spot of the night, and made it the most-watched edition of the awards program in 13 years.

According to Nielson ratings, the program pulled in an average of 10.5 million viewers over the

course of the three-hour show.  *See* Phil Gallo, Billboard Music Awards Ratings Hit 13-Year High,

Billboard (May 19, 2014, 12:32 PM), http://www.billboard.com/articles/events/bbma-

2014/6092128/tv-ratings-billboard-music-awards-abc.  The show "reached the biggest audience

between 9 and 9:30 p.m., when 11.5 million viewers tuned in.  That half-hour saw the much-

tweeted-about performance by a hologram of the late Michael Jackson." Michael O'Connell, <u>TV Ratings: Billboard Music Awards Hit 13-Year High</u>, The Hollywood Reporter (May 19, 2014, 9:08 AM), http://www.hollywoodreporter.com/live-feed/tv-ratings-billboard-music-awards-705598.

34.    Indeed, the Jackson hologram was and continues to be a huge trending topic on social media. In the days following the performance, Jackson totaled over 80,000 Twitter members, an increase of over 700%. *See* Liv Buli, <u>The Pop King (Still) Rises: Social Legacy of Michael Jackson</u>, Forbes (May 20, 2014, 10:39 AM), http://www.forbes.com/sites/livbuli/2014/05/20/the-pop-king-still-rises-social-legacy-of-michael-jackson. Due in large part to the hologram, the 2014 Billboard Music Awards show "topped the Nielsen Twitter TV Ratings (NTTR) Weekly Top Ten Series and Specials list with 5.5 million event-related Tweets that were seen by a Unique Audience of 10.2 million people." *See* Dina Gachman, <u>2014 Billboard Music Awards Tops Nielsen Twitter Ratings</u>, Forbes (May 19, 2014, 3:35 PM), http://www.forbes.com/sites/dinagachman/2014/05/19/2014-billboard-music-awards-tops-nielsen-twitter-ratings. As of May 27, 2014, the official performance of the Jackson performance at the 2014 Billboard Music Awards had reached 11.9 million views on Vevo.

35.    News sources widely reported that many viewers were disappointed with the quality of the holographic performance. The *Los Angeles Times* wrote that "[t]he performance divided social media as fan reaction ranged from shock and awe to disappointment." Gerrick D. Kennedy, <u>Billboard Music Awards: Michael Jackson Thrills in Hologram</u>, Los Angeles Times (May 19, 2014, 4:00 AM), http://www.latimes.com/entertainment/music/la-et-ms-billboard-music-awards-20140519-story.html. Another news source explained that "many of the viewers were not very pleased with the hologram technology used to bring back MJ to life. They felt that it was done badly and found that it did not resemble him but just looked like his mere impersonator. And also the moonwalk was termed as dry by many." Priya Prakashan, <u>Billboard Music Awards 2014: King of Pop Michael Jackson Returns to Stage – Watch Hologram Video!</u>, India.com (May 19, 2014, 4:09 PM), http://www.india.com/showbiz/billboard-music-awards-2014-king-of-pop-michael-jackson-returns-to-stage-watch-hologram-video-60037. Likewise, a CNN article criticized the performance, stating that "[i]t was eerily interesting because the illusion was effective if you didn't watch too

closely or weren't obsessively familiar with Jackson's dancing, walking and appearance."  It wrote

that "[t]he dance moves were not really Michael Jackson's but apparently those of a stand-in

performer who recreated his steps for a computer that then laid on an image intended to replicate

Jackson.  But where was the swagger -- like Charlie Chaplin -- that characterized Jackson's cool

walk?"  Alan Duke, <u>Billboard Music Awards: MJ 'Hologram' and Kendall's Flub Get Buzz</u>, CNN

(May 19, 2014, 11:49 AM), http://www.cnn.com/2014/05/19/showbiz/billboard-music-awards; *see*

*also* Amy Phillips, <u>Creepy Michael Jackson Hologram Performs at Billboard Music Awards</u>,

Pitchfork (May 18, 2014, 10:37 PM), http://pitchfork.com/news/55246-creepy-michael-jackson-

hologram-performs-at-billboard-music-awards (stating that the hologram "performed many of MJ's

signature dance moves, albeit in a slightly awkward, jerky, off-beat way. It was weird.").

