1 | GORDON SILVER
Michael N. Feder (NV Bar No. 7332)
2 |   mfeder@gordonsilver.com
Jennifer Ko Craft (NV Bar No. 8038)
3 |   jcraft@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
4 | Las Vegas, Nevada 89169
Telephone: 702.796.5555
5 | Facsimile: 702.369.2666

6 | KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
Howard Weitzman (*pro hac vice*)
7 |   hweitzman@kwikalaw.com
Gregory Korn (*pro hac vice*)
8 |   gkorn@kwikalaw.com
Jonathan Steinsapir (*pro hac vice*)
9 |   jsteinsapir@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
10 | Santa Monica, California 90401
Telephone: 310.566.9800
11 | Facsimile: 310.566.9850

12 | Attorneys for Defendants John Branca and John
McClain in their capacity as Co-Executors of
13 | the Estate of Michael J. Jackson, deceased; MJJ
Productions, Inc.; and dick clark productions,
14 | inc.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| HOLOGRAM USA, INC., et al., | Case No. 2:14-cv-00772-GMN-NJK |
| Plaintiffs, | **MOTION TO DISMISS ALL CLAIMS RELATING TO INFRINGEMENT OF U.S. PATENT NO. 5,865,519 PURSUANT TO FED. R. CIV. P. 12(b)(6) OF DEFENDANTS JOHN BRANCA AND JOHN MCCLAIN AS EXECUTORS OF THE ESTATE OF MICHAEL J. JACKSON, MJJ PRODUCTIONS, INC., AND DICK CLARK PRODUCTIONS, INC.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| PULSE ENTERTAINMENT, INC., et al., | |
| Defendants. | |
| | [Fed. R. Civ. P. 12(b)(6)] |
| | (Hearing Requested) |

10386.00247/221743

MOTION TO DISMISS

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Defendants John Branca and John McClain in their capacity as Executors of the Estate of Michael J. Jackson, deceased, and MJJ Productions, Inc. (collectively "the Jackson Defendants"), along with Defendant dick clark productions, inc. , by and through their counsel Gordon Silver and Kinsella Weitzman Iser Kump & Aldisert, LLP, hereby move for an order, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing all claims related to allegations of infringement of U.S. Patent No. 5,865,519 ("the '519 patent") for failure to state a claim upon which relief can be granted.

More specifically, the Jackson Defendants and dick clark productions seek dismissal of the following claims for relief, without leave to amend, in the First Amended Complaint (sometimes referred to as the "Amended Complaint" or "FAC"):

1.      The First Claim for Relief for "Infringement of Patent No. 5,865,519";

2.      The Third Claim for Relief for "Willful Infringement" insofar as it relates to the alleged willful infringement of the '519 patent;

3.      The Fourth Claim for Relief for "Active Inducement" insofar as it relates to the alleged induced infringement of the '519 patent;

4.      The Fifth Claim for Relief for "Contributory Infringement" insofar as it relates to the alleged contributory infringement of the '519 patent; and

5.      The Sixth Claim for Relief insofar as it seeks injunctive relief relating to the alleged infringement of the '519 patent.

This Motion is made and based on the following Memorandum of Points and Authorities, the First Amended Complaint (including the exhibits thereto and the matters incorporated into the Complaint by reference), any further briefing on this matter, matters upon which judicial notice may be taken, and any oral argument the Court may permit at a hearing of this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiffs Hologram USA, Inc., Musion Das Hologram Limited, and Uwe Maass filed this action on May 15, 2014.  The next day on Friday May 16, 2014, at roughly 1:00

10386.00247/221743

1

a.m., they filed an application for a temporary restraining order attempting to enjoin a live performance two days later at the May 18, 2014 Billboard Music Awards.  The long-planned performance involved an animated, moving image of the late Michael Jackson dancing to and singing a previously unreleased song entitled "Slave To The Rhythm."  With no factual basis whatsoever, Plaintiffs argued that the technology that certain Defendants planned to use at the awards show infringed two patents allegedly owned or exclusively licensed to Plaintiffs: U.S. Patent No. 5,865,519 ("the '519 patent") and U.S. Patent No. 7,883,212 ("the '212 patent").

The Court denied the application for a TRO on the basis that, among other things, Plaintiffs failed to establish a likelihood of success on the merits.  The Court's ruling was correct.  This case is utterly meritless.  The technology used at the Billboard Music Awards to create an animated, moving image of the late Michael Jackson does not come close to infringing any claims of either the '519 or '212 patents.   Of course, in patent cases, issues of non-infringement often need to await at least some development of the factual record.  As to allegations relating to infringement of the '519 patent, however, Plaintiffs' conclusory allegations of infringement are so meritless that they are *contradicted by affirmative evidence that is part of Plaintiffs' own complaint.*

Accordingly, the Jackson Defendants and dick clark productions hereby move to dismiss all claims related to infringement of the '519 patent without leave to amend.

## II.    BACKGROUND

### A.    Plaintiffs Initiate this Action By Immediately Filing a Meritless Application for a Temporary Restraining Order.

Plaintiffs filed their initial Complaint in this case on May 15, 2014.  (Dkt. No. 1.)  The Complaint acknowledged that a basic and known method for creating an illusion of a three-dimensional, moving image dates back *at least* to 1862, when two inventors disclosed an illusion technique known as "Pepper's Ghost."  (Dkt. No. 1, ¶ 1.)  In their papers, Plaintiffs consistently refer to the Pepper's Ghost illusion as a "hologram."  This term is not technically correct and can only lead to confusion,  Indeed, neither patent-in-

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3ʳᴰ Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

suit refers to the Pepper's Ghost technique as a hologram and neither patent even uses the term "hologram" at all.  We therefore avoid use of the term.

