CRAIG A. NEWBY (NSBN 8591)
McDONALD CARANO WILSON LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Telephone:     702.873.4100
Facsimile:     702.873.9966
cnewby@mcdonaldcarano.com

RYAN G. BAKER (admitted *pro hac vice*)
BAKER MARQUART LLP
10990 Wilshire Boulevard, Fourth Floor
Los Angeles, CA 90024
Telephone:   424.652.7800
Facsimile:   424.652.7850
rbaker@bakermarquart.com

*Attorneys for Plaintiffs*
*Hologram USA, Inc., Musion Das Hologram*
*Limited and Uwe Maass*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HOLOGRAM USA, INC., a Delaware corporation; MUSION DAS HOLOGRAM LIMITED, a corporation organized under the laws of the United Kingdom; and UWE MAASS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>PULSE EVOLUTION CORPORATION, a Nevada corporation; PULSE ENTERTAINMENT CORPORATION, a Delaware corporation; JOHN C. TEXTOR, an individual; DICK CLARK PRODUCTIONS, INC., a Delaware corporation; JOHN BRANCA and JOHN MCCLAIN, Executors of the Estate of Michael J. Jackson; MJJ PRODUCTIONS, INC., a California corporation; MUSION EVENTS LTD., a United Kingdom private company; MUSION3D LTD., a United Kingdom private company; WILLIAM JAMES ROCK, an individual; IAN CHRISTOPHER O'CONNELL, an individual; and DOES 1 through 10,<br><br>Defendants. | Case No.: 2:14-cv-00772-GMN-NJK<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS PULSE ENTERTAINMENT CORPORATION AND PULSE EVOLUTION CORPORATION'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) AND 12(b)(3) OR, ALTERNATIVELY, MOTION TO STAY THE ACTION PENDING RESOLUTION OF ARBITRATION** |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendants Pulse Evolution Corporation and Pulse Entertainment Corporation (collectively, "Pulse") initially asked the Court to stay this action pending the resolution of an arbitration in the London Court of International Arbitration (the "LCIA").[1]  The arbitrator has now rendered a decision.  As a result, entry of such a decision moots Pulse's request for stay.  Recognizing this apparent result, Pulse has now filed a supplemental memorandum, seeking to convert its motion for stay into a motion to dismiss – based on Pulse's flawed interpretation of the arbitration order.  Pulse has not properly noticed any such motion to dismiss; nor has there been complete briefing on the issue.[2]  On that basis alone, this Court should deny Pulse's improper motion.  *See Wood v. Safeco Ins. Co. of America*, 2007 WL 675961, *1 (D. Ariz. Mar. 1, 2007).

In any event, Pulse's three-page supplemental memorandum does not demonstrate that dismissal is warranted.  To correct the numerous inaccuracies contained in Pulse's latest filing, Plaintiffs Hologram USA, Inc. ("Hologram USA"), Musion Das Hologram Limited ("MDH"), and Uwe Maass ("Maass") (collectively, "Plaintiffs") respectfully submit this response to clarify the meaning and effect of the LCIA's September 25 arbitration award, which addressed only the "narrow question" of contractual interpretation relating to "perpetual, irrevocable" licenses

---

[1] On June 24, 2014, Pulse previously filed a motion to stay this action (the "Motion") based on the then-pending arbitration before the LCIA.  (Doc. No. 56.)

[2] Pulse has filed a motion to dismiss only on grounds unrelated to the arbitration pending at the time.  (*Id*.)  Plaintiffs must be given an opportunity to oppose materially new arguments asserted in a motion to dismiss.  *Pacquiao v. Mayweather*, No. 2:09-cv- 2448-LRH-RJJ, 2010 U.S. Dist. LEXIS 92343, *3 (D. Nev. Aug. 13, 2010) (citing *Tovar v. United States Postal Serv*., 3 F.3d 1271, 1273 n.3 (9th Cir.1993) ("To the extent that a party raises a new argument or proffers new evidence and information in a reply brief, that argument or evidence is improper because the opposing party is deprived of an opportunity to respond."; *Allen v. McKenna Prop.Mgmt., LLC*, 2012 U.S. Dist. LEXIS 119376, *6 n.1 (D. Nev. Aug. 22, 2012) ("In its reply brief, McKenna raised new issues, primarily res judicata, not addressed or raised in its motion or Plaintiff's opposition. The Court will not consider issues raised for the first time in a reply."); *accord Weaver v. State, Dep't of Motor Vehicles*, 117 P.3d 193, 198-99 (Nev. 2005). A court should strike new arguments raised in a reply brief. *See Wright v. Kaiser Found. Hosps*., 2012 U.S. Dist. LEXIS 132459, *5-6 (N.D. Cal. Sept. 17, 2012) ("In their reply brief, defendants raise a new argument. . . . This argument is not raised in defendants' original motion brief, and so Wright has not had an opportunity to respond. Defendants' sandbagging will not be tolerated, and their arguments on this issue are stricken from their reply brief.").

