1
CAMPBELL & WILLIAMS
DONALD J. CAMPBELL, ESQ. (1216)
2
djc@campbellandwilliams.com
J. COLBY WILLIAMS, ESQ. (5549)
3
jcw@campbellandwilliams.com
700 South Seventh Street
4
Las Vegas, Nevada 89101
Telephone:  (702) 382-5222 / Facsimile:  (702) 382-0540
5
6
LAVELY & SINGER
PROFESSIONAL CORPORATION
MARTIN D. SINGER (SBN 78166) *(pro hac vice)*
7
mdsinger@lavelysinger.com
TODD S. EAGAN (SBN 207426) *(pro hac vice)*
8
teagan@lavelysinger.com
2049 Century Park East, Suite 2400
9
Los Angeles, California 90067-2906
Telephone: (310) 556-3501 / Facsimile: (310) 556-3615
10
11
Attorneys for Defendant William James Rock

12
**UNITED STATES DISTRICT COURT**

13
**DISTRICT OF NEVADA**

14
HOLOGRAM USA, INC., a Delaware
corporation; MUSION DAS HOLOGRAM
15
LIMITED, a corporation organized under the
laws of the United Kingdom; and UWE MAASS
16
an individual,

17
             Plaintiffs,
18
       v.

19
PULSE EVOLUTION CORPORATION, a
Nevada corporation; PULSE
20
ENTERTAINMENT CORPORATION, a
Delaware corporation; JOHN C. TEXTOR, an
21
individual; DICK CLARK PRODUCTIONS,
INC., a Delaware corporation; JOHN BRANCA
22
and JOHN MCCLAIN, Executors of the Estate
of Michael J. Jackson; MJJ PRODUCTIONS,
23
INC., a California corporation, MUSION
EVENTS LTD., a United Kingdom private
24
company; MUSION 3DLTD., a United Kingdom
private company; WILLIAM JAMES ROCK, an
25
individual; IAN CHRISTOPHER O'CONNELL,
an individual; and DOES 1 through 10,
26
             Defendants.
27
28

Case No.: 2:14-cv-00772-GMN-NJK

**DEFENDANT WILLIAM JAMES ROCK'S
NOTICE OF MOTION AND MOTION TO
DISMISS ALL CLAIMS RELATING TO
INFRINGEMENT OF U.S. PATENT NO.
5,865,519 PURSUANT TO FRCP 12(b)(6);
MEMORANDUM OF POINTS AND
AUTHORITIES**

**[Filed concurrently with Supporting
Declaration of Todd S. Eagan; [Proposed]
Order]**

**[FRCP 12(b)(6)]**

**(Hearing Requested)**

---

Defendant William James Rock ("Rock" or "Defendant"), hereby moves for an order, pursuant to FRCP 12(b)(6), dismissing all claims related to allegations of infringement of U.S. Patent No. 5,865,519 (the "'519 patent") for failure to state a claim upon which relief can be granted. Rock seeks dismissal of the following claims for relief, without leave to amend, in the First Amended Complaint ("FAC"):

1.   The **First Claim for Relief** for "Infringement of Patent No. 5,865,519";

2.   The **Third Claim for Relief** for "Willful Infringement" insofar as it relates to the alleged willful infringement of the '519 patent;

3.   The **Fourth Claim for Relief** for "Active Inducement" insofar as it relates to the alleged induced infringement of the '519 patent;

4.   The **Fifth Claim for Relief** for "Contributory Infringement" insofar as it relates to the alleged contributory infringement of the '519 patent; and

5.   The **Sixth Claim for Relief** insofar as it seeks injunctive relief relating to the alleged infringement of the '519 patent.

This Motion is made and based on the following Memorandum of Points and Authorities, the FAC (including the exhibits thereto and the matters incorporated into the FAC by reference), any further briefing on this matter, matters upon which judicial notice may be taken, and any oral argument the Court may permit at a hearing of this matter.

Dated: November 18, 2014

LAVELY & SINGER
PROFESSIONAL CORPORATION
MARTIN D. SINGER
TODD S. EAGAN

By:   /s/ Todd S. Eagan
       TODD S. EAGAN

CAMPBELL & WILLIAMS
J. COLBY WILLIAMS

Attorneys for WILLIAM JAMES ROCK

1

# TABLE OF CONTENTS

<u>**Page(s)**</u>

I.   INTRODUCTION AND BACKGROUND ................................................................ 1

   A. The FAC Establishes on its Face that Defendants Did Not
      Infringe the '519 Patent................................................................................ 1

   B. Plaintiff Maass Has Publicly Claimed the '212 Patent is Invalid ................... 3

II.  LEGAL STANDARD FOR DETERMINING NON-INFRINGEMENT OF
    A PATENT AT THE PLEADING STAGE ............................................................ 5

III. THERE IS NO INFRINGEMENT OF THE '519 PATENT ................................... 7

   A. Several Limitations Are Missing From the Accused Apparatus...................... 8

   B. The Accused Apparatus Is Non-Infringing As a Matter of Law.................... 10

IV.  CONCLUSION ................................................................................................... 13

WILLIAM JAMES ROCK'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.,*
    265 F.3d 1294 (Fed. Cir. 2001) ............................................................... 6

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678 (2009) ..................................................................... 5

*Balistreri v. Pacifica Police Dept.,*
    901 F.2d 696 (9th Cir. 1990) ................................................................. 5

*C & F Packing Co., Inc. v. IBP, Inc.,*
    224 F.3d 1296 (Fed.Cir.2000) ............................................................... 6

*Colida v. Nokia, Inc.,*
    347 Fed.Appx. 568 (Fed.Cir.2009) ........................................................ 6

*Conoco, Inc. v. Energy & Entl. Int'l, L.C.,*
    460 F.3d 149, 1359 (Fed. Cir. 2006) ..................................................... 11

*Cotapaxi Custom Design and Mfg., LLC v. Corporate Edge, Inc.,*
    2007 WL 2908265, at 5–6 (D.N.J. Oct. 1, 2007) ..................................... 6

*Cybor Corp. v. FAS Techs.,*
    138 F.3d 1448 (Fed. Cir. 1998) ............................................................ 10

*Dawn Equip. Co. v. Kentucky Farms Inc.,*
    140 F.3d 1009, 1014 (Fed. Cir. 1998) .................................................... 7

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,*
    896 F.2d 1542 (9th Cir. 1989) ............................................................... 5

*Haynes Int'l, Inc. v. Jessop Steel Co.,*
    8 F.3d 1573 (Fed. Cir. 1994). ............................................................... 4

*Highmark, Inc. v. Allcare Health Management System, Inc.,*
    134 S.Ct. 1744 (2014) ........................................................................ 4

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.,*
    681 F.3d 1323 (Fed. Cir. 2012) ............................................................ 6

*Ileto v. Glock, Inc.,*
    349 F.3d 1191 (9th Cir. 2003) ............................................................... 5

**Cases Continued**

*IPVX Patent Holdings, Inc. v. Voxernet, LLC,*
    13-1708 (N.D. Cal., filed April 16, 2013) ........................... 4