**C.    Defendants' Infringement and On-Going Wrongful Conduct**

36.    Even though Hologram USA owns exclusive rights to the Patented Technology in the

United States, Defendants did not obtain any authorization from Hologram USA or any of the other

Plaintiffs in this action to use the Patented Technology.  In fact, Hologram USA rejected a proposal

made by Textor and Pulse for a joint marketing agreement over the technology in April and May

2014 – days before Textor and Pulse used that technology without authorization to create the

Jackson hologram.

37.    In the aftermath of Jackson's performance at the Billboard Music Awards show,

many of the defendants in this case publicly claimed credit for the technology that created the

Jackson hologram.  According to one on-line article, "a *Billboard* spokesperson told *Mashable* that

the Estate of Michael Jackson and Pulse Evolution created the experience, which took longer than a

year and more than 100 people."  *See* Brian Anthony Hernandez, <u>Stunning Michael Jackson</u>

<u>Hologram Performs at Billboard Music Awards</u>, Mashable (May 18, 2014),

http://mashable.com/2014/05/18/michael-jackson-hologram-billboard-music-awards.  The Jackson

Estate also has publicly denied that Hologram USA or its majority owner, Mr. David, had anything

to do with the Jackson hologram.  *See* <u>Behind the Scenes Video and Message About Billboard</u>

<u>Illusion From MJ Estate</u>, LMJ (May 23, 2014),

http://www.legendarymichaeljackson.nl/news/behind-the-scens-video-and-message-about-billboard-

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE · SUITE 1200 · LAS VEGAS, NEVADA 89102
PHONE (702) 873-4100 · FAX (702) 873-9966

1    illusion-from-mj-estate.

2        38.    Shortly after the holographic performance, Textor and Pulse's Chief Executive

3    Officer, Frank Patterson, invited *USA Today* to its Bay Area studios in Northern California to

4    "explain the details behind Jackson's performance."  They apparently claimed in this interview that

5    "Pulse had refined a 19th-century magician's technique called Pepper's ghost," which Digital

6    Domain[1] had employed "to summon the ghost of slain rapper Tupac Shakur at the Coachella music

7    festival in 2012."  *See* Marco della Cava, <u>Meet the Conjurers of Michael Jackson's Ghost</u>, USA

8    Today (May 23, 2014, 12:32 PM), http://www.usatoday.com/story/life/music/2014/05/22/michael-

9    jackson-billboard-music-awards-illusion/9437881.  The technology referred to in the article above

10   that was used to summon the ghost of Tupac Shakur was undisputedly the Patented Technology; in

11   fact, Digital Domain employed the technology in that instance subject to a license it had obtained to

12   use the technology.  Pulse never obtained any license to the Patented Technology; nor does it hold

13   any related patent rights.  Plaintiffs hold all those rights.

14       39.    After Plaintiffs moved for a temporary restraining order in these court proceedings to

15   enjoin Defendants from using the Patented Technology to create the Jackson hologram at the

16   Billboard Music Awards, Defendants argued to this Court that they would not use the patented

17   technology to create the Michael Jackson hologram.  That argument is belied by the actual evidence.

18   Initially, Textor attempted to obtain rights to the Patented Technology in the months and days

19   leading up to the Billboard Awards because he knew those rights were required.  Further, at the

20   conclusion of the Billboard Music Awards show on May 18, pursuant to this Court's order, Plaintiffs

21   conducted an inspection of the technology employed by Defendants to create the hologram.  During

22   that inspection, Rock described how the technology worked and acknowledged that the set-up was

23   based on the Patents At Issue, admitting "that in a nutshell, is what the first patent [the '519 patent]

24   is about."