Plaintiffs alleged that they were owners of a "new incarnation of Pepper's Ghost" called "Musion Eyeliner," which (allegedly) was most famously used to create a three-dimensional image of the deceased rap star Tupac Shakur at the 2012 Coachella Music Festival.  (*Id.* at ¶¶ 1-2.)  The Complaint alleged that this "new incarnation" of the well-known Pepper's Ghost illusion is protected by the '519 and '212 patents, which are allegedly owned by Plaintiffs Maass and MDH and have allegedly been licensed exclusively in the United States to Plaintiff Hologram USA.  (*Id.* at ¶ 4.)

The Complaint alleged that Defendant Pulse Entertainment Corporation ("Pulse") and its CEO, John Textor, were engaged to create a "hologram" of Michael Jackson for this year's Billboard Music Awards.  (*Id.* at ¶ 27.)  Plaintiffs alleged that "[b]ased on information and belief, Defendants will use the patented Musion Eyeliner system to create the three-dimensional projection of Michael Jackson."  (*Id.* ¶ 29.)  But other than the fact that Textor was allegedly "familiar with that technology," (*id.*), Plaintiffs pleaded no facts whatsoever supporting their contention that Defendants were intending to use any technology claimed in the '519 and '212 patents as opposed to another "incarnation of Pepper's Ghost" that was not protected by these patents.

Together with the initial Complaint, Plaintiffs filed an Emergency *Ex Parte* Application For A Temporary Restraining Order at around 1 a.m. on Friday, May 16, 2014.  (Dkt. No. 3.)  Although Plaintiffs' Application acknowledged Defendants' position that Defendants were using a "wholly different technology" than Plaintiffs allegedly patented technology, (*id.* at p. 4), Plaintiffs simply disregarded the possibility that this was true without any supporting evidence, and asked the Court to enjoin the performance in a summary hearing on the Friday before the planned Sunday performance.

Two things were conspicuously missing from the Application for a Temporary Restraining Order.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1    First, although Plaintiffs gave lip service to the standard for infringement, the

2 Application failed to discuss *any* of the claims of the '519 or '212 patents.  (Dkt. No. 3, p.

3 10.)  Remarkably, the Application did not even discuss a single claim from either patent. In

4 fact, the Application did not even explain which of the 33 different claims of the patents-

5 in-suit were allegedly infringed, let alone contain a necessary element-by-element

6 infringement analysis.  *See Amazon.com, Inc. v. Barnesandnoble.com, Inc*., 239 F.3d 1343,

7 1351 (Fed. Cir. 2001) ("Of course, whether performed at the preliminary injunction stage

8 or at some later stage in the course of a particular case, infringement … analyses must be

9 performed on a claim-by-claim basis.").

10    Second, the Application failed to describe the apparatus and method that

11 Defendants were allegedly using to create the illusion of a three-dimensional, moving

12 image of Michael Jackson, and how those methods and apparatus embodied each and

13 every element of at least one claim of the '519 or '212 patents.  (Dkt. No. 3 pp. 9-11.)  *See*

14 *Rohm & Haas Co. v. Brotech Co.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997) (to prove

15 infringement, a patentee must show that "the accused product or process meets *every*

16 *element or limitation* of a claim"; rejecting "evidence" of conclusory opinion to show

17 infringement).  The notion that a patentee can demonstrate infringement without discussing

18 either the claims of its patent or the accused product is anathema to the most basic

19 principles of patent law.

20    On exceedingly short notice, counsel for the Jackson Defendants and dick clark

21 productions specially appeared for all Defendants to oppose the Application for a TRO,

22 filing an opposition roughly 13 hours after the Application was filed (Defendants Pulse

23 and John Textor have since retained their own counsel).  (Dkt. No. 17.) [1]  In fact, counsel

24 —————————————

25    [1] Lead counsel for the Jackson Defendants and Defendant dick clark productions
(Howard Weitzman) has been principal litigation counsel for the Estate of Michael Jackson
26 since shortly after Michael's tragic death in June 2009.  The other defendants did not have
time to retain litigation counsel on 13 hours' notice so Mr. Weitzman and his firm, along
27 with Gordon Silver, specially appeared for all defendants.  Today, undersigned counsel
and Gordon Silver only represents the Jackson Defendants and dick clark productions.

28

had never seen these patents until just a few hours before the application for a TRO was filed (and spent much of the morning scrambling to retain local counsel).  In opposition, Defendants stressed Plaintiffs' total failure to show that the accused apparatus and method that were being used to create the Jackson animation met every limitation of at least one claim of the '519 or '212 patents and was therefore infringing.  (*Id.* pp. 3-4.)  On that basis among others, the Court denied the Application.  (Dkt. No. 20 at pp. 3-4.)

       **B.**      **Plaintiffs' Inspection Of Defendants' Technology And Filing Of A First Amended Complaint.**

Plaintiffs moved for expedited discovery after the TRO was denied, and the Defendants (none of whom had been served or had generally appeared in the action) did not file opposition to the request (except for a request for an expedited deposition, which the Court denied, Dkt. No. 32).  The Court ordered that Plaintiffs be "allowed to inspect and videotape Defendants' technology before it is disassembled or removed from its current location at the MGM Grand Garden Arena."  (Dkt. No. 24.)  Plaintiffs conducted that inspection per the Court's Order.  (FAC ¶ 39.)

Anyone familiar with the '519 patent would have known from the moment they saw Defendants' apparatus that it was not infringing.  Plaintiff nevertheless "doubled down" on their infringement allegations, and filed a First Amended Complaint, reasserting a claim for infringement of the '519 patent, as well as third through sixth claims for willful infringement, active inducement, contributory infringement, and preliminary and permanent injunction, respectively, all of which are based in part on the alleged infringement of the '519 patent.  (Dkt. No. 34.)