contained in the 2007 "Eyeliner Agreement."[3] (Doc. No. 125 (the "Award"), Ex. A at ¶¶ 5, 36.) The arbitrator found those licenses, which Maass granted to several different persons on a territory-by-territory basis and later purported to terminate, "continue in full force and effect notwithstanding any such termination, provided in each case there has been no breach of the said licence itself." (*Id*. at ¶ 265(2).)

Pulse now attempts to rely on the arbitrator's decision to establish that its co-defendants, Ian O'Connell, James Rock and Musion Events Limited ("MEL"), had the right to exploit the two U.S. patents[4] at issue in this action in the United States. In its supplemental memorandum, Pulse – with little factual analysis of the arbitrator's decision – simply asserts that the decision "confirms that the licenses granted to Defendants O'Connell, Rock and MEL remain in effect" and therefore "they may exploit the patents-in-suit in the United States." (Doc. No. 125 at 3:6-7.) But Pulse does not and cannot any identify any license issued to it or any of the other defendants that allows them to practice the Patents-In-Suit in the United States. To the contrary, it is indisputable that the only licenses granted to O'Connell, Rock and MEL in the Eyeliner Agreement were for foreign territories outside of the United States. (Doc. No. 55-1, Ex. A at ¶ 2.4(d).) Accordingly, Pulse and the other defendants in this case cannot rely on the arbitrator's decision in London as a basis for dismissing or staying this U.S. case.

If anything, the Award actually confirms that the Plaintiffs possess the rights to exploit the Patents-In-Suit in the United States. In paragraphs 2.4(b)(ii), 2.4(f) and 2.4(i) of the Eyeliner Agreement, Maass granted a license to exploit the licensed product in the United States to Musion Systems Limited ("MSL"). Subsequent to that assignment, plaintiff MDH lawfully purchased the assets of MSL in an administration sale. That sale was recently upheld in a final decision issued by the Court of Appeal in London. (*See* Doc. No. 66.) To the extent that any license granted to MSL under the Eyeliner Agreement survived the purported termination by Maass, it is still Plaintiffs –

---

[3] The Eyeliner Agreement was filed as Exhibit A to the Declaration of Marc Deem in support of Pulse's motion to stay. (*See* Doc. No. 55-1.)

[4] The patents at issue in this action are U.S. Patent Nos. 5,865,519 (the " '519 patent") and 7,883,212 (the " '212 patent") (collectively, the "Patents-In-Suit").

2
PLAINTIFFS' REPLY TO PULSE'S SUPPLEMENTAL MEMO

not defendants – who collectively own any legal or beneficial rights to exploit the Patents-In-Suit in the United States.  Accordingly, the LCIA proceeding provides Pulse with neither a basis to stay nor to dismiss this action.

## II.   FACTUAL BACKGROUND

Plaintiffs previously set forth the factual background pertinent to Pulse's Motion in their original opposition papers.  (*See* Doc. No. 66.)  That discussion establishes, among other things, that plaintiff MDH purchased the assets of MSL in an administration sale, which has been upheld in a final decision by the Court of Appeal in London.  (*See id*. at 4-6.)  Plaintiffs do not repeat that discussion here, but instead summarize the facts that provide context for the arbitrator's recent decision.

### A.   The Eyeliner Agreement

In June 2007, Maass, Rock, O'Connell, MSL, and MEL entered into the Eyeliner Agreement to restructure and organize their "Musion" business.  Before that agreement, "there was a mix of ownership of [the intellectual property rights] deployed in the Musion business" and "there were various licensing, cross-licensing and exploitation agreements between the Parties established for the purposes of the business."  (Award, ¶ 47.)  In order to simplify the business structure and achieve other objectives, the parties agreed to consolidate the worldwide patent rights to the Eyeliner technology with Maass, who, in turn, granted certain licenses to the other parties on a territory-by-territory basis.  (*See id*., ¶¶ 44-58.)  The parties also agreed to certain income sharing terms.  (*See id*.)