*Jeneric/Pentron, Inc. v. Dillon Co., Inc.,*
    205 F.3d 1377 (Fed. Cir. 2000) ........................... 10

*Kellman v. Coca–Cola Co.,*
    280 F.Supp.2d 670 (E.D.Mich.2003) ........................... 6

*Laitram Corp. v. Rexnord, Inc.,*
    939 F.2d 1533 (Fed.Cir.1991) ........................... 8, 13

*Lemelson v. United States,*
    752 F.2d 1538 (Fed.Cir.1985) ........................... 8

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967 (Fed. Cir. 1995) aff'd, 517 U.S. 370 (1996) ........................... 7, 10, 11

*Mas-Hamilton Group v. LaGard, Inc.,*
    156 F.3d 1206 (Fed. Cir. 1998) ........................... 8, 10, 13

*Merriman v. Security Ins. Co. of Hartford,*
    100 F.3d 1187 (5th Cir. 1996) ........................... 4

*Monsanto v. Syngenta Seeds, Inc.,*
    503 F.3d 1352 (Fed. Cir. 2007) ........................... 13

*Octane Fitness LLC v. Icon Health & Fitness, Inc.,*
    134 S.Ct. 1749 (2014) ........................... 4

*Parker v. Kimberly–Clark Corp.,*
    No. 11 C 5658, 2012 WL 74855, at 2–3 (N.D.Ill. Jan. 10, 2012) ........................... 6

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) ........................... 11

*Realtek Semiconductor Corp. v. Marvell Semiconductor, Inc.,*
    No. C-04-4265 MMC, 2005 WL 3634617 (N.D. Cal. Nov. 21, 2005) ........................... 4

*Refac Intern, Ltd. v. Hitachi, Ltd.,*
    141 F.R.D. 281 (C.D. Cal 1991) ........................... 4

*Rohm & Haas Co. v. Brotech Corp.,*
    127 F.3d 1089 (Fed. Cir. 1997) ........................... 8, 10, 13

*Salameh v. Tarsadia Hotel,*
    726 F.3d 1124 (9th Cir. 2013) ........................... 5

iii

<u>**Cases Continued**</u>

*Skidmore Energy, Inc. v. KPMG,*
      455 F.3d 564 (5th Cir. 2006) .................................................................. 4

*Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.,*
      279 F.3d 1357 (Fed. Cir. 2002) ............................................................. 2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
      551 U.S. 308 (2007) ............................................................................. 5

*United States v. Ritchie,*
      342 F.3d 903 (9th Cir.2003) ................................................................. 5

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.,*
      208 F.3d 981 (Fed. Cir. 2000) ......................................................... 4, 14

*Vitronics Corp. v. Conceptronic, Inc.,*
      90 F.3d 1576 (Fed. Cir. 1996) ......................................................... 7, 11

*Wahpeton Canvas Company, Inc. v. Frontier, Inc.,*
      870 F.2d 1546 (Fed. Cir. 1989) ........................................................... 13

*West Coast Theater Corp. v. City of Portland,*
      897 F.2d 1519 (9th Cir. 1990) .............................................................. 4

<u>**STATUTES**</u>

35 U.S.C.
      § 285   ............................................................................................... 4, 14
      § 112   ................................................................................................... 9
      § 112(d)   .......................................................................................... 9, 10

<u>**FEDERAL RULES**</u>

Federal Rules of Civil Procedure Rule 12(b)(6)   ....................................... 1, 5, 6,10

WILLIAM JAMES ROCK'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)

1        **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.    INTRODUCTION AND BACKGROUND**

3        As alleged in the First Amended Complaint ("FAC"), this action arises out of the

4  presentation of a digitally animated virtual Michael Jackson at the 2014 Billboard Music Awards

5  show ("2014 BMA"). Dkt. No. 34 (FAC, ¶3). The virtual Michael Jackson performance was the

6  result of highly-sophisticated digital animation created and developed by Defendant Pulse

7  Evolution Corporation. William James Rock ("Rock") is alleged to have worked with Pulse

8  Evolution in connection with the projection apparatus used to display the animated virtual Michael

9  Jackson at the 2014 BMA. Dkt. No. 34 (FAC, ¶¶ 16, 66, 74, 76, 82).

10       Plaintiffs Hologram USA, Inc. ("Hologram USA"), Musion Das Hologram Limited

11  ("Musion Das Hologram") and Uwe Maass ("Maass") allege that the projection apparatus used in

12  the animated virtual Michael Jackson performance infringed on two patents purportedly owned or

13  controlled by Plaintiffs: Patent No. 5,865,519 (the "'519 Patent") and Patent No. 7,883,212 (the

14  "'212 Patent") (collectively the "Patents-in-Suit"). Dkt. No. 34 (FAC, ¶¶ 2, 3). The '519 patent,

15  which is attached as Exhibit "A" to the FAC, is also attached hereto as Appendix I for the

16  convenience of this Court. The Patents-in-Suit purport to cover a variation on the "Pepper's

17  Ghost" illusion technique which was first conceived over one hundred years ago. Dkt. No. 34

18  (FAC, ¶1).

19       **A.  The FAC Establishes on its Face that Defendants Did Not Infringe the '519 Patent**

20       Plaintiffs' FAC is factually and legally deficient on several grounds. First and foremost,

21  Plaintiffs cannot prove that Defendants used, let alone infringed, the Patents-in-Suit in creating the

22  Jackson presentation at the 2014 BMA. Indeed, this Court previously <u>denied</u> Plaintiffs' Emergency

23  Motion for Temporary Restraining Order by Plaintiffs, finding that Plaintiffs failed to demonstrate

24  a likelihood of success on the merits. See Dkt. Nos. 3 (Emergency Motion dated May 16, 2014)

25  and 20 (Order dated May 16, 2014).[1] At that time, Plaintiffs pleaded no facts whatsoever

26  ─────────────

27  [1] The Court's May 16, 2014 Order reflects that Plaintiffs presented no persuasive evidence of infringement
    to support their claims: "Plaintiffs have **failed to carry their burden of demonstrating that Defendants**

28  **likely infringe either of the Asserted Patents**. Plaintiffs must show that they will likely establish that
    "each and every limitation of a [patent] claim is present, either literally or equivalently, in the accused

1   supporting their contention that Defendants were intending to use any technology claimed in the

2   Patents-in-Suit as opposed to another application of the "Pepper's Ghost" illusion that is not

3   protected by these patents.  On May 18, 2014, Plaintiffs obtained an emergency Order permitting

4   them to inspect and videotape Defendants' accused apparatus before it was disassembled or

5   removed from its location at the 2014 BMA, and Plaintiffs and their counsel conducted the

6   inspection the same day.  See Dkt. Nos. 24 (Order) and 34 (FAC, ¶ 39:19-21).  On May 29, 2014,

7   Plaintiffs filed the FAC.  Tellingly, Plaintiffs did **not** include or reference any of the video footage

8   obtained from the inspection, undoubtedly because it confirmed there was no infringement.