25       40.    Further, *USA Today* published an interactive diagram that it obtained from Pulse in an

26

27   ─────────────────────────

28   [1] Digital Domain was responsible for the production of the 2012 Shakur hologram.  Although Textor
     was CEO in early 2012, he had no role in that production.  He was fired from Digital Domain in
     2012.  In attempting to raise money for Pulse, Textor circulated an investor memorandum that
     falsely claimed a company called VFX had produced the Tupac hologram while Textor served as
     Chairman and CEO.  A true and correct copy of that investor memorandum is attached as Exhibit C.

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE • SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

on-line article, which confirms that Textor and Pulse used the Patented Technology.  The diagram

shows that – just as in the '519 patent – high-powered projectors is used to project an image onto

rear-projection screen, the image reflects off of the transparent foil arranged on stage at an angle of

about 45 degrees.  The projection bounces off the transparent foil into the audience, creating the

illusion of a life-like three-dimensional image positioned on stage behind the transparent foil.  A true

and correct copy of the *USA Today* article published on May 23, 2014 is attached as Exhibit D.

41.     On information and belief, Textor and Pulse worked with Musion to produce the

holographic projection of Michael Jackson.  Shortly after the Billboard Music Awards, Musion 3D

Ltd. prominently announced on its website that:

> So now we can say it that Musion 3D was proud to have partnered in the production
> process with Pulse Entertainment since January 2014. The filming and dance
> sequences were shot on collaboration with Musion 3D using a proprietary 8K video
> production. The Foil used Musion proprietary fireproof foil and was rigged by
> Musion 3D.  The production has been in rehearsals for many weeks.  Musion 3D is
> not in any way connected with the company Musion Das Hologram.

Musion 3D Home Page, http://www.musion3d.co.uk (last visited May 29, 2014).  Musion 3D

recently removed that statement from its website, but a screenshot of a cache from the Musion 3D

website is attached as Exhibit E.  Musion has publicly acknowledged it uses the Patented

Technology.

42.     Further, even while arguing that they do not use the Patented Technology, Defendants

have inconsistently argued in these court proceedings that they "licensed" the right to do so.  But

Plaintiffs have not licensed any such rights to Defendants, and Plaintiffs are the only parties from

which Defendants may license rights related to the Patents At Issue.

43.     On information and belief, Defendants have infringed and will continue to infringe

the Patents At Issue.  According to *USA Today*, Textor and Pulse are reportedly fielding calls and

inquiries from promoters and the estates of deceased entertainers interested in tours that use the

holographic technology.  "Textor won't reveal who's been in touch, but notes that obvious

candidates for a posthumous show include Elvis Presley, Frank Sinatra and Bob Marley."  *See*

Marco della Cava, <u>Jackson Mirage Heralds Future of Posthumous Shows</u>, USA Today (May 22,

2014, 9:44 PM), http://www.usatoday.com/story/life/music/2014/05/22/michael-jackson-mirage-

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE · SUITE 1200 · LAS VEGAS, NEVADA 89102
PHONE (702) 873-4100 · FAX (702) 873-9966

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE • SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

1   heralds-future-of-posthumous-shows/9447595.

2   44.    By claiming credit for the technology behind the high-profile Jackson hologram,

3   Defendants have created significant confusion in the marketplace.  That confusion has diluted the

4   value of the Hologram USA brand by causing confusion among potential customers.  In fact,

5   Hologram USA has been involved in its own discussions with the estates of several significant

6   entertainers (including Elvis Presley and Bob Marley), but its efforts to reach a deal have been

7   thwarted by the presence of the Defendants who falsely claim that they are able to provide access to

8   the same patented technology as Hologram USA.  In addition, the quality of the Michael Jackson

9   hologram has been criticized in several popular media outlets and by many noted observers, causing

10   damage to the reputation of Plaintiffs' brand and further loss of goodwill.

11   45.    Hologram USA's efforts to reach business deals with potential customers has been,

12   and will continue to be, damaged by Defendants' wrongful conduct.  Hologram USA has placed

13   Defendants on notice of their infringing activities, but Defendants refuse to stop using the Patented

14   Technology.

15   46.    Based on information and belief, Defendants are infringing on one or more of the

16   claims of the Patents At Issue.

17   47.    Defendants' infringement of the '519 and '212 patents has caused and will continue

18   to cause monetary and other damages to Plaintiffs.