Plaintiffs attach and incorporate by reference into the First Amended Complaint an "interactive diagram" showing the process and apparatus that they accuse of infringing their patents.  (FAC ¶ 40, Exh. D.)  They portend as though the diagram supports their allegations.  (FAC ¶ 40.)  In reality, however, the diagram *dooms* their claims for infringement of the '519 patent, and makes this a rare case where infringement can be adjudicated on the pleadings alone.

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

### III.   LEGAL STANDARDS FOR DETERMINING NON-INFRINGEMENT OF A PATENT AT THE PLEADING STAGE

Because this is a patent case, issues unique to patent law are governed by the law of the Federal Circuit. *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1303 (Fed. Cir. 2001). General procedural issues not unique to patent law, however, are governed by the law of the regional Circuit, i.e., the Ninth Circuit. *Ibid.* Whether to grant "a motion to dismiss for failure to state a claim upon which relief can be granted is reviewed under the applicable law of the regional circuit." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012).

Under the law of the Ninth Circuit, courts adjudicating Rule 12(b)(6) motions "must assess whether the complaint 'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although courts *generally* may not consider matters outside of the complaint, "material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1989). In short, when ruling on a Rule 12(b)(6) motion, "courts must consider the complaint in its entirety, as well as … documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In reliance on these principles, courts in the Ninth Circuit have routinely considered and sustained Rule 12(b)(6) motions respecting non-infringement in copyright cases. *Christianson v. West Publ'g. Co.*, 149 F.2d 202, 203 (9th Cir. 1945); *Wild v. NBC Universal, Inc.*, 788 F. Supp. 2d 1083, 1110 (C.D. Cal. 2011); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1130 (C.D. Cal. 2007).

Just like copyright infringement, allegations of patent infringement likewise can be adjudicated on the pleadings in appropriate circumstances. In *Bill of Lading*, the Federal Circuit affirmed a district court's decision dismissing a claim for contributory patent infringement on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Bill of Lading*, 681

1   F.3d at 1337.  The Federal Circuit held that the district court's task on a motion to dismiss

2   was to "analyze the facts pled in the amended complaints *and all documents attached*

3   *thereto* with reference to the elements of a cause of action for contributory infringement to

4   determine whether [plaintiff's] claims of contributory infringement were in fact plausible."

5   *Ibid.* (emphasis added).  "To state a claim for contributory infringement," the Court noted,

6   "a plaintiff must, among other things, plead facts that allow an inference that the

7   components sold or offered for sale have no substantial non-infringing uses."  *Id.*  The

8   district court held that "the amended complaints failed to state a claim for contributory

9   infringement because the facts alleged demonstrated that the Appellee's products *do* have

10  substantial non-infringing uses."  *Id.* (emphasis in original).  The Federal Circuit agreed:

> The materials regarding Appellees' products from which [plaintiff] quotes,
> and, which are attached to the amended complaints, contain repeated
> descriptions of non-infringing uses to which the accused products can be put.
> [Plaintiff], thus, supplies the very facts which defeat its claims of
> contributory infringement.

16  *Id.* at 1338.

17      Here, as in *Bill of Lading*, Plaintiffs' claim for infringement of the '519 patent fails

18  on the face of the First Amended Complaint.  That complaint attaches and incorporates by

19  reference a schematic illustrating the apparatus that Plaintiffs accuse of infringement.  The

20  schematic shows that the accused apparatus does not meet two key limitations of the

21  claims of the '519 patent: (1) the requirement that the transparent foil angle *forward*

22  toward the audience; and (2) the requirement that the image be reflected into the foil by

23  first projecting it onto a surface on the floor.  As in *Bill of Lading*, Plaintiffs here "supply

24  the very facts" which defeat their claim of infringement of the '519 patent.

25      Accordingly, the First Claim for Relief for infringement of the '519 patent should

26  be dismissed in its entirety with prejudice and without leave to amend.  The Third, Fourth,

27

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

10386.00247/221743

7

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1  Fifth, and Sixth Claims for Relief should also be dismissed with prejudice, and without

2  leave to amend, insofar they are predicated on infringement of the '519 patent. [2]

3  **IV.  ARGUMENT**

4      **A.    Legal Standards For Patent Infringement Generally.**

5          Patents comprise three main parts: (1) the drawings, (2) the "written description"

6  (or "specification") which discloses the alleged inventions claimed by the patent, and

7  describes preferred embodiments of them; and (3) one or more "claims," which must

8  "particularly poin[t] out and distinctly clai[m] the subject matter which the applicant

9  regards as his invention." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373

10  (1996).  It is a "bedrock principle" of patent law that "the claims of a patent define the

11  invention to which the patentee is entitled the right to exclude."  *Innova/Pure Water, Inc.*

12  *v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004).

13          Determining infringement is a two-step process.  First, a court construes the claims

14  to ascertain their meaning and scope.  Second, the claims as construed are compared to the

15  allegedly infringing method or apparatus.  *Dawn Equip. Co. v. Kentucky Farms Inc.*, 140

16  F.3d 1009, 1014 (Fed. Cir. 1998).  To plead infringement of a patent, "a patentee must

17  supply sufficient evidence to prove that the accused product or process meets *every*

18  element or limitation of a claim."  *Rohm & Haas Co.*, 127 F.3d at 1092 (emphasis added).

19  "*If even one limitation* is missing or not met as claimed, there is no literal infringement."

20  *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) (emphasis

21  added).