Paragraphs 2.4(b)(ii), 2.4(f) and 2.4(i) of the Eyeliner Agreement specifically carved out the licenses to the United States, India and several other territories.  (Doc. No. 55-1.)  The agreement gives those rights to MSL – not O'Connell, Rock or MEL. Paragraph 2.4(i), for example, provides that installations in or originating from the:

> United States of America shall be *exclusive to MSL* as between the parties to this Agreement. Installations in these Territories will be subject to written permission from MSL to either MEL, Eventworks or Maass

3

1  Licensees and any licenses granted in these Territories must have the prior unanimous approval of the board of MSL.[5]

2  (*Id*., ¶ 2.4(i).)

3  Under the Eyeliner Agreement, Maass granted licenses to several other territories to
4  Eventworks. Paragraph 2.4(c) provides Eventworks with "an exclusive perpetual sub-licensable
5  royalty-free licence for installations of Foil and Licensed Product in Eventworks Territories or any
6  where [sic] in the world for companies or individuals domiciled in the Eventwork Territories." (*Id*.,
7  ¶ 2.4(c).) It defined the "Eventworks Territories" as Bahrain, Oman, Kuwait, Qatar, UAE and
8  Switzerland. (*Id*., ¶ 2.2(b)(i).)

9  Lastly, O'Connell and Rock, for the benefit of MEL, obtained licenses in other territories
10 outside the United States. For instance, under paragraph 2.4(d)(i) of the Eyeliner Agreement, Maass
11 granted an "irrevocable exclusive sub-licensable license" to O'Connell and Rock and for the benefit
12 of MEL in the territories of the United Kingdom, Ireland, Italy, France and Russia.[6] (*Id*., ¶
13 2.4(d)(i).) Additionally, Maass granted a "non exclusive perpetual irrevocable license" to carry out
14 installations "in all other territories [] that are not covered by exclusive licenses" in paragraph 2.4.
15 (*Id*., ¶ 2.4(d)(ii).)

16 **B.    Maass' Termination Of The Eyeliner Agreement**

17 On April 19, 2013, Maass purported to terminate the Eyeliner Agreement for alleged
18 repudiatory breach of contract. (Award, ¶ 61.) Maass claimed in his letter that he was entitled to
19 terminate the Eyeliner Agreement for various reasons, which were summarized in the Statement of

---

[5] Additionally, under paragraph 2.4(b)(ii), Maass granted MSL a "perpetual irrevocable exclusive sub-licensable royalty-free licence" in "all other territories in the world" except UAE, Behrain, Kuwait, Oman, Qatar, Switzerland (the 6 countries comprising the Eventworks Territories), UK, Ireland, France, Italy and Russia (the 5 countries comprising the MEL Territories). (Eyeliner Agreement, ¶ 2.4(b)(ii).)

[6] As with other licensing provisions, the license granted to O'Connell and Rock for the benefit of MEL in paragraph 2.4(d)(i) authorized them "to carry out installations . . . in any place in the world for persons or companies domiciled in" the United Kingdom, Ireland, Italy, France or Russia. (Eyeliner Agreement, ¶ 2.4(d)(i).) While Pulse has relied on this "any place in the world" language to argue that its co-defendants were entitled to exploit the Patents-In-Suit in the United States (Doc. No. 84 at 3:10-18), none of the defendants in this case (including Pulse) are domiciled in the United Kingdom, Ireland, Italy, France or Russia. Accordingly, paragraph 2.4(d)(i) did not permit the defendants to exploit the Patents-In-Suit in the United States in connection with the Billboard Music Awards.

28

4

PLAINTIFFS' REPLY TO PULSE'S SUPPLEMENTAL MEMO

Defence as follows:

>   (1) MSL's failure to pay any commission due to him under clause 2.4(e) of the Eyeliner Agreement;
>   (2) MSL's failure to provide any accounts to him showing the commission due or even accruing;
>   (3) MSL's removal of Mr. Maass, acting through Mr. O'Connell and Mr. Rock, from its board of directors; and
>   (4) The carrying out of unauthorized installations by MSL or MEL in the Maass Licensee Territories and in the Eventworks Territories and, in the case of MEL, in territories assigned to MSL under the Eyeliner Agreement.

(*Id.*)

O'Connell disputed Maass' entitlement to terminate the Eyeliner Agreement. (*Id.*, ¶ 62.) He also "asserted that all the rights and licenses expressed in the Eyeliner Agreement to be "perpetual [and] irrevocable," whether granted to MSL or MEL, were not affected by any purported termination of the Eyeliner Agreement. (*Id.*, ¶ 63.) Maass took the opposite position, contending that "the perpetual, irrevocable licences did not survive the [purported] termination of the Eyeliner Agreement." (*Id.*, ¶ 65.)