9        Instead, in support of its claims, Plaintiffs attached and incorporated by reference to the

10   FAC an "interactive diagram" showing the process and apparatus that they accuse of infringing the

11   Patents-in-Suit, which they allege "confirms" that Defendants "used the Patented Technology."

12   Dkt. No. 34-4 (FAC ¶ 40, Ex. "D").  Plaintiffs allege that the diagram demonstrates the

13   infringement of the '519 patent by Defendants at the 2014 BMA (FAC ¶ 40).  However, the

14   diagram Plaintiffs rely on to support their claims for infringement of the '519 patent actually

15   disproves, as a matter of law, Plaintiffs' claim of infringement.  More specifically, the diagram

16   confirms that the accused apparatus does **not** meet two key limitations of the claims of the '519

17   patent, *i.e.*, (1) the requirement that the **transparent foil angle forward toward the audience**; and

18   (2) the requirement that **the image be projected "onto the reflecting surface(18)" that is on the**

19   **"floor" of the stage**.

20        Exhibit "D" to the FAC demonstrates unequivocally that Plaintiffs have not, and cannot,

21   establish that each and every limitation of the '519 patent claim is present, either literally or

22   equivalently, in the accused device.  Accordingly, all claims for infringement of the '519 patent fail

23   on the face of the FAC as a matter of law.  The Court need not look beyond the four corners of the

24   FAC to grant Defendants' motion to dismiss.

25

26   _____

27   device. *Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357, 1365 (Fed. Cir.
     2002).  However, the Court is completely unable to make such a determination.  Specifically, **Plaintiffs**

28   **have failed to provide the Court with sufficient information about the accused apparatus to enable the**
     **Court to compare any of the claims in the Asserted Patents to the accused apparatus.**"  Dkt. No. 20
     (Order dated May 16, 2014, 3:20-4:4) (emphasis added).

WILLIAM JAMES ROCK'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)

1    In short, Plaintiffs had no factual basis to allege infringement of the '519 patent. Their

2    pursuit of the claims despite being in possession of unequivocal evidence of non-infringement –

3    which they have attached to the FAC as Exhibit "D" – is inexcusable and raises serious concerns

4    regarding this action in its entirety, and indeed the claims concerning the '519 patent are objectively

5    baseless and have been since inception.

6        **B.  Plaintiff Maass Has Publicly Claimed the '212 is Invalid**

7        Although not presented for purposes of determination in the context of the instant Motion,

8    Rock will ultimately demonstrate to this Court that Plaintiffs' claims of infringement of the '212

9    patent also lack merit and are brought in bad faith. The May 18, 2014 inspection prior to the filing

10   of the FAC demonstrated to Plaintiffs that the accused apparatus at the 2014 BMAs did **not** employ

11   the clamping mechanism purportedly covered by the '212 patent.

12       Moreover, on multiple occasions Plaintiff Maass has made representations that the '212

13   patent is invalid – in direct contradiction to Plaintiffs' claims in the instant action. For example, on

14   September 15, 2013, Maass represented in writing to Defendant, John Textor, that he is in

15   possession of a "drawing and statement from 1999" that invalidate the '212 patent. See the

16   accompanying Declaration of Todd S. Eagan ("Eagan Decl."), ¶ 2, Ex "A" (September 15, 2014

17   text message from Maass to Textor). Subsequently, on July 2, 2014, Maass testified in the

18   proceeding entitled *Musion Events Ltd., et al. v. Uwe Maass*, London Court of International

19   Arbitration, No. 132483 that the '212 patent is essentially invalid:

20       "*Look, Peppers Ghost 2 [i.e., the '212 patent] is made to enhance the lifespan of patent*

21       *protection. That was the initial thought of it. But it is actually just **something that was***

22       ***done before**, written down new and applied for a patent for it because nobody did before,*

23       *although it was done before. **It is a risky patent, it is a weak one because once challenged***

24       ***from the right person it will die.***" Eagan Decl., ¶ 3, Ex "B" (Jul. 2, 2014 transcript *Musion*

25       *Events Ltd., et al. v. Uwe Maass, LCIA Arbitration* No. 132483, p. 176 (emphasis added)).

26       Maass thus admitted under oath that the embodiment of a Pepper's Ghost illusion claimed in

27   the '212 patent was publicly used and on sale dating back to 1998, many years before the

28   application for the '212 patent was filed. This directly contradicts Plaintiffs' claims in the instant

1  action and is evidence of their bad faith motives in pursuing claims of infringement of the '212

2  patent.

3     For the reasons set forth herein, it is evident that there is no factual or legal basis for

4  Plaintiffs to assert claim of infringement of the Patents-In-Suit. In patent actions, the court "in

5  exceptional cases may award reasonable attorney's fees to the prevailing party." 35 U.S.C. § 285.

6  It is widely recognized that one of the "exceptional" grounds for an award of attorney's fees in a

7  patent action is where the plaintiff patentee "knew or, on reasonable investigation, should have

8  known [the action] was baseless." See *Haynes Int'l, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579

9  (Fed. Cir. 1994). [2] The Supreme Court in April of this year granted more authority to District

10  Courts to shift attorney's fees. *Octane Fitness LLC v. Icon Health & Fitness, Inc.*, 134 S.Ct. 1749

11  (2014); *Highmark, Inc. v. Allcare Health Management System, Inc.*, 134 S.Ct. 1744 (2014).

12     Likewise, it is widely recognized that a "patent suit can be an expensive proposition.

13  Defending against baseless claims of infringement subjects the alleged infringer to undue costs –

14  precisely the scenario Rule 11 contemplates." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208

15  F.3d 981, 986 (Fed. Cir. 2000). It is settled law that where the party and attorney(s) filing an action

16  are aware or discover that there is no factual basis to support a claim, yet, persist with the claim,

17  sanctions are to be imposed for violation of Rule 11. See *Merriman v. Security Ins. Co. of*

18  *Hartford*, 100 F.3d 1187, 1191 (5th Cir. 1996) (Court of Appeal affirmed an award of Rule 11

19  sanctions where plaintiffs' counsel failed to withdraw the barred claims after receiving notice that

20  they lacked merit); *West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir.

21  1990) ("Attorneys do not serve the interests of their clients, of the profession, or of society when

22  they assert claims or defenses grounded on nothing but tactical or strategic expediency . . . ").[3]

23

24  ---

[2] In *Realtek Semiconductor Corp. v. Marvell Semiconductor, Inc.*, No. C-04-4265 MMC, 2005 WL 3634617
25  (N.D. Cal. Nov. 21, 2005), the court awarded defendant attorney's fees and costs of $549,224 upon finding
that the plaintiff patentee knew or should have known prior to filing a suit that the claim of infringement was
26  frivolous. Similarly, in *IPVX Patent Holdings, Inc. v. Voxernet, LLC*, 13-1708 (N.D. Cal., filed April 16,
2013), the court awarded $820,642 in fees after it determined that the plaintiff pursued an "objectively
27  baseless" infringement case.
[3] For instance, the court in *Refac Intern, Ltd. v. Hitachi, Ltd.*, 141 F.R.D. 281 (C.D. Cal 1991) imposed Rule
28  11 sanctions of $1,446,511.49 upon the plaintiff who alleged it was the owner of patents relating to LCD
technology without first making a reasonable inquiry. Likewise, the court in *Skidmore Energy, Inc. v.*

4

WILLIAM JAMES ROCK'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)

Rock thus reserves the right to seek an award to recover the entirety of his attorney's fees and costs in defense of this action, given that the FAC and Exhibit "D" thereto demonstrates unequivocally that Plaintiffs' claims regarding the '519 patent are objectively baseless, and the fact of Defendants' non-infringement of both the '519 and '212 patents also should have been evident to Plaintiffs and their counsel no later than the inspection they made of the accused apparatus on May 18, 2014 at the 2014 BMA, prior to filing the FAC.