19   **FIRST CLAIM FOR RELIEF – Against All Defendants**

20   **(Infringement of Patent No. 5,865,519)**

21   48.     Plaintiffs incorporate by reference the preceding averments set forth in the preceding

22   paragraphs.

23   49.    U.S. Patent No. 5,865,519 ("the '519 patent") duly and lawfully issued on February 2,

24   1999, to Uwe Maass and is titled "Device For Displaying Moving Images In The Background Of A

25   Stage."  The claims of the '519 patent are directed at a device or apparatus for representing three-

26   dimensional moving images in the background of a stage or the like using an image source.  *See*

27   Exhibit A.

28

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE • SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

50.     Maass is the owner of the '519 patent, and Hologram USA has licensed the exclusive right to exploit this patent in all markets in the U.S. and Canada with the exception of adult entertainment.  Maass and Hologram USA have the right to bring this suit for injunctive relief and damages.

51.     On information and belief, Defendants have been, are currently and, unless enjoined, will continue to directly infringe one or more claims of the '519 patent by making, using, offering to sell, and selling within the United States the patented invention.  Defendants' products and services embody and/or practice one or more claims of the '519 patent.

52.     Defendants' infringing activities have caused and will continue to cause Plaintiffs irreparable harm, for which it has no adequate remedy at law, unless Defendants' infringing activities are enjoined by this Court in accordance with 35 U.S.C. § 283.

53.     Plaintiffs have been and continue to be damaged by Defendants' infringement of the '519 patent in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF – Against All Defendants

### (Infringement of Patent No. 7,883,212)

54.     Plaintiffs incorporate by reference the preceding averments set forth in the preceding paragraphs.

55.     U.S. Patent No. 7,883,212 ("the '212 patent") duly and lawfully issued on February 8, 2011, to Ian O'Connell and James Rock and is titled "Projection Apparatus And Method For Pepper's Ghost Illusion."  The claims of the '212 patent are directed at a projection apparatus arranged to project an image of an object upon an inclined, partially reflective screen so as to give a false perception of depth and a method for constructing such an apparatus.  *See* Exhibit B.

56.     In or about September 2006, Ian O'Connell and James Rock assigned all their interests in the anticipated application for the '212 patent to Musion Systems Limited.  A true and correct copy of the Patent Assignment Abstract of Title is attached as Exhibit F.

57.     In or about September 2013, Musion Systems Limited assigned all its interests in the '212 patent to MDH.

58.     MDH is the owner of the '212 patent, and Hologram USA has licensed the exclusive right to exploit this patent in all markets in the U.S. and Canada with the exception of adult entertainment.  MDH and Hologram USA have the right to bring this suit for injunctive relief and damages.

59.     On information and belief, Defendants have been, are currently and, unless enjoined, will continue to directly infringe one or more claims of the '212 patent by making, using, offering to sell, and selling within the United States the patented invention.  Defendants' products and services embody and/or practice one or more claims of the '212 patent.

60.     Defendants' infringing activities have caused and will continue to cause Plaintiffs irreparable harm, for which it has no adequate remedy at law, unless Defendants' infringing activities are enjoined by this Court in accordance with 35 U.S.C. § 283.

61.     Plaintiffs have been and continue to be damaged by Defendants' infringement of the '212 patent in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF – Against All Defendants

### (Willful Infringement)

62.     Plaintiffs incorporate by reference the preceding averments set forth in the preceding paragraphs.

63.     As alleged above, the Defendants did not possess a valid license from Hologram USA to make, use, offer to sell or sell the Patented Technology to create a holographic performance of Michael Jackson at the 2014 Billboard Music Awards.  Despite not having the proper license, Defendants willfully infringed the Patents At Issue.

64.     The Defendants knew about the Patents At Issue before the complaint in this action was filed, and acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.  Rock and O'Connell are named as inventors on the '212 patent, and they have prior knowledge of the '519 patent from their prior business dealings including the Tupac hologram at Coachella and many other holographic projects featured on their website.  *See* Our Projects, Musion, http://musion.co.uk/projects (last visited May 29, 2014).  Rock and O'Connell (together with Musion) have falsely claimed that Musion owns certain rights to the Patented Technology.  Thus,

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE · SUITE 1200 · LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 · FAX (702) 873-9966

Musion, Rock and O'Connell unquestionably knew about the Patents At Issue before this lawsuit was filed.