22

23

24  _____

25      [2] Plaintiffs' allegations of infringement of the '212 patent will fare no better than
their allegations with respect to the '519 patent.  In fact, Defendants' non-infringement of
26  the '212 patent is just as clear as the non-infringement of the '519 patent.  However, the
issue will require some extrinsic evidence, because Plaintiffs' pleadings do not contain
27  affirmative evidence of non-infringement of the '212 patent (as they do with respect to the
'519 patent), and therefore cannot be adjudicated solely on the pleadings alone.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

**B.    The '519 Patent.**

The '519 patent is attached as Exhibit A to the First Amended Complaint, which describes it as a "new incarnation" of a 150-year old illusion technique known as "Pepper's Ghost."  (FAC ¶ 1.) [3] The '519 patent is entitled "Device for Displaying Moving Images in the Background of a Stage" and names one inventor, Plaintiff Uwe Maass.  The patent was issued on February 2, 1999 and claims priority from an August 31, 1996 PCT (Patent Cooperation Treaty) application in Europe.  *See* '519 Patent, face page (the '519 patent is attached as Exhibit A to the First Amended Complaint; we attach it as Appendix 1 to this motion for the Court's convenience).

Figures 1 and 2 of the '519 patent are shown below.  Figure 1 "is a simplified diagrammatic side view of the apparatus according to the invention," and Figure 2 is a "more detailed diagrammatic side view of the apparatus according to the invention, simultaneously showing the auditorium."  ('519 patent, col. 3:39-43):





By reference to the numbers in Figures 1 and 2, a "computer controlled light amplifier" (12) projects a moving image onto a mirror (14).  The moving image is then projected by the mirror towards the floor (30), which contains a "reflecting survace" (18)

---

[3] In fact, there is nothing novel and nonobvious about what is claimed by the '519 and '212 patents.  However, we recognize that on this Rule 12(b)(6) motion, the '519 patent must be presumed valid.

1   which then projects the  image "on to the foil" (20).  The reflecting surface (18) on the

2   floor of the stage "is for example a projection screen or a coat of white paint."  The

3   audience members (38) in the auditorium (36) then see a moving image which "appears in

4   the background as a virtual image (26)."  *See id.*, cols. 3:49-4:19.

5        As can be seen from the images, the foil (20), on which the image is projected upon,

6   is angled forwardly towards the "audience members" (38) in the auditorium (36).  The foil

7   is "a transparent smooth foil" which is "held to the ceiling at a position which is disposed

8   further forwardly."  *Id.*, col. 1:57-2:2.  Ideally, the angle of the foil is at about 45 degrees

9   relative to the floor of the stage.  *Id.*, col. 2:28-29.

10       The patent contains fifteen claims.  Claim 1 is the only *independent* claim.  It reads

11  as follows:

12       1.    Apparatus for representing moving images in the background of a

13             stage using an image source, said stage including a floor, a ceiling

14             disposed vertically above said floor and a background disposed

15             therebetween, said apparatus characterised in that *a reflecting surface*

16             *(18) is arranged on said floor (30) of said stage (28)* in the central

17             region thereof, a transparent smooth foil (20) extends between said

18             floor (30) and said ceiling (32) at a position *which is disposed further*

19             *forwardly*, and the image source is arranged at the ceiling (32) in front

20             of the upper end of the foil (2) which is held there, *and is directed on*

21             *to the reflecting surface (18).*

22  '519 patent, cols. 4:59-5:2  (emphasis added).

23       Claims 2 through 15 are known as *dependent* claims.  Dependent claims are

24  described in § 112 of the Patent Act as follows: "a claim in dependent form shall contain a

25  reference to a claim previously set forth and then specify a further limitation of the subject

26  matter claimed."  35 U.S.C. § 112(d).  For instance, claims 2 and 3 describe an

27  "[a]pparatus as set forth in claim 1" with certain additional limitations added thereon.  '519

28  patent, col. 5:3-8.  Claim 4, describes an "[a]pparatus as set forth in claim 3" with certain

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1   additional limitations.  *Id.*, col. 5:6-15.  In that way, each of claims 2 through 15 are

2   "dependent" on claim 1, and *all* of the same limitations from claim 1 are included within

3   these dependent claims.  35 U.S.C. § 112(d) ("A claim in dependent form shall be

4   construed to incorporate by reference all the limitations of the claim to which it refers.").

5       It is "a fundamental principle of patent law that 'dependent claims cannot be found

6   infringed unless the claims from which they depend have been found to have been

7   infringed.'"  *Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 205 F.3d 1377, 1383 (Fed. Cir.

8   2000).  Thus, as explained below, because claim 1 is not infringed as a matter of law, the

9   dependent claims likewise cannot be infringed as a matter of law.  *Ibid.*  Accordingly, our

10  analysis focuses solely on claim 1.

11      **C.      The Accused Apparatus Is Not Infringing As A Matter Of Law.**

12      To infringe the '519 patent, the accused apparatus must embody each and every

13  element of the patent's claims.  *Rohm & Haas*, 127 F.3d at 1092; *Mas-Hamilton Group*,

14  156 F.3d at 1211.   Among other things, therefore, the accused apparatus must project an

15  image "on to the reflecting surface (18)" that is on the "floor" of the stage.  In addition,

16  that image must be reflected onto a foil extending between the floor and ceiling which is

17  "disposed further forwardly."  None of these limitations are met by the accused apparatus.

18      The first step in the infringement analysis—interpretation of these claim terms—is a

19  "purely legal question" reserved to the Court.  *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448,

20  1451 (Fed. Cir. 1998) (en banc); *Markman v. Westview Instruments, Inc.,* 517 U.S. 370

21  (1996).  In this case, claim construction requires no heavy lifting and can easily be

22  conducted at the Rule 12(b)(6) stage.  *See, e.g., Conoco, Inc. v. Energy & Entl. Int'l, L.C.*,

23  460 F.3d 149, 1359 (Fed. Cir. 2006) ("district court may engage in claim construction

24  during various phases of the litigation, not just in a *Markman* order").

25      The claim terms at issue—"floor," "reflecting surface," and "disposed further

26  forwardly"—are  interpreted according to "their ordinary and customary meaning."

27  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc), quoting *Vitronics*

28  *Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Were an ambiguity to

exist, which it does not here, the Court would look "first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics*, 90 F.3d at 1582.