**C.     The Arbitrator's Award**

On August 14, 2013, claimants Ian O'Connell and MEL initiated the LCIA arbitration against respondents Maass and Rock. (Award, ¶¶ 1, 2, 13.) Although Rock is named as a respondent in the arbitration, his interests aligned with O'Connell and he sought the same relief as O'Connell. (*Id.*, ¶ 32.)

The arbitrator was only asked to consider a "narrow question of contractual interpretation" (*id.*, ¶ 36) – namely, "to determine the question of whether the perpetual irrevocable licences granted under the Eyeliner Agreement survive its purported termination." (*Id.*, ¶ 76.) The arbitrator was not asked to decide and did not decide whether there had been a breach of the Eyeliner Agreement. Instead, the claimants took the position that even if there had been a breach, the "perpetual, irrevocable licences granted under clause 2.4(d)(i) clause 2.4(d)(ii), clause 2.4(b)(ii) and/or clause 2.4(f) of the Eyeliner Agreement continue in full force and effect notwithstanding any such termination." (*Id.*, ¶ 5.)

5

In the Award, the arbitrator stated he was "prepared to order a declaration on substantially the terms requested by the Claimants, with two qualifications." (*Id*., ¶ 239.) The arbitrator first assumed that Maass had "duly terminated" the Eyeliner Agreement for one or more of the repudiatory breaches claimed by Maass in his April 19, 2013 letter. (*Id*., ¶ 265(2).) Based on that assumption, the arbitrator declared that the "perpetual, irrevocable licences granted under clause 2.4(b)(ii), clause 2.4(d)(i), clause 2.4(d)(ii) and clause 2.4(f) of the Eyeliner Agreement continue in full force and effect notwithstanding any such termination, provided in each case there has been no breach of the said licence itself." (*Id*.)

The Award was qualified in several respects. Because the arbitrator did not decide whether there was a breach of the Eyeliner Agreement or the underlying licenses, he did not foreclose the possibility that the "perpetual, irrevocable" licenses had been duly terminated due to a breach of the terms upon which the license was granted. (*Id*., ¶ 239.) In fact, the arbitrator opined that MSL's "alleged failure to pay commission" might constitute "a breach of any of the four subject licences" because the "payment of such commission to Mr. Maass was part of the overall licensing arrangements set out at clause 2.4 of the Eyeliner Agreement." (*Id*., ¶ 235.) Accordingly, the arbitrator only resolved an issue of contract interpretation and did not fully and finally determine whether the licenses actually remain in effect.[7]

### III.  ARGUMENT

In its supplemental memorandum, Pulse argues that the Award is "determinative of the issue of liability for the alleged patent infringement in this action" because it "confirms that the licenses granted to Defendants O'Connell, Rock and MEL remain in effect [such that] they may exploit the patents-in-suit in the United States. (Doc. No. 125 at 3:6-8.) That argument is disingenuous, at best. The rights of O'Connell, Rock and MEL in the United States were never before the LCIA

---

[7] Additionally, the arbitrator determined the "question of survivability of the subject licences in the context of the actual grounds of repudiatory breach raised by Mr Maass, rather than the wider, and more abstract, question of whether the licences would survive any repudiatory breach of the Eyeliner Agreement whatsoever." (Award, ¶ 90.) Thus, Maass very well could raise other factual grounds for termination of the licenses.

6
PLAINTIFFS' REPLY TO PULSE'S SUPPLEMENTAL MEMO

1 arbitrator. Accordingly, the Award does not purport to adjudicate those rights. As the arbitrator pointed out, the Award only interprets a "narrow question" relating to the proper interpretation of certain "perpetual, irrevocable" licenses granted on a territory-by-territory basis to different persons. (Award, ¶¶ 36, 76.) Even if the license for the U.S. territory survived Maass' termination of the Eyeliner Agreement (an issue that has not been determined), that would not mean that O'Connell, Rock or MEL possessed the rights to exploit the Patents-in-Suit in the United States. Indeed, Pulse does not and cannot cite any language from the Award supporting Pulse's assertion that O'Connell, Rock or MEL possess any rights under the Eyeliner Agreement to exploit the Patents-In-Suit in the United States.