## II.    LEGAL STANDARD FOR DETERMINING NON-INFRINGEMENT OF A PATENT AT THE PLEADING STAGE

A motion to dismiss under FRCP 12(b)(6) tests the legal sufficiency of a claim stated in a Complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). FRCP 12(b)(6) exists, in part, to prevent litigation from moving forward when a plaintiff states a facially defective claim. The court must decide whether the facts alleged, if true, would entitle the claimant to relief under the law. Dismissal can be based either on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). Furthermore, "[t]o survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1129 (9th Cir. 2013) quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition to the Complaint itself, the Court "may consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir.2003); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding that on a 12(b)(6) motion "courts must consider the complaint in its entirety, as well as … documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1989) ("[M]aterial which is properly

---

*KPMG*, 455 F.3d 564 (5th Cir. 2006) affirmed an award of Rule 11 sanctions against plaintiffs and counsel in the amount of $530,667 based on "numerous factually groundless allegations in their Complaint."

5

WILLIAM JAMES ROCK'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)

submitted as part of the complaint may be considered on a motion to dismiss."). If the materials

incorporated into a Complaint defeat the allegations, then the claim can be disposed of on a Rule

12(b)(6) motion.[4]

Allegations of patent infringement may be adjudicated on the pleadings. Courts have

dismissed claims of infringement on Rule 12(b)(6) motions where, as a matter of law, the court

finds that no reasonable fact-finder could find infringement. Federal Circuit authority demonstrates

that non-infringement of a patent can be adjudicated on a motion to dismiss where the complaint

attaches materials that rebut the ground(s) of infringement. This was the result in *In re Bill of*

*Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012). In

*Bill of Lading*, the Federal Circuit affirmed a district court's dismissal of a claim for contributory

patent infringement on a motion under FRCP 12(b)(6). *Id.* at 1337. The Federal Circuit held that

the district court's task on a motion to dismiss was to "analyze the facts pled in the amended

complaints and all documents attached thereto with reference to the elements of a cause of action

for contributory infringement to determine whether [plaintiff's] claims of contributory infringement

were in fact plausible." *Ibid.* (emphasis added). The Court in *Bill of Lading* further instructed that

"failure to allege facts that plausibly suggest a specific element or elements of a claim have been

practiced may be fatal in the context of a motion to dismiss." *Id.* at 1342. See also, *Colida v.*

*Nokia, Inc.*, 347 Fed.Appx. 568, 569–70 (Fed.Cir.2009) (affirming Rule 12(b)(6) dismissal of claim

for infringement of cell phone design patents); *Parker v. Kimberly–Clark Corp.*, No. 11 C 5658,

2012 WL 74855, at 2–3 (N.D.Ill. Jan. 10, 2012) (dismissing claim for infringement of design patent

pursuant to Rule 12(b)(6)); *Cotapaxi Custom Design and Mfg., LLC v. Corporate Edge, Inc.*, 2007

WL 2908265, at 5–6 (D.N.J. Oct. 1, 2007) (same); *Kellman v. Coca–Cola Co.*, 280 F.Supp.2d 670,

---

[4] Issues unique to patent law are governed by the law of the Federal Circuit. *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1303 (Fed. Cir. 2001). General procedural issues not unique to patent law, however, are governed by the law of the regional Circuit, *i.e.*, the Ninth Circuit. *Ibid.* Whether to grant "a motion to dismiss for failure to state a claim upon which relief can be granted is reviewed under the applicable law of the regional circuit." *C & F Packing Co., Inc. v. IBP, Inc.*, 224 F.3d 1296, 1306 (Fed.Cir.2000); *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012).

WILLIAM JAMES ROCK'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)

1  679–80 (E.D.Mich.2003) (same).

2       Here, the allegations of the FAC make it clear that Plaintiffs cannot state a claim for patent

3  infringement.  Exhibit "D" to the FAC defeats the claim of infringement of the '519 patent as a

4  matter of law.  Plaintiffs, like the plaintiffs in *Bill of Lading*, attached materials to their FAC which

5  "supply the very facts" to defeat their claims of infringement of the '519 patent.  The FAC attaches

6  and incorporates by reference as Exhibit "D" a diagram illustrating the apparatus that Plaintiffs

7  accuse of infringement.  That diagram shows that the accused apparatus does not meet two key

8  limitations of the claims of the '519 patent, *i.e.*, (1) **the requirement that the transparent foil**

9  **angle forward toward the audience**; and (2) **the requirement that the image be projected "onto**

10 **the reflecting surface (18)" that it is on the "floor" of the stage**.

11      Accordingly, the First Claim for Relief for infringement of the '519 patent should be

12 dismissed in its entirety with prejudice and without leave to amend. The Third, Fourth, Fifth, and

13 Sixth Claims for Relief should also be dismissed with prejudice, and without leave to amend,

14 insofar they are predicated on infringement of the '519 patent.

15

16 **III.    THERE IS NO INFRINGEMENT OF THE '519 PATENT**

17      The process of determining whether an accused product infringes a patent involves two

18 steps.  First, the Court must construe the claims of the patent to determine their proper scope. This

19 question of claim construction is to be decided by the Court as a matter of law.  "In interpreting an

20 asserted claim, the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself,

21 including the claims, the specification and, if in evidence, the prosecution history.  Such intrinsic

22 evidence is the most significant source of the legally operative meaning of disputed claim

23 language." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) citing

24 *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) aff'd, 517 U.S. 370

25 (1996).  Second, a factfinder must determine whether the accused product infringes the asserted

26 claim as properly construed.  *Vitronics Corp. v. Conceptronic, Inc.*, *supra*, 1581–82 (Fed.Cir.1996);

27 *Dawn Equip. Co. v. Kentucky Farms Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998).

28      To demonstrate infringement of a patent, "a patentee must supply sufficient evidence to

prove that the accused product or process meets every element or limitation of a claim." *Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997).[5] **"If even one limitation is missing or not met as claimed, there is no literal infringement**." *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) (emphasis added). Here, Plaintiffs' allegations in the FAC, with its attached Exhibit "D," demonstrate that the accused apparatus does not meet every element or limitation of the '519 patent and that Plaintiffs have not, and cannot, establish that each and every limitation of the '519 patent is present in the accused device. Accordingly, all claims for infringement of the '519 patent fail on the face of the FAC as a matter of law and dismissal is appropriate.