65.    Moreover, several of the Defendants are known to be repeat users of the Patented Technology.  In particular, Textor (and by extension, his company Pulse) was well aware of the Patents At Issue from his prior experience as the CEO of Digital Domain when it licensed the rights to use the technology to create a hologram of Tupac Shakur for the 2012 Coachella Music Festival. After the YouTube video of the Tupac hologram went viral, the Patented Technology grew in popularity within the entertainment industry.  Shortly thereafter, based on information and belief, the Jackson Estate, working in partnership with Cirque du Soleil, used the technology to create a hologram of Michael Jackson in a show on the Las Vegas strip entitled "Michael Jackson: One," which began previews in or about May 2013.  Accordingly, the various Defendants in this case have had extensive prior experience with the Patented Technology.

66.    Under the circumstances, the Defendants surely understood that the technology used to create the hologram was patented.  According to news reports, it took months to create the Jackson hologram for the Billboard Music Awards, which was planned to be the surprise highlight of the nationally televised awards show.  All of the Defendants are sophisticated and experienced players in the entertainment industry with reason to know about the existence of the Patents At Issue. In fact, Plaintiffs have previously filed lawsuits against companies for infringement of the Patents At Issue.  Most significantly, in March 2014, Plaintiffs filed suit against the Jackson Estates' partner, Cirque du Soleil, regarding their unauthorized use of the Patented Technology to create a hologram of Michael Jackson for the Cirque show entitled "Michael Jackson: One."  Notwithstanding this prior lawsuit, the Jackson Estate and the other Defendants in this case deliberately misappropriated the Patented Technology again, in order to create an even more high-profile holographic performance by Michael Jackson to air on national television during the Billboard Music Awards on May 18, 2014.

67.    Despite their knowledge of the existence of the Patents At Issue, based on information and belief, Defendants willfully, intentionally and consciously infringed the Patents At Issue in disregard of Plaintiffs' rights.

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE • SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

68.     Immediately after Plaintiffs learned of Defendants' plans to use the Patented Technology to create a holographic performance of Michael Jackson for the Billboard Music Awards, Plaintiffs placed Defendants on written notice of their alleged infringement.  Plaintiffs demanded in their pre-litigation letter that Defendants (including Dick Clark Productions, the Jackson Estate, Textor and Pulse) agree to refrain from displaying any Michael Jackson hologram during the May 18 award show.  Defendants refused this demand, and Plaintiffs subsequently filed suit.  A true and correct copy of this May 15, 2014 demand letter is attached as Exhibit G.

69.     As a direct and proximate result of Defendants' willful infringement of the Patents At Issue, Plaintiffs have been and will continue to suffer monetary damages and irreparable injury.  Defendants have created on-going confusion in the marketplace as to the rightful owners and licensors of the Patents At Issue, which renders this case appropriate for treble damages.

## FOURTH CLAIM FOR RELIEF – Against All Defendants

### (Active Inducement)

70.     Plaintiffs incorporate by reference the preceding averments set forth in the preceding paragraphs.

71.     In addition to directly infringing the Patents At Issue, the Defendants are liable for indirect infringement.  The Defendants actively induced the direct infringement of the Patents At Issue in violation of 35 U.S.C. section 271(b), which provides that whoever "actively induces infringement of a patent shall be liable as an infringer."

72.     As alleged in greater detail above, the Defendants knew about the Patents At Issue before the complaint in this action was filed, and acted with knowledge that their induced acts constitute patent infringement.  Defendants are familiar with the Patents At Issue and have had prior experiences with the Patented Technology – which is widely known within the entertainment industry.  Further, Plaintiffs expressly demanded that Defendants refrain from misappropriating their patented technology to create an unauthorized holographic performance of Michael Jackson at the Billboard Music Awards before this lawsuit was filed.