No ambiguity exists here. The ordinary and customary meaning of "floor," "reflecting surface," and "disposed further forwardly" comports with the '519 patent's use of these terms as shown in the various figures of the patent, and in its written description. "[R]eflecting surface" and "floor" are denoted throughout the patent with the identifying number (18), and they are used in their plain English sense to refer to a reflecting surface ("for example a projection screen or a coat of white paint ") on a stage floor as shown in Figure 2:



'519 patent, Figure 2. The phrase "disposed further forwardly," as used in reference to the foil (20) in Figure 2 above, obviously dictates that the foil is angled "forward" toward the "viewers" (38) "sitting in the auditorium" (36), and not *backward* away from the viewers in the auditorium. *Id.*; *see also id.*, cols. 3:49-4:19

Those claim limitations are *conspicuously absent* from the apparatus that Plaintiffs accuse of infringement. Shown on the following page, Exhibit D to the First Amended Complaint, sets forth a diagram of what Plaintiffs allege is the infringing apparatus that they accuse of infringing the '519 patent:

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850



FAC, Exh. D at p. 7 (Dkt. No. 34-4).  As can be seen from the above, the limitations of

claim 1 requiring that "a *reflecting surface* (18) is arranged *on said floor* (30) of said

stage" and that "the image source … is *directed on to the reflecting surface* (18)" are quite

clearly absent.  '519 patent, cols. 4:59-5:2 (emphasis added).   Rather, as the above

diagram (incorporated into the First Amended Complaint) clearly shows, the image is

projected directly on to the "transparent surface" (and not first to the floor of the stage to

then be reflected back on to the transparent surface, as required by claim 1 of the '519

patent).  But that is not the only limitation of claim 1 which is missing from the allegedly

infringing apparatus.

As further discussed above, claim 1 requires that the "transparent smooth foil (20)

extends between said floor (30) and said ceiling (32) at a position *which is disposed further*

*forwardly*" towards the viewers.  That limitation is very clearly absent.  Rather, the foil

(i.e., the transparent surface in the above diagram) unequivocally angles *backward away*

from the audience.  No amount of verbal gymnastics could support a contention that a foil

that is clearly angled *backwards* away from the audience could somehow meet the claim

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  limitation requiring the foil to be "disposed further *forwardly*" toward the audience as

2  required to infringe the '519 patent.

3      Thus, at least *two limitations* from claim 1 of the '519 patent are absent from the

4  allegedly infringing apparatus in the First Amended Complaint.  There is no argument to

5  the contrary.   No discovery, no creative *Markman* arguments, and no amount of evidence

6  could possibly change that.  Accordingly, the accused apparatus does not infringe claim 1.

7  *Rohm & Haas*, 127 F.3d at 1092; *Mas-Hamilton Group*, 156 F.3d at 1211.

8      It necessarily follows that the accused apparatus does not infringe claims 2 through

9  15, each of which are dependent on claim 1.  "It is axiomatic that dependent claims cannot

10  be found infringed unless the claims from which they depend have been found to have

11  been infringed."  *Wahpeton*, 870 F.2d at 1553; *see also Monsanto v. Syngenta Seeds, Inc.*,

12  503 F.3d 1352, 1359 (Fed. Cir. 2007) ("One who does not infringe an independent claim

13  cannot infringe a claim dependent on (and thus containing all the limitations of) that

14  claim.") (inner quotation marks and citation omitted).

15      Accordingly, all claims for infringement of the '519 patent fail on the face of the

16  First Amended Complaint as a matter of law.  Simply put, Plaintiffs should have never

17  alleged infringement of the '519 patent, let alone filed an application for a restraining order

18  based on that patent.  That Plaintiffs not only made allegations of infringement of the '519

19  patent, but then re-alleged infringement after they were presented with unequivocal

20  evidence of non-infringement—evidence which they bizarrely trumpeted in their First

21  Amended Complaint—is inexcusable and should raise very serious concerns regarding this

22  case in its entirety.  *View Eng'g, Inc. v. Robotic Vision Sys., Inc*., 208 F.3d 981, 985 (Fed.

23  Cir. 2000); *see also* 35 U.S.C. § 285.

24       Indeed, as will be shown later in this litigation, moreover, the allegations of

25  infringement of the '212 patent have no more merit than the allegations of infringement of

26  the '519 patent.  That issue, however, will require evidence outside of the complaint.

27  Respectfully, however, we suggest that Plaintiffs conduct a serious infringement

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   investigation, as required by Rule 11 and the precedent of the Federal Circuit, before they

2   continue with this meritless and costly litigation.  *See, e.g.,* Fed. R. Civ. P. 11.

3   **V.     CONCLUSION**

4          For the reasons set forth herein, the Jackson Defendants and Defendant dick clark

5   productions, inc., respectfully request that the Court grant this motion and order the

6   following claims dismissed with prejudice and without leave to amend: the First Claim for

7   Relief for Infringement of the '519 patent and the Third through Sixth Claims for Relief

8   insofar as they relate to any alleged infringement of the '519 patent.

9

10  Dated: July 21, 2014                    KINSELLA WEITZMAN ISER
                                            KUMP & ALDISERT LLP
11

12

13                                   By:  /s/ Howard Weitzman
                                          Howard Weitzman
14                                        Attorneys for Defendants John Branca and
                                          John McClain, in Their Capacity as Co-
15                                        Executors of the Estate of Michael J. Jackson,
                                          deceased, MJJ Productions, Inc., and dick
16                                        clark productions, inc.