Under the Eyeliner Agreement, the territory of the United States was allocated to MSL. (*See* Eyeliner Agreement, ¶¶ 2.4(b)(ii), 2.4(f) and 2.4(i) ("installations in or originating from the . . . United States of America shall be exclusive to MSL as between the parties to this Agreement"). Nowhere does the Eyeliner Agreement give the defendants any rights to the Patents-In-Suit. Nor does the Award find or otherwise suggest that any of the defendants possess such rights. As the successor-in-interest to MSL, plaintiff MDH – which lawfully purchased the assets of MSL in an administration sale[8] – is now the rightful owner of any licenses granted to MSL under the Eyeliner Agreement to the extent that those licenses survive Maass' termination of the agreement. Accordingly, plaintiffs Maass, MDH, and their licensee, Hologram USA, have standing to pursue this action for patent infringement.

---

[8] In its reply brief in support of its motion to dismiss, Pulse made a variety of factual arguments about its co-defendants' rights to practice the Patents-In-Suit that discovery will reveal are false and untrue. For example, Pulse relied on a fraudulent assignment of the '212 patent from MSL to Musion IP Limited that was not filed with the U.S. Patent and Trademark Office until June 17, 2014 – four days before defendants filed their reply papers in support of the instant motion. Plaintiffs previously objected to the admissibility and propriety of such disputed extrinsic "evidence," especially at the motion to dismiss stage. (*See* Doc. No. 91 at 2-3.) In any event, it is undisputed that the LCIA arbitration has nothing whatsoever to do with the validity of this purported assignment. Accordingly, dismissal or a stay of the action based on the arbitrator's decision is clearly unwarranted.

7
PLAINTIFFS' REPLY TO PULSE'S SUPPLEMENTAL MEMO

Moreover, the arbitrator's ruling renders Pulse's motion to stay moot. In fact, although Pulse seeks dismissal of the complaint for failure to state a claim, it does not argue in its supplemental memorandum that the Award warrants a stay at this time. This Court should proceed to determine the merits of this case, including the parties' respective rights to practice the Patents-In-Suit in the United States.

## V.   CONCLUSION

For the reasons set forth in Plaintiffs' original opposition papers and this reply to Pulse's supplemental memorandum, the arbitrator's recent decision does not warrant a dismissal or stay of this action.

DATED this 16th day of October 2014.

                    McDONALD CARANO WILSON LLP

                    By: /s/ Ryan G. Baker
                        CRAIG A. NEWBY (#8591)
                        2300 W. Sahara Avenue, #1200
                        Las Vegas, Nevada 89102
                        Telephone: 702.873.4100
                        Facsimile: 702.873.9966
                        cnewby@mcdonaldcarano.com

                        RYAN G. BAKER (admitted *pro hac*)
                        BAKER MARQUART LLP
                        10990 Wilshire Boulevard
                        Fourth Floor
                        Los Angeles, CA  90024
                        Telephone:   424.652.7800
                        Facsimile:   424.652.7850
                        rbaker@bakermarquart.com

                        *Attorneys for Plaintiffs*
                        *Hologram USA, Inc., Musion Das Hologram Limited*
                        *and Uwe Maass*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of Baker Marquart LLP, and that on the 16th day of October, 2014, a true and correct copy of the foregoing **PLAINTIFFS' REPLY TO DEFENDANTS PULSE ENTERTAINMENT CORPORATION AND PULSE EVOLUTION CORPORATION'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) AND 12(b)(3) OR, ALTERNATIVELY, MOTION TO STAY THE ACTION PENDING RESOLUTION OF ARBITRATION** to be served via the U.S. District Court's Notice of Electronic Filing ("NEF") in the above-captioned case, upon the following:

Donald J. Campbell, Esq.
J. Colby Williams, Esq.
Campbell & Williams
700 South Seventh Street
Las Vegas, Nevada 89101

Martin D. Singer, Esq.
Todd S. Eagan, Esq.
Lavely & Singer Professional Corporation
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906

*Attorneys for Defendants Pulse Entertainment Corporation, Pulse Evolution Corporation, and John Textor*

Michael N. Feder, Esq.
Jennifer Ko Craft, Esq.
Gordon Silver
3960 Howard Hughes Parkway, 9th Floor
Las Vegas, Nevada 89169

Kinsella Weitzman Iser Kump & Aldisert LLP
Howard Weitzman, Esq.
Gregory Korn, Esq.
Jonathan Steinsapir, Esq.
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401

*Attorneys for Dick Clark Productions, Inc., John Branca and John McClain, Executors of the Estate of Michael J. Jackson, and MJJ Production, Inc.*

/s/Ashlee Stewart

9

An employee of BAKER MARQUART LLP