### A.  Several Limitations Are Missing From the Accused Apparatus

The '519 patent is attached as Exhibit "A" to the FAC. Dkt. No. 34-1 (FAC, Ex. "A"). Figures 1 and 2 of the '519 patent are shown below. Figure 1 "is a simplified diagrammatic side view of the apparatus according to the invention," and Figure 2 is a "more detailed diagrammatic side view of the apparatus according to the invention, simultaneously showing the auditorium." ('519 patent, col. 3:39-43):



FIG.1



FIG.2

---

[5] See *Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed.Cir.1985) ("It is ... well settled that each element of a claim is material and essential, and that in order for a court to find infringement, the plaintiff must show the presence of every element ... in the accused device"); *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed.Cir.1991) ("[T]he failure to meet a single limitation is sufficient to negate infringement of the claim....").

By reference to the numbers in Figures 1 and 2, the '519 patent includes the following specific limitations:  a "computer controlled light amplifier" (12) projects a moving image onto a mirror (14).  The moving image is then projected by the mirror towards the floor (30), which contains a "**reflecting surface**" (18) which then projects the image "**on to the foil**" (20). The reflecting surface (18) on the floor of the stage "is for example a **projection screen or a coat of white paint**."  The audience members (38) in the auditorium (36) then see a moving image which "appears in the background as a virtual image (26)." See *Id.*, cols. 3:49-4:19.

As can be seen from Figures 1 and the foil (20), on which the image is projected upon, is angled **forwardly towards the "audience members"** (38) in the auditorium (36).  The foil is "a transparent smooth foil" which is "**held to the ceiling** at a position which is disposed **further forwardly**." *Id.*, col. 1:57-2:2.  Ideally, the angle of the foil is at about 45 degrees relative to the floor of the stage. *Id.*, col. 2:28-29.

The '519 patent contains fifteen claims.  Claim 1 is the only independent claim.  It reads as follows:

> *"1. Apparatus for representing moving images in the background of a stage using an image source, said stage including a floor, a ceiling disposed vertically above said floor and a background disposed therebetween, said apparatus characterised in that a reflecting surface (18) is arranged on said floor (30) of said stage (28) in the central region thereof, a transparent smooth foil (20) extends between said floor (30) and said ceiling (32) at a position which is disposed further forwardly, and the image source is arranged at the ceiling (32) in front of the upper end of the foil (2) which is held there, and is directed on to the reflecting surface (18)."* '519 patent, cols. 4:59-5:2 (emphasis added).

Claims 2 through 15 are dependent claims.  Dependent claims are described in 35 U.S.C. § 112 of the Patent Act as follows: "a claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed."  35 U.S.C. § 112(d).  For instance, claims 2 and 3 describe an "[a]pparatus as set forth in claim 1" with certain additional limitations added thereon. '519 patent, col. 5:3-8.  Claim 4, describes an "[a]pparatus as

9

set forth in claim 3" with certain additional limitations. *Id.*, col. 5:6-15. In that way, each of claims 2 through 15 are "dependent" on claim 1, and all of the same limitations from claim 1 are included within these dependent claims. 35 U.S.C. § 112(d) ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.").   It is "a fundamental principle of patent law that '***dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed***.'" *Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000).  Thus, as explained below, because claim 1 is not infringed as a matter of law, the dependent claims likewise cannot be infringed as a matter of law. *Ibid.*  Accordingly, the analysis herein focuses solely on claim 1.

## B. The Accused Apparatus Is Non-Infringing As a Matter of Law

To infringe the '519 patent, the accused apparatus must embody each and every element of the patent's claims. *Rohm & Haas*, 127 F.3d at 1092.  "If even one limitation is missing or not met as claimed, there is no literal infringement." *Mas-Hamilton Group v. LaGard, Inc.*, *supra*, at 1211.

Here, Exhibit "D" to Plaintiffs' FAC establishes beyond dispute that the accused apparatus employed in connection with the display of the virtual Michael Jackson performance at the 2014 BMA does not literally infringe the '519 patent.  Claim 1 of the '519 patent and all of the remaining claims that are dependent upon it require, among other things, that a "reflecting surface (18) is arranged on said floor (30) of said stage (28)" and that a "transparent smooth foil (20) extends between said floor (3) and said ceiling (32) at a position which is disposed further forwardly." ('519 patent, claim 1.)  ***Those two required limitations are absent from the accused product shown in Exhibit "D" to the FAC***.  First, the accused apparatus does not utilize a reflecting surface on the floor of the stage.  Second, the transparent foil on which the image is finally projected is angled backward instead of "forwardly."

As stated above, the first step in the infringement analysis – interpretation of the  claim terms – is a "purely legal question" reserved to the Court. *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1451 (Fed. Cir. 1998) (*en banc*); *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).  In this case, claim construction can easily be conducted at the Rule 12(b)(6) stage. See,

10

1   *e.g.*, *Conoco, Inc. v. Energy & Entl. Int'l, L.C.*, 460 F.3d 149, 1359 (Fed. Cir. 2006) ("district court

2   may engage in claim construction during various phases of the litigation, not just in a Markman

3   order").  The claim terms at issue – "floor," "reflecting surface," and "disposed further forwardly" –

4   are interpreted according to "their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415

5   F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*), quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d

6   1576, 1582 (Fed. Cir. 1996).  Were an ambiguity to exist, which it does not here, the Court would

7   look "first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the

8   specification and, if in evidence, the prosecution history."  *Vitronics*, 90 F.3d at 1582.

9       No ambiguity exists here.  The ordinary and customary meaning of "floor,"

10   "reflecting surface," and "disposed further forwardly" comports with the '519 patent's use

11   of these terms as shown in the various figures of the patent, and in its written description.

12   "[R]eflecting surface" and "floor" are denoted throughout the patent with the identifying

13   number (18) and (30), and they are used in their plain English sense to refer to a reflecting surface

14   ("for example a projection screen or a coat of white paint ") on a stage floor as shown in Figure 2:



23   '519 patent, Figure 2.

24       The phrase "disposed further forwardly," as used in reference to the

25   foil (20) in Figure 2 above, obviously dictates that the foil is angled "forward" toward the

26   "viewers" (38) "sitting in the auditorium" (36), and not backward away from the viewers

27   in the auditorium. *Id.*; see also *id.*, cols. 3:49-4:19; *id.*, col. 1:61-66 ("a transparent smooth foil

28   extends between the floor and the top or ceiling of the stage over the entire width thereof in such a

11

1  way that its lower end is held to a position between the reflecting surface and the background and

2  its upper end is held to the ceiling at a position which is disposed further forwardly").