73.     While some information is publicly available, much of the information about the role of each of the Defendants in directly and indirectly infringing the Patented Technology is within the

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE · SUITE 1200 · LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 · FAX (702) 873-9966

17

1   possession, custody and control of the Defendants.

2        74.     On information and belief, the Defendants intended to induce infringement of the

3   Patents At Issue.  The Defendants worked together in secret to create a holographic performance of

4   Michael Jackson, which was unveiled to the public on live television at the 2014 Billboard Music

5   Awards.  All the Defendants – including the Jackson Estate, MJJ Productions and Dick Clark

6   Productions – intended to induce each other to infringe the Patents At Issue, so that the awards show

7   and Jackson's newly released album would benefit from a spectacular "live" performance by

8   Michael Jackson as "you've never seen him before."  *See* Michael Jackson to Unleash World

9   Premiere Experience at Billboard Music Awards, Billboard (May 8, 2014, 6:00 AM),

10  http://www.billboard.com/articles/events/bbma-2014/6077688/michael-jackson-to-unleash-world-

11  premiere-experience-at-billboard.  Indeed, each of the Defendants caused, urged, encouraged and/or

12  aided in the infringing conduct.

13       75.     In particular, based on information and belief, Musion, Rock and O'Connell intended

14  to induce infringement of the Patents At Issue.  Musion, Rock and O'Connell falsely claimed that

15  they possessed legal valid rights to the Patented Technology.  Further, they intentionally induced

16  infringement of the Patents At Issue by having customers sell, offer to sell, use and import into the

17  United States and this Judicial District, and placing into the stream of commerce, the Patented

18  Technology (*e.g.*, "Eyeliner certified flame retardant Foil") with knowledge that such products

19  infringe the Patent At Issue.  Musion provides, among others things, "services including initial

20  design consultation and advice, CAD drawings, equipment technical riders, Foil delivery and

21  installation from one of our tech support crew", and it advertises that "technical staff are on-hand to

22  guide you, and your preferred production company, through your requirements to ensure the

23  absolute success of your Eyeliner experience."  *See* Fire Retardent [sic] Foil, Musion 3D,

24  http://www.musion3d.co.uk/products/fire-retardant-foil (last visited May 29, 2014).  Indeed, Musion

25  actively promotes "digital resurrection" on its website and encourages companies to use its services

26  "to create life-like holographic projections of celebrities, politicians, dignitaries, and other

27  significant figures."  *See* Digital Resurrection, Musion 3D,

28  http://www.musion3d.co.uk/services/digital-resurrection (last visited May 29, 2014).  It also

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE · SUITE 1200 · LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 · FAX (702) 873-9966

18

advertises and promotes design and installation services on its website that infringe the Patented

Technology.  *See* Design and Installation, Musion 3D, http://www.musion3d.co.uk/products/design-

and-installation (last visited May 29, 2014).  Further, Rock was present at the Billboard Music

Awards and was personally involved in the inspection and disassembly of the apparatus used to

create the Jackson hologram after the show.

76. Likewise, Textor and Pulse intended to induce infringement of the Patents At Issue.

Textor and Pulse worked with Musion, Rock and O'Connell to provide and operate the Patented

Technology that was used to create the Jackson hologram.  Indeed, Textor and Pulse actively

promote their expertise in developing "'virtual humans' for live and holographic concerts,

advertising, feature films, branded content, medical applications and training."  *See* About, Pulse,

http://www.pulse.co/about-pulse (last visited May 29, 2014).  As with Rock, Textor was personally

present at the Billboard Music Awards show when the Jackson hologram was aired to a national

audience.

77. As a direct and proximate result of Defendants' induced infringement of the Patents

At Issue, Plaintiffs have been and will continue to suffer monetary damages and irreparable injury.

### FIFTH CLAIM FOR RELIEF – Against All Defendants

### (Contributory Infringement)

78. Plaintiffs incorporate by reference the preceding averments set forth in the preceding

paragraphs.