17

18

19

20

21

22

23

24

25

26

27

28

15

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

# **APPENDIX 1**

US005865519A

# United States Patent [19]

## Maass

| [11] | Patent Number: | **5,865,519** |
|---|---|---|
| [45] | **Date of Patent:** | **Feb. 2, 1999** |

[54] **DEVICE FOR DISPLAYING MOVING IMAGES IN THE BACKGROUND OF A STAGE**

[76] Inventor: **Uwe Maass**, Lindlarer Strasse 107, D-51491, Overath, Germany

[21] Appl. No.: **836,911**

[22] PCT Filed: **Aug. 31, 1996**

[86] PCT No.: **PCT/EP96/03832**

§ 371 Date: **Jul. 7, 1997**

§ 102(e) Date: **Jul. 7, 1997**

[87] PCT Pub. No.: **WO97/11405**

PCT Pub. Date: **Mar. 27, 1997**

[30] **Foreign Application Priority Data**

Sep. 20, 1995   [DE]   Germany ...................... 295 15 073 U

[51] **Int. Cl.6** .................................................. **G03B 21/28**

[52] **U.S. Cl.** .............................. **353/28**; 359/630; 472/58

[58] **Field of Search** ................................. 353/28, 98, 30, 353/29, 10; 359/478, 630; 472/58, 61, 63

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| 1,053,887 | 2/1913 | Sontag . | |
| 1,358,110 | 11/1920 | Presicce . | |
| 2,198,815 | 4/1940 | Haskin . | |
| 3,035,836 | 5/1962 | McCulley | ................... 353/28 |
| 4,805,895 | 2/1989 | Rogers . | |

| 5,573,325 | 11/1996 | Lekowski | ................................... 353/28 |
| 5,669,685 | 9/1997 | Kotaui et al. | ........................... 353/28 |
| 5,685,625 | 11/1997 | Beaver | ..................................... 353/28 |

### FOREIGN PATENT DOCUMENTS

| 389185 | 9/1908 | France . | |
| 408191 | 3/1910 | France . | |
| 2714741 | 7/1995 | France . | |
| 2039680 | 8/1980 | United Kingdom . | |
| WO 89/05682 | 6/1989 | WIPO . | |

### OTHER PUBLICATIONS

Rasche et al., Buhnentechniche Rundschau (1990) BTR 3:24–5.

*Primary Examiner*—William Dowling
*Attorney, Agent, or Firm*—Klauber & Jackson

[57] **ABSTRACT**

An article such as for example a motor vehicle at a publicity function is to be represented in front of different viewers (38) in the background of a stage (28) in the form of a virtual image (26). A presenter (40) is to stand in the image and give explanations. Disposed above the stage (28) is an image source (12, 14). It projects an image, a film, on to a reflecting surface (18) on the floor (30) of the stage (28). Behind that reflecting surface (18) a transparent smooth foil (20) extends at 45° from the ceiling (32) to the floor (30). The image produced by the image source (12, 14) appears to the viewers (38) as a virtual image (26) behind the foil (20). The presenter (40) stands behind the foil (20) and in the middle of the image.

**15 Claims, 5 Drawing Sheets**





**FIG.1**

FIG.2



FIG.3





FIG.4

FIG.5



FIG.6



5,865,519

1

# DEVICE FOR DISPLAYING MOVING IMAGES IN THE BACKGROUND OF A STAGE

The invention concerns an apparatus for representing moving images in the background of a stage or the like using an image source.

Transparency lectures or presentations are known, and that expression is a well-established piece of terminology. In a transparency presentation the presenter projects still images or pictures on to a projection screen. The presenter himself stands outside the light come between the projector and the projection screen and comments on the images. Instead of the transparency projector the presenter can also use a film apparatus. In that case moving images appear on the projection screen and the presenter comments thereon. In both cases the presenter stands outside the light come. He does not appear on or in the image himself. If he were to move into the light cone he would mask off a part of the light beam. Instead of the image, the shadow of the presenter would then appear on the projection screen. If the presenter wants to direct the attention of his viewers to a given point in the image he uses for that purpose a pointer or a light with a sharply focussed light beam.

The foregoing kind of presentation is sufficient for image and film presentations for photographic and film amateurs. Travellers who show films or transparencies of their travels to a wide circle of viewers can also use that kind of presentation without detriment. The viewers are only interested in the film or the transparencies and the words of the presenter. They attribute only slight significance to the manner of presentation and the technical equipment involved.

The position is different if the viewers do not have any particular interest in the articles to be shown and an interest first has to be aroused. The position is also different when the film presentation is to take place at a high technical level, for overriding reasons. The situation is also different if the film presentation is to be made more relaxed and less monotonous and linked to so-called display effects.

A theatre production is described as a ghost trick in the literature (for example Bühnentechnische Rundschau, BTR 3/1990, pages 24 and 25), involving disposing a pane of glass inclinedly in the front region of the stage. An actor is positioned beneath the pane of glass and in a lowered part of the stage. He is bedecked with wide white garments and represents the ghost. He is lit by a spotlight which is also disposed under the stage. The image of that actor representing the ghost is projected on to the pane of glass and appears to the viewers behind the pane of glass a virtual image. In that theatre presentation a second actor is on the stage. He represents a hero or sorcerer who conjures up the ghost.

On the basis thereof, the object of the present invention is an apparatus with which film and image presentations can be made relaxed and the presenter himself can move into the image without thereby interfering with reproduction of the image on a projection screen or generally on a surface. In accordance with the invention, that object is attained in an apparatus of the kind set forth in the opening part of this specification, in that a reflecting surface is arranged on the floor of the stage in the central region thereof, a transparent smooth foil extends between the floor and the top or ceiling of the stage over the entire width thereof in such a way that its lower end is held to a position between the reflecting surface and the background and its upper end is held to the ceiling at a position which is disposed further forwardly, and the image source is arranged at the ceiling in front of the

2

upper end of the foil which is held there, and is directed on to the reflecting surface.