3         Those claim limitations are conspicuously absent from the apparatus that Plaintiffs

4  accuse of infringement.  Exhibit "D" to the FAC sets forth a diagram of the apparatus Plaintiffs

5  allege infringes '519 patent:



24  FAC, Exh. "D" at p. 7 (Dkt. No. 34-4).  No aspect of Claim 1 of the '519 patent is found in the

25  accused apparatus.  First, as can be seen from Exhibit "D", the limitations of claim 1 requiring that

26  "a reflecting surface (18) is arranged on said floor (30) of said stage" and that "the image source …

27  is directed on to the reflecting surface (18)" are clearly absent. '519 patent, cols. 4:59-5:2 (emphasis

28  added).  Unlike the '519 patent, as the above diagram of the accused apparatus (incorporated into

WILLIAM JAMES ROCK'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)

the FAC) clearly shows, the image is projected through a transmisive rear projection screen on to the "transparent surface" (*i.e.*, the foil). The image is not projected onto a reflecting surface, much less a reflecting surface on the floor as required by the '519 patent. The principal feature comprising claim 1 of the '519 patent is not found in the accused apparatus.

Second, claim 1 requires that the "transparent smooth foil (20) extends between said floor (30) and said ceiling (32) at a position which is disposed further forwardly" towards the viewers. That limitation is absent as well in the accused apparatus. Rather, the foil (*i.e.*, the transparent surface in the above diagram) angles backward away from the audience (the exact opposite orientation of the limitation of claim 1). Plaintiffs cannot reasonably argue that a foil angled **backwards** in the accused apparatus away from the audience could somehow meet the claim limitation requiring the foil to be "disposed further **forwardly**" toward the audience.

Thus, at least two limitations from claim 1 of the '519 patent are absent from the allegedly infringing apparatus in the FAC. Accordingly, the accused apparatus cannot infringe claim 1. *Rohm & Haas*, 127 F.3d at 1092; *Mas-Hamilton Group*, 156 F.3d at 1211; *Laitram Corp. v. Rexnord, Inc.*, supra, 939 F.2d at 1535 ("[T]he failure to meet a single limitation is sufficient to negate infringement of the claim....").

It necessarily follows that the accused apparatus does not infringe claims 2 through 15 of the '519 patent, each of which are dependent on claim 1. "It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed." *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989); see also *Monsanto v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim.") (inner quotation marks and citation omitted). No discovery or further proceedings can changes that conclusion.

## IV.   <u>CONCLUSION</u>

All claims for infringement of the '519 patent fail on the face of the FAC as a matter of law. Simply put, Plaintiffs were aware or should have been aware prior to commencement of this action

that the accused apparatus does not infringe the '519 patent.  Significantly, Plaintiffs re-alleged infringement in filing the FAC after they were presented with unequivocal evidence of non-infringement.  This conduct of Plaintiffs raises very serious concerns regarding this case in its entirety.  *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 985-986 (Fed. Cir. 2000) ("In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement.  Failure to do so should ordinarily result in the district court expressing its broad discretion in favor of Rule 11 sanctions, at least in the absence of a sound excuse or considerable mitigating circumstances."); see also 35 U.S.C. § 285.

For the reasons set forth herein, Defendant James Rock respectfully requests that the Court grant this motion and order the following claims dismissed with prejudice and without leave to amend: the First Claim for Relief for Infringement of the '519 patent and the Third through Sixth Claims for Relief insofar as they relate to any alleged infringement of the '519 patent, and/or for such other and additional relief as the Court may deem to be just and appropriate.

Dated:  November 18, 2014

LAVELY & SINGER
PROFESSIONAL CORPORATION
MARTIN D. SINGER
TODD S. EAGAN

By:   /s/ Todd S. Eagan
          TODD S. EAGAN

CAMPBELL & WILLIAMS
J. COLBY WILLIAMS

Attorneys for WILLIAM JAMES ROCK

14

# APPENDIX I

US005865519A

# United States Patent [19]

Maass

[11]   Patent Number:   5,865,519

[45]   Date of Patent:   Feb. 2, 1999

[54]   **DEVICE FOR DISPLAYING MOVING IMAGES IN THE BACKGROUND OF A STAGE**

[76]   Inventor:   **Uwe Maass**, Lindlarer Strasse 107, D-51491, Overath, Germany

[21]   Appl. No.:   **836,911**

[22]   PCT Filed:   **Aug. 31, 1996**

[86]   PCT No.:   **PCT/EP96/03832**

§ 371 Date:   **Jul. 7, 1997**

§ 102(e) Date:   **Jul. 7, 1997**

[87]   PCT Pub. No.:   **WO97/11405**

PCT Pub. Date: **Mar. 27, 1997**

[30]       Foreign Application Priority Data

Sep. 20, 1995   [DE]   Germany ..................... 295 15 073 U

[51]   Int. Cl.⁶   ................................................   G03B 21/28
[52]   U.S. Cl.   .....................   **353/28**; 359/630; 472/58
[58]   Field of Search   .....................   353/28, 98, 30, 353/29, 10; 359/478, 630; 472/58, 61, 63

[56]             References Cited

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,053,887 | 2/1913 | Sontag . | |
| 1,358,110 | 11/1920 | Presiece . | |
| 2,198,815 | 4/1940 | Haskin . | |
| 3,035,836 | 5/1962 | McCulley | ................................. 353/28 |
| 4,805,895 | 2/1989 | Rogers . | |

| | | | |
|---|---|---|---|
| 5,573,325 | 11/1996 | Lekowski | .......................... 353/28 |
| 5,669,685 | 9/1997 | Kotani et al. | ..................... 353/28 |
| 5,685,625 | 11/1997 | Beaver | .......................... 353/28 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 389185 | 9/1908 | France . |
| 408191 | 3/1910 | France . |
| 2714741 | 7/1995 | France . |
| 2039680 | 8/1980 | United Kingdom . |
| WO 89/05082 | 6/1989 | WIPO . |

OTHER PUBLICATIONS

Rasche et al., Buhnentechniche Rundschau (1990) BTR 3:24–5.

*Primary Examiner*—William Dowling
*Attorney, Agent, or Firm*—Klauber & Jackson

[57]                ABSTRACT

An article such as for example a motor vehicle at a publicity function is to be represented in front of different viewers (**38**) in the background of a stage (**28**) in the form of a virtual image (**26**). A presenter (**40**) is to stand in the image and give explanations. Disposed above the stage (**28**) is an image source (**12, 14**). It projects an image, a film, on to a reflecting surface (**18**) on the floor (**30**) of the stage (**28**). Behind that reflecting surface (**18**) a transparent smooth foil (**20**) extends at 45° from the ceiling (**32**) to the floor (**30**). The image produced by the image source (**12, 14**) appears to the viewers (**38**) as a virtual image (**26**) behind the foil (**20**). The presenter (**40**) stands behind the foil (**20**) and in the middle of the image.

**15 Claims, 5 Drawing Sheets**



**U.S. Patent**          Feb. 2, 1999          Sheet 1 of 5          **5,865,519**



FIG.1

U.S. Patent     Feb. 2, 1999    Sheet 2 of 5    5,865,519



FIG.2



FIG.3

**U.S. Patent**          Feb. 2, 1999          Sheet 3 of 5          **5,865,519**



FIG.4

U.S. Patent        Feb. 2, 1999        Sheet 4 of 5        5,865,519

FIG.5



**U.S. Patent**          Feb. 2, 1999          Sheet 5 of 5          **5,865,519**

FIG.6



5,865,519

## 1

### DEVICE FOR DISPLAYING MOVING IMAGES IN THE BACKGROUND OF A STAGE

The invention concerns an apparatus for representing moving images in the background of a stage or the like using an image source.