79. In addition to directly infringing the Patents At Issue, the Defendants are liable for

indirect infringement.  The Defendants engaged in contributory infringement of the Patents At Issue

in violation of 35 U.S.C. section 271(c), which provides that "[c]ontributory infringement occurs if a

party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that

'material or apparatus' is material to practicing the invention, has no substantial non-infringing uses,

and is known by the party 'to be especially made or especially adapted for use in an infringement of

such patent."

80. As alleged in greater detail above, the Defendants knew about the Patents At Issue

before the complaint in this action was filed.  Defendants are familiar with the Patents At Issue and

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE · SUITE 1200 · LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 · FAX (702) 873-9966

have had prior experiences with the Patented Technology – which is widely known within the entertainment industry.  Further, Plaintiffs expressly demanded that Defendants refrain from misappropriating their patented technology to create an unauthorized holographic performance of Michael Jackson at the Billboard Music Awards before this lawsuit was filed.

81.    Based on information and belief, Defendants contributed to the infringement of the Patents At Issue by having customers sell, offer to sell, use and import into the United States and this Judicial District, and placing into the stream of commerce, the Patented Technology including but not limited to "Eyeliner certified flame retardant Foil" and equipment rentals such as the "Musion 3D Eyeliner structures," with knowledge that such products infringe the Patent At Issue.  *See* Musion EyeLiner Foil – The Biggest 3D Holograms, Musion 3D, http://www.musion3d.co.uk/products/eyeliner (last visited May 29, 2014); Fire Retardent [sic] Foil, Musion 3D, http://www.musion3d.co.uk/products/fire-retardant-foil (last visited May 29, 2014).

82.    In particular, based on information and belief, Textor and Pulse worked with Musion, Rock and O'Connell to provide and operate the Patented Technology that was used to create the Jackson hologram for the Billboard Music Awards.  Additionally, discovery is likely to show that the Jackson Estate and MJJ Productions contributed to the infringement by selling, offering to sell or otherwise providing materials from its Cirque show in Las Vegas to assist in practicing the patented invention.

83.    Based on information and belief, Defendants' products, including but not limited to the Eyeliner certified flame retardant Foil, are especially made or adapted for infringing the Patents At Issue and have no substantially non-infringing uses.  Indeed, this foil was specially designed for the purpose of practicing the Patents At Issue.

84.    As a direct and proximate result of Defendants' contributory infringement of the Patents At Issue, Plaintiffs have been and will continue to suffer monetary damages and irreparable injury.

//

//

**SIXTH CLAIM FOR RELIEF – Against All Defendants**

20

**(Preliminary and Permanent Injunction)**

85.     Plaintiffs incorporate by reference the preceding averments set forth in the preceding paragraphs.

86.     Immediate and irreparable injury will result to Plaintiffs unless this Court enters a Preliminary Injunction, pursuant to FRCP 65, enjoining all Defendants and their agents, servants, employees, attorneys, subsidiaries and any other individual or entity in active concert or participation with them who receives actual notice of the order, from infringing, inducing others to infringe, or contributing to the infringement of the '519 and '212 Patents, including the manufacture, use, sale, importation, and offer to sell any holographic equipment or services related to the use of such holographic equipment subject to the '519 and '212 Patents.

87.     Plaintiffs have a likelihood of success on the merits given that there is no dispute that Defendants have infringed and continue to infringe the '519 and '212 Patents, by using and selling this patented technology to create a holographic-like image of Michael Jackson which "performed" a never-before released song of Michael Jackson's at the 2014 Billboard Music Awards.  Defendant Textor's attempts to acquire rights to the Patented Technology in the days leading up to the Billboard Music Awards belie any self-serving attempt to now claim another technology was employed to create that performance.

88.     As a result of Defendants' unlawful activities, Plaintiffs have suffered and will suffer irreparable harm.  Hologram USA has spent several million dollars building the Hologram USA name and brand.  For instance, Hologram USA spent millions of dollars to build a Beverly Hills showroom to display and market the Patented Technology to potential customers.