The apparatus according to the invention makes use of the physical principle that any motor car driver experiences on the windshield of his vehicle. An article lying on the storage surface in front of the windshield is reflected therein in such a way that it seems to the motor car driver to be disposed in front of the windshield, as viewed in the direction of travel. In the case of the apparatus according to the invention the article to be represented is projected by the image source on to the reflecting surface which corresponds to the above-mentioned support surface, and it is then reflected in the transparent smooth foil in such a way that it appears to the viewer on the background of the stage. The foil which extends over the entire width of the stage and which is held to the floor and ceiling thereof acts like the windshield in a motor vehicle. A viewer at any point in the auditorium believes that he is seeing any article reflected by the reflecting surface on to the foil, behind same. The presenter stands on the stage outside the light cone of the image source. As viewed from the auditorium, he stands behind the reflecting surface. That means that his image is not formed on the background, nor does he disturb the image representation thereon. He can draw the attention of the viewers to given details in the image representation, without making use of a pointer or a light. He can likewise move with the images and interpret the reproduction thereof by virtue of his body language.

Desirably the foil extends at an angle of about 45° relative to the floor of the stage. The image source can be a display screen tube with a very high degree of resolution. It can be controlled by a computer. That means that the image can also be electronically influenced. Desirably a computer-controlled intelligent light amplifier (also known as an ILA) is used as the image source. It is oriented horizontally and emits light in the direction of the auditorium. Accordingly its longest extent lies in the horizontal and it can be easily concealed from the viewers. So that the light which it radiates reaches the reflecting surface, a further embodiment provides that a mirror is arranged in front of the computer-controlled light amplifier and the latter is directed on to the mirror and the mirror receives the light emitted by the light amplifier, is directed on to the reflecting surface and projects the light on to same.

If possible the viewer should not notice how the image in the background of the stage is produced. Therefore the light amplifier and the mirror are desirably covered over forwardly by a curtain or a board which extends over the entire width of the stage. The foil itself is under a very high tensile stress of up to 8t. In that way it is held tautly smooth and the image is not distorted. The foil is preferably without any inclusions. It is also to be very smooth on its front side and its rear side. It is also to be very thin. Finally the foil is to reflect between 30 and 50%, preferably 30%, of the light impinging on it. Such a foil is particularly well suited for the purposes according to the invention. The absence of inclusions and the smooth front and rear sides thereof result in very slight and imperceptible distortion effects. The fact that the foil is very thin serves the same purpose. Reflection phenomena at the front and rear sides thereof thus coincide. The foil used for the purposes according to the invention is generally subjected to further processing as transparency or 35 mm films. When used as a transparency film, it is cut up into the format of the transparency or 35 mm films. When it is used for the invention the foil has a surface area of at least 3 m times 4 m.

In a desirable embodiment the foil is rolled on to a winding tube. It is suspended therewith at the ceiling of the

5,865,519

| 3 | 4 |

stage. Desirably it is fixed to the ceiling, together with the intelligent light amplifier. The free end of the foil can be pulled off the winding tube and is fixed to the floor of the stage. A support mounting arranged on the floor of the stage is used for that purpose.

The reflecting surface may be a white projection screen which is to be laid on to the floor of the stage. The reflecting surface however may also be a simple white coat of paint. As the presenter moves outside it and more specifically behind it, it retains its reflecting properties for a very long period of time.

The apparatus according to the invention is advantageously used in connection with a stage with a floor which can be raised and lowered. The reflecting surface, the projection screen, the coat of paint or the like, is disposed on that part of the floor, which can be raised and lowered. When the floor is lowered the spacing between the image source and the reflecting surface is increased. As a result the virtual image which appears in the background of the stage is displaced rearwardly.

The apparatus according to the invention is to be easy to transport from one location to another and to set up at different locations. For that purpose, in a desirable embodiment, the invention provides that its components are enclosed by a lattice frame and can be secured thereto. Desirably, the lattice frame has units which can be set up on the two sides of the apparatus or the stage thereof and which each have a lower girder portion, an upper girder portion, a front girder portion and a back girder portion. The lattice frame units which can be set up on the two sides of the apparatus or stage can be connected together by transversely extending struts.

Desirably the winding tube is secured to the upper girder portions by way of brackets while the mounting support which holds the free end of the foil is fixed to the lower girder portions.

The invention will now be further described by way of the example of the embodiments illustrated in the drawing in which:

FIG. 1 is a simplified diagrammatic side view of the apparatus according to the invention,

FIG. 2 is a more detailed diagrammatic side view of the apparatus according to the invention, simultaneously showing the auditorium,

FIG. 3 is a side view of the stage similarly to the illustration in FIG. 2 with the floor lowered,

FIG. 4 is a view of the auditorium and the stage looking in the direction of the line IV—IV in FIG. 2,

FIG. 5 is a side view of the apparatus according to the invention when using the lattice frames surrounding it, and

FIG. 6 is a view in the direction of the line VI—VI.

FIG. 1 shows the physical principle of the apparatus according to the invention with the computer-controlled intelligent light amplifier 12 which acts as an image source, the mirror 14 which in the view in FIG. 1 is arranged to the left in front of it and which projects the light radiated on to it from the light amplifier 12 on to the reflecting surface 18 in the form of a light cone 16 as indicated by two broken lines, the foil 20 with its lower holding means in the form of a mounting bracket 22 and its upper holding means in the form of a winding tube 24 and the virtual image 26 which is represented in the background of the stage. The computer-controlled intelligent light amplifier 12 projects a moving image on to the mirror 14. This projects it on to the reflecting surface 18 which projects it on to the foil 20. From the point of view of a viewer who is at the left in FIG. 1—see FIG. 2—a moving image appears in the background as a virtual image 26.