Transparency lectures or presentations are known, and that expression is a well-established piece of terminology. In a transparency presentation the presenter projects still images or pictures on to a projection screen. The presenter himself stands outside the light cone between the projector and the projection screen and comments on the images. Instead of the transparency projector the presenter can also use a film apparatus. In that case moving images appear on the projection screen and the presenter comments thereon. In both cases the presenter stands outside the light cone. He does not appear on or in the image himself. If he were to move into the light cone he would mask off a part of the light beam. Instead of the image, the shadow of the presenter would then appear on the projection screen. If the presenter wants to direct the attention of his viewers to a given point in the image he uses for that purpose a pointer or a light with a sharply focussed light beam.

The foregoing kind of presentation is sufficient for image and film presentations for photographic and film amateurs. Travellers who show films or transparencies of their travels to a wide circle of viewers can also use that kind of presentation without detriment. The viewers are only interested in the film or the transparencies and the words of the presenter. They attribute only slight significance to the manner of presentation and the technical equipment involved.

The position is different if the viewers do not have any particular interest in the articles to be shown and an interest first has to be aroused. The position is also different when the film presentation is to take place at a high technical level, for overriding reasons. The situation is also different if the film presentation is to be made more relaxed and less monotonous and linked to so-called display effects.

A theatre production is described as a ghost trick in the literature (for example Bühnentechnische Rundschau, BTR 3/1990, pages 24 and 25), involving disposing a pane of glass inclinedly in the front region of the stage. An actor is positioned beneath the pane of glass and in a lowered part of the stage. He is bedecked with wide white garments and represents the ghost. He is lit by a spotlight which is also disposed under the stage. The image of that actor representing the ghost is projected on to the pane of glass and appears to the viewers behind the pane of glass a virtual image. In that theatre presentation a second actor is on the stage. He represents a hero or sorcerer who conjures up the ghost.

On the basis thereof, the object of the present invention is an apparatus with which film and image presentations can be made relaxed and the presenter himself can move into the image without thereby interfering with reproduction of the image on a projection screen or generally on a surface. In accordance with the invention, that object is attained in an apparatus of the kind set forth in the opening part of this specification, in that a reflecting surface is arranged on the floor of the stage in the central region thereof, a transparent smooth foil extends between the floor and the top or ceiling of the stage over the entire width thereof in such a way that its lower end is held to a position between the reflecting surface and the background and its upper end is held to the ceiling at a position which is disposed further forwardly, and the image source is arranged at the ceiling in front of the

## 2

upper end of the foil which is held there, and is directed on to the reflecting surface.

The apparatus according to the invention makes use of the physical principle that any motor car driver experiences on the windshield of his vehicle. An article lying on the storage surface in front of the windshield is reflected therein in such a way that it seems to the motor car driver to be disposed in front of the windshield, as viewed in the direction of travel. In the case of the apparatus according to the invention the article to be represented is projected by the image source on to the reflecting surface which corresponds to the above-mentioned support surface, and it is then reflected in the transparent smooth foil in such a way that it appears to the viewer on the background of the stage. The foil which extends over the entire width of the stage and which is held to the floor and ceiling thereof acts like the windshield in a motor vehicle. A viewer at any point in the auditorium believes that he is seeing any article reflected by the reflecting surface on to the foil, behind same. The presenter stands on the stage outside the light cone of the image source. As viewed from the auditorium, he stands behind the reflecting surface. That means that his image is not formed on the background, nor does he disturb the image representation thereon. He can draw the attention of the viewers to given details in the image representation, without making use of a pointer or a light. He can likewise move with the images and interpret the reproduction thereof by virtue of his body language.

Desirably the foil extends at an angle of about 45° relative to the floor of the stage. The image source can be a display screen tube with a very high degree of resolution. It can be controlled by a computer. That means that the image can also be electronically influenced. Desirably a computer-controlled intelligent light amplifier (also known as an ILA) is used as the image source. It is oriented horizontally and emits light in the direction of the auditorium. Accordingly its longest extent lies in the horizontal and it can be easily concealed from the viewers. So that the light which it radiates reaches the reflecting surface, a further embodiment provides that a mirror is arranged in front of the computer-controlled light amplifier and the latter is directed on to the mirror and the mirror receives the light emitted by the light amplifier, is directed on to the reflecting surface and projects the light on to same.

If possible the viewer should not notice how the image in the background of the stage is produced. Therefore the light amplifier and the mirror are desirably covered over forwardly by a curtain or a board which extends over the entire width of the stage. The foil itself is under a very high tensile stress of up to 8t. In that way it is held tautly smooth and the image is not distorted. The foil is preferably without any inclusions. It is also to be very smooth on its front side and its rear side. It is also to be very thin. Finally the foil is to reflect between 30 and 50%, preferably 30%, of the light impinging on it. Such a foil is particularly well suited for the purposes according to the invention. The absence of inclusions and the smooth front and rear sides thereof result in very slight and imperceptible distortion effects. The fact that the foil is very thin serves the same purpose. Reflection phenomena at the front and rear sides thereof thus coincide. The foil used for the purposes according to the invention is generally subjected to further processing as transparency or 35 mm films. When used as a transparency film, it is cut up into the format of the transparency or 35 mm films. When it is used for the invention the foil has a surface area of at least 3 m times 4 m.

In a desirable embodiment the foil is rolled on to a winding tube. It is suspended therewith at the ceiling of the

5,865,519

3

stage. Desirably it is fixed to the ceiling, together with the intelligent light amplifier. The free end of the foil can be pulled off the winding tube and is fixed to the floor of the stage. A support mounting arranged on the floor of the stage is used for that purpose.

The reflecting surface may be a white projection screen which is to be laid on to the floor of the stage. The reflecting surface however may also be a simple white coat of paint. As the presenter moves outside it and more specifically behind it, it retains its reflecting properties for a very long period of time.

The apparatus according to the invention is advantageously used in connection with a stage with a floor which can be raised and lowered. The reflecting surface, the projection screen, the coat of paint or the like, is disposed on that part of the floor, which can be raised and lowered. When the floor is lowered the spacing between the image source and the reflecting surface is increased. As a result the virtual image which appears in the background of the stage is displaced rearwardly.

The apparatus according to the invention is to be easy to transport from one location to another and to set up at different locations. For that purpose, in a desirable embodiment, the invention provides that its components are enclosed by a lattice frame and can be secured thereto. Desirably, the lattice frame has units which can be set up on the two sides of the apparatus or the stage thereof and which each have a lower girder portion, an upper girder portion, a front girder portion and a back girder portion. The lattice frame units which can be set up on the two sides of the apparatus or stage can be connected together by transversely extending struts.