89.     The acts of the Defendants have already caused Plaintiffs significant harm.  By advertising, promoting and displaying a Michael Jackson holographic image at the 2014 Billboard Music Awards, Defendants have created significant confusion in the marketplace.  That confusion has diluted the value of the Hologram USA brand by causing confusion among potential customers. The actions of the Defendants have interfered with numerous potential business deals between Hologram USA and potential customers.  On information and belief, Defendants are continuing to promote and sell the Patented Technology to other prospective customers and also intend to employ

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE • SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702) 873-4100 • FAX (702) 873-9966

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE · SUITE 1200 · LAS VEGAS, NEVADA 89102
PHONE (702) 873-4100 · FAX (702) 873-9966

the Michael Jackson hologram in several other planned live performances in the coming weeks and months.

90.     If Defendants are permitted to continue their infringing conduct, including but not limited to the continued promotion of their services following the display of the Michael Jackson holographic image at the 2014 Billboard Music Awards, the irreparable harm suffered by Hologram USA will be immeasurable.  The publicity associated with such a display cannot be reduced to monetary terms.

91.     Defendants' actions will continue to irreparably harm Plaintiffs' business reputation and brand by creating consumer confusion as to the true owner of the patented technology.  No adequate remedy at law will alleviate this harm.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that:

a.     Judgment be entered that Defendants have infringed one or more claims of the '212 and '519 patents;

b.     Judgment be entered permanently enjoining Defendants, their directors, officers, agents, servants, and employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors and assigns, from further acts of infringement of the '212 and '519 patents;

c.     Judgment be entered that Defendants' infringement has been willful;

d.     Judgment be entered awarding Plaintiffs all damages adequate to compensate it for Defendants' infringement of the '212 and '519 patents, including all pre-judgment and post-judgment interest at the maximum rate permitted by law, and including a trebling of such damages due to Defendants' willful infringement.

e.     For reasonable attorneys' fees incurred in bringing and litigating this action;

f.     For costs of suit herein; and

g.     Judgment be entered awarding all other relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiffs demand trial by jury in this action.

DATED this 29th day of May, 2014.

McDONALD CARANO WILSON LLP

By: /s/ Craig A. Newby
    CRAIG A. NEWBY (#8591)
    2300 W. Sahara Avenue, #1200
    Las Vegas, Nevada 89102
    Telephone: 702.873.4100
    Facsimile: 702.873.9966
    cnewby@mcdonaldcarano.com

    RYAN G. BAKER (to be admitted *pro hac vice*)
    BAKER MARQUART LLP
    10990 Wilshire Boulevard
    Fourth Floor
    Los Angeles, CA  90024
    Telephone:   424.652.7800
    Facsimile:   424.652.7850
    rbaker@bakermarquart.com

    *Attorneys for Plaintiffs*
    *Hologram USA, Inc., Musion Das Hologram*
    *Limited and Uwe Maass*

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE • SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of McDonald Carano Wilson LLP, and that on the 29th day of May, 2014, a true and correct copy of the foregoing **FIRST AMENDED COMPLAINT** to be served via the U.S. District Court's Notice of Electronic Filing ("NEF") in the above-captioned case, upon the following:

    (1)  Michael N. Feder: mfeder@gordonsilver.com, KKoehm@GORDONSILVER.com, lstewart@gordonsilver.com, usdcnotices@gordonsilver.com

    (2)  Jennifer Ko Craft: jcraft@gordonsilver.com, usdcnotices@gordonsilver.com

    (3)  John C. Textor:  john.textor@pulse.co

I HEREBY FURTHER CERTIFY that on the 29th day of May, 2014, a true and correct copy of the foregoing **FIRST AMENDED COMPLAINT** to be served via U.S. mail and electronic, upon the following:

Howard Weitzman, Esq.
Jonathan Steinsapir, Esq.
Kinsella Weitzman Iser Kump & Aldisert LLP
808 Wilshire Boulevard, Suite 300
Santa Monica, CA  90401
Email: hweitzman@kwikalaw.com

*Attorneys for MJJ Productions, Inc.; Dick Clark Productions, Inc.;*
*John McClain and John Branca, as co-executors for the Estate of Michael Jackson*

/s/  Craig Newby
An employee of McDonald Carano Wilson LLP

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE · SUITE 1200 · LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 · FAX (702) 873-9966