FIGS. 2 and 3 show a practical application of the apparatus according to the invention at a presentation or lecture function. More specifically FIG. 2 again shows the stage 28, the floor 30 thereof and the ceiling 32 thereof. Extending under the ceiling 32 of the stage 28 over the entire width thereof is a curtain or a cover rail or board 34. It covers over in a forward direction the computer-controlled intelligent light amplifier 12 and the mirror 14. The viewers 38 sit in the auditorium 36. The presenter or lecturer 40 stands on the stage 28 behind the reflecting surface 18. The reflecting surface 18 is for example a projection screen or a coat of white paint. The double-headed arrow shown under the floor 30 is intended to indicate that it can be raised and lowered. FIG. 2 shows the floor 30 at its normal height. The virtual image 26 appears in the background of the stage 28 at a given location. FIG. 3 shows the same stage 28 with the floor 30 lowered. When the floor 30 is lowered the virtual image 26 moves rearwardly, towards the right when looking at FIGS. 2 and 3.

FIG. 4 shows a practical application of the apparatus according to the invention in a presentation function relating to motor vehicles. FIG. 4 shows a presentation article 42, in this example being a motor vehicle. The viewers 38 see it in the background as a virtual image. They do not recognise that this involves a reflection at the reflecting surface 18 and the foil 20. They only see how the presenter 40 moves freely in front of the motor vehicle, points with his arms and hands to the motor vehicle and parts thereof, explains details in words, and in so doing neither interferes with nor in any way influences the reproduction of the motor vehicle in the background in the form of the virtual image 26.

FIGS. 5 and 6 show the transportable embodiment of the apparatus according to the invention, which can be set up at any desired location. Lattice frames 44 which can be set up at both sides of the apparatus serve for that purpose. Each lattice frame comprises a lower girder portion 46, an upper girder portion 48, a front girder portion 50 and a back girder portion 52. Lattice frames of that kind are known. Each girder portion comprises a plurality of parts which can be releasably connected together. For the purposes of erecting the apparatus, the parts of the girder portions are fitted together and joined together. For transportation purposes they are separated from each other and can be transported in the form of comparatively small units on a truck or the like. As shown in FIG. 5 the computer-controlled intelligent light amplifier 12 and the winding tube 24 are fixed to a bracket. The bracket is in turn fixed to a transverse strut which connects the two upper girder portions 48. The same applies in regard to the mirror 14. When the apparatus is erected the foil 20 is pulled off the winding tube 24, fixed to the mounting bracket 22 and then tensioned. The reflecting surface 18 is laid on the floor in the form of a plate or the like which is coated or painted white, or in the form of a projection screen. The stage 28 on which the presenter 40 stands when making his presentation is composed of parts which are known per se on their own and it is erected in the rearward region of the apparatus.

I claim:

1. Apparatus for representing moving images in the background of a stage using an image source, said stage including a floor, a ceiling disposed vertically above said floor and a background disposed therebetween, said apparatus characterised in that a reflecting surface (18) is arranged on said floor (30) of said stage (28) in the central region thereof, a transparent smooth foil (20) extends between said floor (30) and said ceiling (32) at a position which is disposed further forwardly, and the image source is arranged at the ceiling

5,865,519

5

(32) in front of the upper end of the foil (20) which is held there, and is directed on to the reflecting surface (18).

2. Apparatus as set forth in claim 1 characterised in that the foil (18) extends at an angle of about 45° relative to the floor (30) of the stage (28).

3. Apparatus as set forth in claim 1 or claim 2 characterised in that the image source is a computer-controlled intelligent light amplifier (12).

4. Apparatus as set forth in claim 3 characterised in that a mirror (14) is arranged in front of the computer-controlled light amplifier (12) and said light amplifier is directed on to the mirror (14) and the mirror (14) receives the light radiated from the light amplifier (12), is directed on to the reflecting surface (18) and projects the light on to said reflecting surface.

5. Apparatus as set forth in claim 4 characterised in that the light amplifier (12) and the mirror (14) are covered over forwardly by a curtain extending over the entire width of the stage (28).

6. Apparatus as set forth in claim 1 characterised in that the foil is subject to a tensile stress.

7. Apparatus as set forth in claim 6 characterised in that the foil (20) has a surface area of at least 3 m times 4 m.

8. Apparatus as set forth in claim 7 characterised in that the foil (20) is rolled on a winding tube (24) and can be pulled off same and can be fixed with its free end in a support mounting (22).

6

9. Apparatus as set forth in claim 1 characterised in that the reflecting surface (18) is a coat of white paint.

10. Apparatus as set forth in claim 1 characterised in that the reflecting surface (18) is a white projection screen.

11. Apparatus as set forth in claim 1 characterised in that the floor (30) of the stage (28) can be raised and lowered.

12. Apparatus as set forth in claim 4 characterised in that light amplifier (12), mirror (14), reflecting surface (18), foil (20) and stage (28) are enclosed by a lattice frame (44) and can be fixed thereto.

13. Apparatus as set forth in claim 12 characterised in that the lattice frame (44) includes two units which can be set up on both sides of the stage (28) and each unit has a lower girder portion (46), an upper girder portion (48), a front girder portion (50) and a back girder portion (52).

14. Apparatus as set forth in claim 13 characterised in that the two lattice frame units which can be set up on both sides of the stage (28) can be connected by transversely extending struts.

15. Apparatus as set forth in claim 4 characterised that the light amplifier (12) and the mirror (14) are covered over forwardly by a cover bar (34) extending over the entire width of the stage (28).

*   *   *   *   *

## CERTIFICATE OF SERVICE

The undersigned, counsel of record for the Jackson Defendants (as defined above) and Defendant Dick Clark Productions, hereby certifies that on the 21st day of July, 2014, I caused a copy of the foregoing motion to dismiss to be served electronically to counsel of record for all parties who have appeared in this action through the Court's CM/ECF system (as all such counsel appear to be registered CM/ECF users).


By: /s/ Jonathan P. Steinsapir
    Jonathan P. Steinsapir

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850