Desirably the winding tube is secured to the upper girder portions by way of brackets while the mounting support which holds the free end of the foil is fixed to the lower girder portions.

The invention will now be further described by way of the example of the embodiments illustrated in the drawing in which:

FIG. 1 is a simplified diagrammatic side view of the apparatus according to the invention,

FIG. 2 is a more detailed diagrammatic side view of the apparatus according to the invention, simultaneously showing the auditorium,

FIG. 3 is a side view of the stage similarly to the illustration in FIG. 2 with the floor lowered,

FIG. 4 is a view of the auditorium and the stage looking in the direction of the line IV—IV in FIG. 2,

FIG. 5 is a side view of the apparatus according to the invention when using the lattice frames surrounding it, and

FIG. 6 is a view in the direction of the line VI—VI.

FIG. 1 shows the physical principle of the apparatus according to the invention with the computer-controlled intelligent light amplifier 12 which acts as an image source, the mirror 14 which in the view in FIG. 1 is arranged to the left in front of it and which projects the light radiated on to it from the light amplifier 12 on to the reflecting surface 18 in the form of a light cone 16 as indicated by two broken lines, the foil 20 with its lower holding means in the form of a mounting bracket 22 and its upper holding means in the form of a winding tube 24 and the virtual image 26 which is represented in the background of the stage. The computer-controlled intelligent light amplifier 12 projects a moving image on to the mirror 14. This projects it on to the reflecting surface 18 which projects it on to the foil 20. From the point of view of a viewer who is at the left in FIG. 1—see FIG. 2—a moving image appears in the background as a virtual image 26.

4

FIGS. 2 and 3 show a practical application of the apparatus according to the invention at a presentation or lecture function. More specifically FIG. 2 again shows the stage 28, the floor 30 thereof and the ceiling 32 thereof. Extending under the ceiling 32 of the stage 28 over the entire width thereof is a curtain or a cover rail or board 34. It covers over in a forward direction the computer-controlled intelligent light amplifier 12 and the mirror 14. The viewers 38 sit in the auditorium 36. The presenter or lecturer 40 stands on the stage 28 behind the reflecting surface 18. The reflecting surface 18 is for example a projection screen or a coat of white paint. The double-headed arrow shown under the floor 30 is intended to indicate that it can be raised and lowered. FIG. 2 shows the floor 30 at its normal height. The virtual image 26 appears in the background of the stage 28 at a given location. FIG. 3 shows the same stage 28 with the floor 30 lowered. When the floor 30 is lowered the virtual image 26 moves rearwardly, towards the right when looking at FIGS. 2 and 3.

FIG. 4 shows a practical application of the apparatus according to the invention in a presentation function relating to motor vehicles. FIG. 4 shows a presentation article 42, in this example being a motor vehicle. The viewers 38 see it in the background as a virtual image. They do not recognise that this involves a reflection at the reflecting surface 18 and the foil 20. They only see how the presenter 40 moves freely in front of the motor vehicle, points with his arms and hands to the motor vehicle and parts thereof, explains details in words, and in so doing neither interferes with nor in any way influences the reproduction of the motor vehicle in the background in the form of the virtual image 26.

FIGS. 5 and 6 show the transportable embodiment of the apparatus according to the invention, which can be set up at any desired location. Lattice frames 44 which can be set up at both sides of the apparatus serve for that purpose. Each lattice frame comprises a lower girder portion 46, an upper girder portion 48, a front girder portion 50 and a back girder portion 52. Lattice frames of that kind are known. Each girder portion comprises a plurality of parts which can be releasably connected together. For the purposes of erecting the apparatus, the parts of the girder portions are fitted together and joined together. For transportation purposes they are separated from each other and can be transported in the form of comparatively small units on a truck or the like. As shown in FIG. 5 the computer-controlled intelligent light amplifier 12 and the winding tube 24 are fixed to a bracket. The bracket is in turn fixed to a transverse strut which connects the two upper girder portions 48. The same applies in regard to the mirror 14. When the apparatus is erected the foil 20 is pulled off the winding tube 24, fixed to the mounting bracket 22 and then tensioned. The reflecting surface 18 is laid on the floor in the form of a plate or the like which is coated or painted white, or in the form of a projection screen. The stage 28 on which the presenter 40 stands when making his presentation is composed of parts which are known per se on their own and it is erected in the rearward region of the apparatus.

I claim:

1. Apparatus for representing moving images in the background of a stage using an image source, said stage including a floor, a ceiling disposed vertically above said floor and a background disposed therebetween, said apparatus characterised in that a reflecting surface (18) is arranged on said floor (30) of said stage (28) in the central region thereof, a transparent smooth foil (20) extends between said floor (30) and said ceiling (32) at a position which is disposed further forwardly, and the image source is arranged at the ceiling

5,865,519

| 5 | 6 |

(32) in front of the upper end of the foil (20) which is held there, and is directed on to the reflecting surface (18).

2. Apparatus as set forth in claim 1 characterised in that the foil (18) extends at an angle of about 45° relative to the floor (30) of the stage (28).

3. Apparatus as set forth in claim 1 or claim 2 characterised in that the image source is a computer-controlled intelligent light amplifier (12).

4. Apparatus as set forth in claim 3 characterised in that a mirror (14) is arranged in front of the computer-controlled light amplifier (12) and said light amplifier is directed on to the mirror (14) and the mirror (14) receives the light radiated from the light amplifier (12), is directed on to the reflecting surface (18) and projects the light on to said reflecting surface.

5. Apparatus as set forth in claim 4 characterised in that the light amplifier (12) and the mirror (14) are covered over forwardly by a curtain extending over the entire width of the stage (28).

6. Apparatus as set forth in claim 1 characterised in that the foil is subject to a tensile stress.

7. Apparatus as set forth in claim 6 characterised in that the foil (20) has a surface area of at least 3 m times 4 m.

8. Apparatus as set forth in claim 7 characterised in that the foil (20) is rolled on a winding tube (24) and can be pulled off same and can be fixed with its free end in a support mounting (22).

9. Apparatus as set forth in claim 1 characterised in that the reflecting surface (18) is a coat of white paint.

10. Apparatus as set forth in claim 1 characterised in that the reflecting surface (18) is a white projection screen.

11. Apparatus as set forth in claim 1 characterised in that the floor (30) of the stage (28) can be raised and lowered.

12. Apparatus as set forth in claim 4 characterised in that light amplifier (12), mirror (14), reflecting surface (18), foil (20) and stage (28) are enclosed by a lattice frame (44) and can be fixed thereto.

13. Apparatus as set forth in claim 12 characterised in that the lattice frame (44) includes two units which can be set up on both sides of the stage (28) and each unit has a lower girder portion (46), an upper girder portion (48), a front girder portion (50) and a back girder portion (52).

14. Apparatus as set forth in claim 13 characterised in that the two lattice frame units which can be set up on both sides of the stage (28) can be connected by transversely extending struts.

15. Apparatus as set forth in claim 4 characterised that the light amplifier (12) and the mirror (14) are covered over forwardly by a cover bar (34) extending over the entire width of the stage (28).

* * * * *