CRAIG A. NEWBY (NSBN 8591)
McDONALD CARANO WILSON LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV  89102
Telephone:	702.873.4100
Facsimile:	702.873.9966
cnewby@mcdonaldcarano.com

RYAN G. BAKER (*pro hac vice*)
BAKER MARQUART LLP
10990 Wilshire Boulevard, Fourth Floor
Los Angeles, CA  90024
Telephone:  424.652.7800
Facsimile:  424.652.7850
rbaker@bakermarquart.com

*Attorneys for Plaintiffs*
*Hologram USA, Inc., Musion Das Hologram*
*Limited and Uwe Maass*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| HOLOGRAM USA, INC., a Delaware corporation; MUSION DAS HOLOGRAM LIMITED, a corporation organized under the laws of the United Kingdom; and UWE MAASS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>PULSE EVOLUTION CORPORATION, a Nevada corporation; PULSE ENTERTAINMENT CORPORATION, a Delaware corporation; JOHN C. TEXTOR, an individual; DICK CLARK PRODUCTIONS, INC., a Delaware corporation; JOHN BRANCA and JOHN MCCLAIN, Executors of the Estate of Michael J. Jackson; MJJ PRODUCTIONS, INC., a California corporation; MUSION EVENTS LTD., a United Kingdom private company; MUSION3D LTD., a United Kingdom private company; WILLIAM JAMES ROCK, an individual; IAN CHRISTOPHER O'CONNELL, an individual; and DOES 1 through 10,<br><br>Defendants. | Case No.: 2:14-cv-00772-GMN-NJK<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT WILLIAM JAMES ROCK'S MOTION TO DISMISS ALL CLAIMS RELATING TO INFRINGEMENT OF U.S. PATENT NO. 5,865,519 PURSUANT TO FRCP 12(b)(6)** |

## I. INTRODUCTION

William James Rock ("Rock") moves to dismiss a complaint that does not exist. His motion disputes and mischaracterizes factual allegations made in Plaintiffs'[1] First Amended Complaint ("FAC"). Rock then assumes contrary facts to reach erroneous legal conclusions. The application of fundamental pleading standards requires denial of Rock's motion to dismiss.

At the pleading stage, this Court must construe the pleadings in the light most favorable to the non-moving party and accept all allegations of material fact as true. Courts generally analyze whether a complaint alleging patent infringement is sufficient to survive a Motion to Dismiss for failure to state a claim by comparing the complaint against Form 18 of the Federal Rules of Civil Procedure. Rock does not dispute that the FAC—which properly alleges, *inter alia*, that the Defendants infringed the '519[2] and '212[3] patents by making, selling, or using the accused apparatus embodying the patent—satisfies the requirements of Form 18. Instead, he contends that the allegations of patent infringement with respect to the '519 claim fail to state a claim because the diagram attached as "Exhibit D to the FAC demonstrates unequivocally that Plaintiffs have not, and cannot, establish that each and every limitation of the '519 patent claim is present, either literally or equivalently in the accused devise." (Dkt. No. 146 at 2:20-24.) His motion is mostly a copy-and-paste job from the motion to dismiss filed more than four months ago by several of his co-defendants, the executors of the Estate of Michael Jackson, MJJ Productions, Inc., and dick clark productions, inc. (collectively, the "Jackson Defendants"). (*See* Dkt. No. 81.) Both motions should be rejected.

Rock's argument that Plaintiffs pleaded "no facts whatsoever supporting their contention that Defendants were intending to use any technology claimed in the Patents-in-suit" is plainly incorrect. (Dkt. No. 146 at 1-2.) As set forth in the FAC, defendants Ian O'Connell and John Textor conspired

---

[1] "Plaintiffs" refers collectively to Hologram USA, Inc. ("Hologram USA"), MDH, and Uwe Maass ("Maass").
[2] The "'519 patent" refers to U.S. Patent No. 5,865,519, which is attached as Exhibit A to the FAC.
[3] The "'212 patent" refers to U.S. Patent No. 7,883,212, which is attached as Exhibit B to the FAC. Unlike the '519 patent, the '212 patent is not at issue in this motion to dismiss.

with Rock and the other defendants to practice the '519 and '212 patents without obtaining a proper license from the Plaintiffs. Textor even attempted (and failed) to obtain a license from Hologram USA shortly before the Billboard Music Awards show. Plaintiffs' inspection of the accused apparatus and the public statements made by the defendants to the press (including a diagram Textor provided to *USA Today* for publication ) confirm that the defendants infringed the '519 and '212 patents.

Rock and his co-defendants cannot escape liability for infringement of the '519 patent on the basis of minor and insubstantial changes to the accused apparatus. Plaintiffs have alleged direct infringement of the '519 patent, which encompasses both literal infringement and infringement under the doctrine of equivalents. When an element does not literally read on the corresponding component of the accused apparatus because of minor and insubstantial changes, the element still reads on the component under the doctrine of equivalents, which has been applied by courts in patent infringement cases for well over 50 years. Even where a defendant has made minor changes to a patented invention, he is still liable for infringing that invention under the doctrine of equivalents where the accused apparatus "performs substantially the same function in substantially the same way to obtain the same result" as the patented invention. *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608 (1950). This doctrine exists to protect the integrity of patented inventions, as it prevents the "unscrupulous copyist" from evading liability for patent infringement by making "unimportant and insubstantial changes" to a patented invention. *Id*. at 608.

Over the course of the past several months, Plaintiffs have served their infringement contentions and their responses to the Defendants' invalidity and non-infringement contentions under the Local Rules. Those documents detail the alleged infringement in particularity. At the appropriate time, Plaintiffs will fully brief this Court and submit evidence showing that the accused apparatus clearly infringes both the '519 and '212 patents. While Rock asserts that this case is without merit and falsely accuses Plaintiffs of failing to conduct an appropriate infringement analysis, Plaintiffs' inspection, the *USA Today* article and other direct and circumstantial evidence

2

1  clearly support Plaintiffs' claims of patent infringement.[4]  The willful infringement of Plaintiffs'
2  patent rights is egregious, and the "literal infringement" argument made in the instant motion to
3  dismiss is entirely meritless.
4        Finally, Rock needlessly inserts arguments relating to the '212 patent in his motion that Rock
5  concedes are irrelevant at this stage.  Rock has not moved to dismiss the claim for infringement of
6  the '212 patent.  Nor can he.  He admits his invalidity arguments are not relevant to the
7  "determination in the context of the instant Motion" (Dkt. No. 146 at 3:7), because the allegations of
8  the FAC do not establish that the '212 patent is invalid.  Discovery will show that the '212 patent is
9  valid.  In any event, Rock, a named inventor of the '212 patent, is estopped as a matter of law from
10 now challenging the validity of his own patent.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

In an attempt to influence this Court's perception of the factual merits of this case, Rock spends a substantial portion of his motion mischaracterizing facts and discussing admittedly irrelevant material.  To correct the record and to focus specifically on the issues relevant to this motion to dismiss, Plaintiffs summarize the events that led up to the filing of this lawsuit and the FAC, including the application for a temporary restraining order, Plaintiffs' subsequent inspection of the accused apparatus and the allegations in the FAC.

**A.    Plaintiffs' Application for a Temporary Restraining Order**

On or about May 15, 2014, Hologram USA learned that several of the defendants intended to unveil a hologram of Michael Jackson performing a newly released song using Plaintiffs' patented technology at the Billboard Music Awards on May 18, 2014.  (FAC, ¶ 31.)  To protect their patent rights, Plaintiffs immediately filed a complaint and an emergency *ex parte* application for a

---

[4] Rock implies that Plaintiffs have violated Fed. R. Civ. P. 11.  (*See* Dkt. No. 146 at 4:12-22.)  This implication is misplaced and unsupported.  He mistakenly cites *View Eng'g, Inc., v. Robotic Vision Sys., Inc.*, 208 F.3d 981 (Fed. Cir. 2008), as support for his position, even though that case is premised on claims filed without <u>any</u> factual basis and "without first performing a reasonable inquiry as to the existence of a valid claim."  *Id*. at 984.  Plaintiffs have sufficient factual basis to support their allegations.  They also have conducted a reasonable inquiry into their claims.

1   temporary restraining order to enjoin the performance.  (Dkts. No. 1, 3.)

2   Contrary to Rock's assertions, Plaintiffs submitted substantial evidence in support of the TRO application which led to Plaintiffs' informed belief that the defendants intended to infringe on the Patents at Issue during the 2014 Billboard Music Awards.  Before founding defendants Pulse Evolution Corporation and Pulse Entertainment Corporation (collectively, "Pulse"), Textor was CEO of Digital Domain, Inc.  (FAC, ¶ 10.)  Textor learned about the patented technology when Digital Domain licensed the technology from the patent holders to produce the Tupac Shakur hologram performance at the 2012 Coachella Music Festival.  (*Id.*, ¶¶ 27, 65.)  After leaving Digital Domain,[5] Textor made multiple unsuccessful offers in an attempt to legally acquire the patented technology at issue in September 2013.  (Request for Judicial Notice filed concurrently ("RJN"), Ex. 2).  In April and May 2014, Textor attempted to negotiate with Hologram USA for a joint marketing agreement over the patented technology.  (FAC, ¶ 36).  Just days after Hologram USA rejected Textor's proposal, it was revealed that Textor and Pulse had been involved in the production of "a long planned performance" of a holographic-like three-dimensional Michael Jackson set to perform at the Billboard Music Awards on May 18, 2014.  (*Id.*, ¶ 31.)  At that time, and to this day, no technology other than the patented technology at issue is capable of creating holographic-like high quality moving images, which perform on a large stage for live audiences.  Defendants understood that the technology required to create such a performance was patented and to legally use it required a valid license from Hologram USA.  (*Id.*, ¶ 65-66.)  However, the defendants never obtained a valid license from Hologram USA.  (*Id., ¶* 63.)

   At the TRO hearing, held on May 16, 2014, the Honorable Kent Dawson acknowledged that "given the way the case evolved, with the negotiations of the parties and then the decision of the defendants to utilize some technology to create a holographic image . . . there would be no opportunity or very little opportunity for the plaintiffs to discover the technology that is being used or proposed to be used by the defendants." (RJN, Ex. 1 at 4:11-18).  Therefore, "it would not be

---

[5] In February 2014, Hologram USA outbid Digital Domain to acquire the exclusive right to exploit the patented technology in the United States and Canada.  (FAC, ¶ 28).

4

likely that Plaintiffs would have access to be able to determine whether this is a direct infringement." (*Id*. at 5:1-3).  Nevertheless, Judge Dawson made it clear that "there [was] enough evidence to cause the Court concern that there may be some infringement."  (*Id*. at 4:21-24).

At that TRO hearing, the defendants laid out inconsistent positions for their defense, arguing that they do not use the patented technology while simultaneously arguing that they "licensed" the right to do so.  Initially, the defense denied infringement on the ground that both the Plaintiffs' technology "and the technology [the defendants] are using . . . is not patentable.  [They were] using very well-known methods that have been in the public domain for years."  (*Id*. at 18:11-14).  The defense then went on to argue that the Jackson performance was not going to infringe because "Pulse Entertainment is licensed to these very patents by a predecessor in interest to Hologram USA in the United Kingdom."[6]  (*Id*. at 19:6-8).  This Court ultimately denied the application for the TRO due to insufficient evidence of direct infringement, but permitted Plaintiffs' counsel to conduct an inspection of the technology used at the awards show to collect further evidence of infringement.  (Dkt. Nos. 20, 24).

**B.     Plaintiffs' Inspection of Defendants' Technology and the FAC**

Pursuant to this Court's order, Plaintiffs conducted an inspection of the technology employed by the defendants to create the Michael Jackson hologram at the Billboard Music Awards show.  (FAC, ¶ 39.)  That inspection revealed that the defendants had, in fact, infringed on the Patents At Issue.  Shortly after the inspection, Plaintiffs filed the FAC, asserting claims for infringement of the '519 patent, infringement of the '212 patent, willful infringement, active inducement, contributory infringement, and a preliminary and permanent injunction.  (Dkt. No. 34).

---

[6] Rock apparently claims that he is the lawful owner of the '212 patent along with co-defendants Ian O'Connell, Musion Events Limited and Musion3D Limited.  While O'Connell previously has made this argument, the English courts already have rejected his spurious claims.  On May 21, 2014—only a few days after the Billboard Music Awards took place—the Court of Appeal in the United Kingdom affirmed a lower court decision against O'Connell and in favor of MDH.  (RJN, Ex. 2 at 6.)  It ruled that MDH had lawfully acquired the assets of Musion Systems Limited in an administration sale, and dismissed O'Connell's legal challenge to that sale in a final judgment on the merits.  (*See id*.)  Thus, MDH is the lawful owner of the assets of Musion Systems Limited, which includes the '212 patent.

Contrary to Rock's claim that the FAC does not include or reference materials gained from the inspection, Plaintiffs' claims in the FAC are based on findings from the inspection of the defendants' technology, from information attained through various press releases issued in the days following the Jackson performance, and other sources. (FAC, ¶¶ 39-41.) During the inspection, Rock himself described how the defendants' technology worked and acknowledged that the set-up was based on the Patents At Issue, admitting "that in a nutshell, is what the first patent [the '519 patent] is about." (*Id.*, ¶ 39.) Additionally, a *USA Today* article quoted Textor as claiming that "Pulse had redefined a 19th-century magician's technique called Pepper's ghost" which Digital Domain had employed "to summon the ghost of slain rapper Tupac Shakur at the Coachella music festival in 2012." (*Id.*, ¶ 38.) Yet the technology used by Digital Domain in that instance was undisputedly the patented technology, and Digital Domain (years earlier) legally obtained a license to use it. (*Id.*)

Furthermore, *USA Today* published an interactive diagram it obtained from Pulse in an on-line article demonstrating how the defendants' technology worked. (*Id.*, at ¶ 40.) The diagram shows high-powered projectors used to project an image onto a rear-projection screen, which then reflects the image off the transparent foil arranged at an angle of about 45 degrees. (*Id.*) The projection bounces off the transparent foil into the audience, creating the illusion of a life-like three-dimensional image positioned on stage behind the transparent foil. (*Id.*) The diagram and the information obtained from the inspection confirm that the accused apparatus directly infringes, literally or under the doctrine of equivalents, the '519 patent, as well as, the '212 patent.

### III.   ARGUMENT

**A.   Rock Misconstrues and Misapplies the Relevant Legal Standard**

"For purposes of ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations of material fact as true and construes the pleadings in the light most favorable to the plaintiff." *CreAgri, Inc. v. Pinnaclife, Inc.*, 2013 WL 3958379, at *3 (N.D. Cal. July 29, 2013)

(citing *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)).[7] Electing to ignore the basic pleading standards, Rock's motion presents a premature claim construction analysis on the mistaken ground that claim construction can be a purely legal question in this case. (Dkt. No. 146 at 10-11.) While claim construction is decided by the Court, it is typically resolved through *Markman* proceedings, not at the motion to dismiss stage.[8] As noted by one court,

> In the course of seeking to understand the nature and scope of the invention set forth in the claims, it is standard doctrine that the judge focuses on the language of the claims, as explained by the patent's written description, and as constrained by the course of the patent's prosecution. If need be, the trial judge may seek understanding outside the patent proper, from relevant texts and materials, and from experts in the art.

*Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1462 (Fed. Cir. 1998) (discussing the process of claim construction in a *Markman* hearing). Indeed, "extrinsic evidence in the form of expert testimony can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005). At this stage, this Court does not have the benefit of the patent prosecution history, expert testimony or relevant texts from the subject area.

---

[7] As Rock acknowledges (Dkt. No. 146 at 6), Ninth Circuit law governs the "procedural issues" relating to this motion to dismiss. *See McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007) (holding that motion to dismiss for failure to state a claim upon which relief can be granted is a purely procedural question not pertaining to patent law" and therefore the law of the regional circuit governs). In contrast, the law of the Federal Circuit governs substantive issues specific to patent law. *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1303 (Fed. Cir. 2001).

[8] Rock relies on a quote from *Conoco* stating that a "district court may engage in claim construction during various phases of the litigation, not just in a Markman order" to suggest that claim construction could occur at the motion to dismiss stage. On the contrary, the Federal Circuit's comment refers to a rolling claim construction post-*Markman* order. The full opinion is as follows, "a district court may engage in claim construction during various phases of the litigation, not just in a Markman order. We have recognized that district courts may engage in 'rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." *Conoco* 138 F.3d, at 1457.

1     Nearly all of the cases Rock cites in support of his claim construction argument were decided after a trial or summary judgment proceeding. These authorities do not support premature claim construction in this case. For example, Rock selectively cites *Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1090 (Fed. Cir. 1997), suggesting it dealt with the pleading standard for direct infringement. But *Rohm & Haas* dealt with the legal standard for proving literal infringement after a trial. *See* Dkt. No. 146, 7:28-8:1 (selectively quoting *Rohm & Haas* for the proposition that "[t]o plead infringement of a patent, 'a patentee must supply sufficient evidence to prove that the accused product or process meets *every* element or limitation of a claim.'") In fact, the district court in *Rohm & Haas* determined that the plaintiff did not prove its claim for patent infringement after a three-week bench trial on the merits. 127 F.3d at 1090. In commenting on the legal standard applicable at the trial stage, the Federal Circuit – rather unremarkably – held that "**[t]o show literal infringement[9] of a patent**, a patentee must supply sufficient evidence to prove that the accused product or process meets every element or limitation of a claim." *Id.* at 1092. *Rohm & Haas* did not involve a case decided at the motion to dismiss stage and did not comment on the pleading standard for direct infringement. So is the case with numerous other authorities presented by Rock. *See, e.g., Cybor Corp.*, 138 F.3d at 1453 (appeal following a trial); *Conoco, Inc. v. Energy & Envtl, Int'l, L.C.*, 460 F.3f 1349, 1363 (Fed. Cir. 2006) (appeal following a bench trial); *Phillips*, 415 F.3d at 1309 (appeal following summary judgment ruling); *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211-12 (Fed. Cir. 1998) (appeal following a bench trial). All of these cases are inapposite.

    Rock manages to present a handful of cases decided at the pleading stage, but all of them are readily distinguishable. For instance, in *Bill of Lading,* the Federal Circuit based its decision on the heightened pleading requirements for contributory (not direct) infringement, which requires, *inter alia*, that the plaintiff allege facts showing that there is no substantial non-infringing use of the accused product. *See Bill of Lading*, 681 F.3d at 1337. Based on statements contained in exhibits to

---

[9] Significantly, the Federal Circuit clearly used the term "literal infringement" to denote a particular kind of direct infringement. *See Rohm & Haas*, 127 F.3d at 1092 (discussing the legal test for literal infringement).

1  the complaint, the Federal Circuit determined that the plaintiff's amended complaint "contain[s]
2  repeated descriptions of non-infringing uses to which the accused products can be put." *Id.* at 1338.
3  Accordingly, the Federal Circuit held that plaintiff failed to state a claim, for contributory
4  infringement, upon which relief can be granted. *Id.* at 1339.

5       *Colida v. Nokia, Inc.,* is similarly inapposite.  There, a district court dismissed the claims of a
6  *pro se* plaintiff who had unsuccessfully sued Nokia multiple times previously for infringement of the
7  same patents at issue and had several judgments of non-infringement rendered against him on those
8  same patents.  347 Fed. Appx., 568, 569 (Fed. Cir. 2009).  The Plaintiff in that case had only filed a
9  two page informal brief that cited to no evidence whatsoever.  *Id.*

10      Rock's three additional case citations have no applicability here.  Those three cases all
11 involve ornamental design patents.  *See Parker v. Kimberly-Clark Corp.*, 2012 WL 74855 at 2-3
12 (N.D. Ill. Jan. 10, 2012) (The court, applying the ordinary observer test applicable to ornamental
13 design patents found that an ordinary observer looking at both napkins side by side could not
14 conclude that the sanitary napkins were the same or similar); *Cotapaxi Custom Design and Mfg.,*
15 *LLC v. Corporate Edge, Inc.,* 2007 WL 2908265, at 5-6 (D. N.J. Oct. 1, 2007) (Court was deciding
16 infringement of ornamental design patents); *Kellman v. Coca-Cola Co.,* 280 F. Supp. 2d 670, 689-80
17 (E.D. Mich. 2003) (same).  The '519 Patent is a utility patent, which requires a different analysis
18 from that used for design patents.  *See Solar Sun Rings, Inc. v. Wal-Mart Stores, Inc.*, 2012 WL
19 5379144, at *3 (C.D. Cal. Oct. 31, 2012).  "The construction of a design patent differs from the
20 construction of a utility patent. With a utility patent, the court must "arrive[ ] at an understanding of
21 the language as used in the patent and prosecution history." *Id.* (citing *Goodyear,* 162 F.3d at 1116.
22 In contrast, "[w]ith a design patent, claim construction 'must be adapted to the practice that a
23 patented design is claimed as shown in its drawing.  There is usually no description of the design in
24 words[.]' *Solar Sun Rings, Inc. v. Wal-Mart Stores, Inc.*, 2012 WL 5379144, at *3. Infringement
25 analysis also differs between design and utility patents.  For example, in *Great Neck Saw MFrs., Inc.*
26 *v. Star Asia U.S.A., LLC*, the court analyzed infringement of a utility patent by looking at whether
27 the devices "at issue do not perform in 'substantially the same way' to achieve 'substantially the

9

same result' (internal citations omitted). 727 F. Supp. 2d 1038, 1051 (W.D. Wash. 2010) aff'd, 432 F. App'x 963 (Fed. Cir. 2011) (internal citations omitted). In that case the court also had to analyze infringement of a design patent, but it stated that the "proper test for infringement of a design patent is whether the ordinary observer, 'giving such attention as a purchaser usually gives" and viewing any differences between the patented design and the accused product 'in the context of the prior art,' finds that the devices bear such resemblance as to deceive the observer, inducing him or her 'to purchase one supposing it to be the other.' *Id.* at 1051 (internal citations omitted).

Moving beyond Rock's library of irrelevant law, a basic analysis of the FAC confirms Plaintiffs' claims. The *USA Today* diagram, attached as Exhibit D to the FAC, supports the allegations of direct infringement, including both literal infringement and infringement under the doctrine of equivalents. (Dkt. No. 34-4) The diagram demonstrates defendants' infringement of the '519 patent. Additionally, unlike *Bill of Lading*, the moving defendants do not dispute that the FAC has satisfied the pleading requirements for the willful infringement causes of action (Cause of Action 3), the active inducement cause of action (Cause of Action 4) and the contributory infringement cause of action (Cause of Action 5).

Because the allegations in the FAC sufficiently state claims for direct infringement of the '519 patent, this Court should deny Rock's motion to dismiss.

**B.     There Is No Dispute That The First Amended Complaint Has Sufficiently Pled Infringement of U.S. Patent Number 5,865, 519**

The Federal Circuit has held that "a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *McZeal*, 501 F.3d at 1357. "Courts generally analyze whether a complaint alleging patent infringement is sufficient to survive a Motion to Dismiss for failure to state a claim by comparing the complaint against Form 18 of the Federal Rules of Civil Procedure." *SHFL Entertainment, Inc. v. DigiDeal Corp.*, No. 2:12-cv-01782-GMN-VCF, 2013 WL 5328437, at *2 (D. Nev. Sept. 20, 2013). Form 18 requires only:

> (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent by making, selling, and using [the device] embodying the patent; (4) a

10

statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages.

*SHFL Entertainment*, 2013 WL 5328437, at *3 (internal quotations and citations omitted).

Rock does not dispute that the FAC satisfied the requirements of Form 18. Instead, he contends that the allegations for patent infringement, must fail because the diagram attached as "Exhibit D to the FAC demonstrates unequivocally that Plaintiffs have not, and cannot, establish that each and every limitation of the '519 patent claim is present, either literally or equivalently in the accused devise." (Dkt. No. 146 at 2:20-24.) This is simply not true.

### 1. The First Cause of Action For Direct Infringement Encompasses Literal Infringement And Infringement Under The Doctrine of Equivalents

While Rock pays lip service to the doctrine of equivalents at the beginning of the motion, nowhere in his argument is there any demonstration that the diagram attached as Exhibit D to the FAC refutes the possibility that even if the device does not literally infringe, it may infringe under the doctrine of equivalents. The FAC specifically asserts a claim for "direct infringement," which includes not only literal infringement but also infringement under the doctrine of equivalents. "Under the doctrine of equivalents, [Plaintiffs] may lay claim to 'those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes.'" *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1363 (Fed. Cir. 2006) (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722, 733 (2002)); *see also Cybor*, 138 F.3d at 1459; *Mas-Hamilton*, 156 F.3d at 1211-12.

The FAC alleges that "defendants have been, are currently and, unless enjoined will continue to **directly infringe** one or more claims of the '519 patent by making, using, offering to sell and selling within the United States the patented invention." (FAC, ¶ 51) (emphasis added). This allegation places the moving defendants on notice for direct infringement, including infringement literally and infringement under the doctrine of equivalents. Indeed, it is settled that direct infringement encompasses both literal infringement and infringement under the doctrine of equivalents. *See Auburn University v. International Business Machines, Corp.,* 864 F.Supp.2d 1222,

11

1225 (M.D. Ala 2012) ("the law allows for a pleading of a doctrine of equivalents infringement theory through a bare-bone allegation of direct infringement."). This is because direct infringement is established by showing that "one or more claims of the patent read on the accused device literally or under the doctrine of equivalents." *Spansion, Inc. v. International Trade Commission*, 629 F.3d 1331, 1349 (Fed. Cir. 2010) (citing to *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005); *Enercon GmbH v. Int'l Trade Comm'n*, 151 F.3d 1376 (Fed. Cir. 1998)).

Courts have long "recognized that to permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing . . . [because o]utright and forthright duplication is a dull and very rare type of infringement." *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 607 (1950). The essence of the doctrine of equivalents is to "prevent an infringer from stealing the benefit of the invention" by allowing the patentee to "proceed against the producer of a device if it performs substantially the same function in substantially the same way to obtain the same result." *Id.* at 608 (citing *Sanitary refrigerator Co. v. Winters*, 280 U.S. 30, 42 (1929)).

Even if the claim does not read literally on the accused device, direct infringement still exists under the doctrine of equivalents when the "two devices [patented device and accused device] do the same work in substantially the same way, and accomplish substantially the same result, [such that] they are the same, even though they differ in name, form or shape." *Id.* at 608 (citing to *Union Paper-Bag Machine Co. v. Murphy*, 97 U.S. 120, 125 (1877)); *see also Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 40 (1997) (reaffirming the doctrine of equivalents). The doctrine of equivalents is designed to discourage "the unscrupulous copyist [from making] unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law." *Graver,* 339 U.S. at 607. Equivalency can be determined by applying the substantially same function, way and result test (also referred to as the "triple identity" test) or the "insubstantial differences" test so long as "the test is probative of the essential inquiry: Does the accused product

12

or process contain elements identical or equivalent to each claimed element of the patented invention?" *Warner-Jenkinson*, 520 U.S. at 19.  Additionally, a patentee is not required to actually disclose equivalents in the patent in order for equivalents to infringe upon the patent. *Id.* at 37.

### 2.     All Elements of Claim 1 Are In The Accused Apparatus Literally or Under The Doctrine of Equivalents

Rock contends that the accused apparatus does not infringe claim 1 of the '519 patent because two elements of the claim are absent from the apparatus.  (Dkt. No. 146, at 14)  That is incorrect.  The "missing" elements are present in the accused apparatus.  The elements are infringed literally or under the doctrine of equivalents, which prevents alleged infringers from making unimportant and insubstantial changes and substitutions in attempt to place the accused apparatus outside the reach of the law.

Importantly, Rock does not dispute that the vast majority of the elements in claim 1 of the '519 patent are reflected in the *USA Today* diagram attached as an exhibit to the FAC. Claim 1 provides patent protection for the following:

> Apparatus for representing moving images in the background of a stage using an image source, said stage including a floor, a ceiling disposed vertically above said floor and a background disposed there between, said apparatus characterised in that **a reflecting surface (18) is arranged on said floor (30) of said stage (28)** in the central region thereof, **a transparent smooth foil (20) extends between said floor (30) and said ceiling (32) at a position which is disposed further forwardly**, and **the image source** is arranged at the ceiling (32) in front of the upper end of the foil (20) which is held there, and **is directed on to the reflecting surface (18)**.

(Emphasis added.)  Rock contends only that the elements in bold above are literally missing from the accused apparatus.  (Dkt. No. 146 at 10-12.)  But the accused apparatus embodies the alleged "missing" elements; even Rock admitted during the Court-ordered inspection "that in a nutshell, is what the first patent [the '519 patent] is about" when he was describing the set-up of the accused apparatus. (FAC, ¶ 39.)

Contrary to Rock's contention, the element of *a reflecting surface (18) is arranged on said floor (30) of said stage (28)* and *the image source ... is directed on to the reflecting surface* exists in

13

the accused apparatus. The accused apparatus contains a reflecting surface identified as the rear projection screen. This element is literally infringed or infringed under the doctrine of equivalents by the accused apparatus. In the event Rock contends that an element does not literally read on the accused apparatus, courts have found infringement under the doctrine of equivalents.

Rock also fails to understand the accused apparatus and claim 1 of the '519 patent. As a threshold matter, Rock has clearly confused "reflecting surface" and "floor" by stating they are collectively "denoted throughout the patent with the identifying number (18)." (Dkt. No. 146, at 11.) In fact, a reflecting surface and the floor of a stage are two separate and distinct things. Hence, the reflecting surface has been identified by the number 18 and the floor of a stage has been identified by the number 30 throughout the '519 patent.

The patent also disclosed that "the reflecting surface is for example a projection screen." ('519 patent, col. 4, ll. 10-11). As noted in the *USA Today* diagram reproduced below, the accused apparatus clearly contains a projection screen:



14

1 (Dkt No. 34-4.)

2 This diagram unequivocally shows a projection screen labeled as a "rear projection screen." The diagram also contains the text "[p]ost-production video is played via a rear-projection screen . . . ." This text explains that the post-production video is directed onto the rear-projection screen. The diagram, through text and illustration, demonstrates that the image source is directed onto the reflecting surface. However, Rock has completely mischaracterized the accused apparatus and this claim element by asserting that "The image is not projected onto a reflecting surface, much less a reflecting service on the floor as required by the '519 patent." (Dkt. No. 146, at 13.) Despite Rock's convoluted assertion, the image of the accused apparatus is ***not*** projected directly onto the transparent surface bypassing the rear projection screen. This element of claim 1 also does not require the image to first be directed to the floor of the stage to then be reflected back on to the transparent surface as Rock claims. (*Id*.) Both the claim element and the accused apparatus require the image source to be directed onto the rear projection screen. Thus, the element of *the image source ... is directed on to the reflecting surface* is embodied in the accused apparatus.

Likewise, the element of a *transparent smooth foil (20) extends between said floor (30) and said ceiling (32) at a position which is disposed further forwardly* is also in the accused apparatus. Rock does not dispute that there is a transparent smooth foil in the accused apparatus. It is labeled as a "transparent surface" in the *USA Today* diagram. Rock contends that this element is missing in the accused apparatus because the foil in the accused apparatus is "angle[d] backward away from the audience." (Dkt. No. 146, at 13.) This element is not absent from the accused apparatus but instead this element reads on the accused apparatus literally or under the doctrine of equivalents. A backwardly disposed foil performs the same or substantially the same function in the same or substantially the same way to accomplish the same or substantially the same result as a forwardly disposed foil. In sum, the accused apparatus contains elements identical or equivalent to each claimed element of the patented invention.

15

1 **C.  The Third, Fourth, Fifth and Sixth Causes of Action are Undisputed Except As They**
2 **Relate To The Infringement Of The '519 Patent**

3 Rock does not dispute that Plaintiffs have satisfied the elements of the willful infringement
4 causes of action (Cause of Action 3), the active inducement cause of action (Cause of Action 4) and
5 the contributory infringement cause of action (Cause of Action 5). Instead, the moving defendants
6 assert that these Causes of Action need to be dismissed as they relate to the infringement of the '519
7 patent. But there is no basis to dismiss these causes of action when Plaintiffs' allegation for direct
8 infringement satisfied Form 18.

9 **D.  Rock Has Not Moved To Dismiss The Claim For Infringement Of The '212 Patent And**
10 **Is Equitably Estopped From Challenging The Validity Of The Patent**

11 Even though Rock does not move to dismiss the '212 patent, he argues that snippets of
12 testimony taken out of context from a confidential arbitration in London establishes invalidity of the
13 '212 patent. (*See* Dkt. No. 146 at 3:6-5:6.) This is the only unique argument raised by Rock in his
14 motion to dismiss that is different from the arguments made in the Jackson Defendants' motion to
15 dismiss. For several independent reasons, this argument fails.

16 As an initial matter, Rock admits that the validity of the '212 patent is irrelevant to this
17 motion to dismiss. Rock has not moved to dismiss the '212 patent and could not obtain such a
18 dismissal based on extrinsic hearsay evidence from an inapposite foreign arbitral proceeding.
19 Accordingly, Rock concedes that Maass' testimony in the London arbitration is not relevant to the
20 "determination in the context of the instant Motion." (Dkt. No. 146 at 3:7.)

21 Moreover, Rock is estopped from challenging the validity of his own patent. It is well
22 established that an inventor who has assigned the rights to a patent or a patent application is barred
23 "from later contending that what was assigned is a nullity." *Diamond Scientific Co. v. Ambico, Inc.*,
24 848 F.2d 1220, 1223 (Fed. Cir. 1988); *see also Intel Corp. v. U.S. Intern. Trade Comm'n*, 946 F.2d
25 821, 836-37 (Fed. Cir. 1991). Here, Rock is one of the named inventors of the '212 patent and he
26 assigned the patent to Musion Systems Limited. (FAC, ¶¶ 64, 75.) Rock cannot now challenge the
27 validity of his own patent. It would be grossly inequitable to excuse Rock from liability for his

28

16

infringement on the ground that the patent he obtained and assigned to a third party is now invalid.

Furthermore, Maass's testimony in the London arbitration is hardly dispositive of the validity of the '212 patent. Maass is not a named inventor of the '212 patent. Nor does he currently own this patent. More importantly, Maass did not specifically testify about the '212 patent. To the contrary, the confidential London arbitration concerned the rights to patents in certain foreign countries. Alleged sales or public uses of the claimed invention outside of the United States do not impact the validity of a United States patent. Mr. Maass's statements (which were made in a confidential arbitration concerning rights in a foreign country) have no bearing on the validity of the '212 patent and indisputably have no bearing on this motion to dismiss, which does not seek dismissal of the '212 patent claims.

**E.   The Court Should Grant Leave To Amend If It Believes There Are Any Deficiencies In Plaintiffs' Complaint**

Plaintiffs' allegation for direct infringement, encompassing literal infringement and infringement under the doctrine of equivalents contains the five requirements of Form 18. If, however, the Court concludes that there are any deficiencies, Plaintiffs respectfully request leave to amend to cure those deficiencies. In this Circuit, leave to amend should be liberally granted if it appears at all possible that the plaintiff can correct the defects of his complaint. *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000); *see, e.g.*, *Silver State Intellectual Technologies, Inc. v. FourSquare Labs, Inc.,* No. 2:12-cv-01308-GMN-PAL, 2013 WL 5437363, at *2 (Sept. 26, 2012).

### IV.   CONCLUSION

For the foregoing reasons, this Court should deny Rock's motion to dismiss for failure to state a claim for which relief may be granted. Alternatively, it should grant Plaintiffs leave to amend to cure any deficiencies in the allegations.

1
2
3   DATED this 5th day of December 2014.

4                               McDONALD CARANO WILSON LLP

5                               By: /s/ Ryan G. Baker
                                    CRAIG A. NEWBY (#8591)
6                                   2300 W. Sahara Avenue, #1200
                                    Las Vegas, Nevada 89102
7                                   Telephone: 702.873.4100
                                    Facsimile: 702.873.9966
8                                   cnewby@mcdonaldcarano.com

9                                   RYAN G. BAKER (admitted *pro hac*)
                                    BAKER MARQUART LLP
10                                  10990 Wilshire Boulevard
                                    Fourth Floor
11                                  Los Angeles, CA  90024
                                    Telephone:   424.652.7800
12                                  Facsimile:   424.652.7850
                                    rbaker@bakermarquart.com
13
                                    *Attorneys for Plaintiffs*
14                                  *Hologram USA, Inc., Musion Das Hologram Limited*
                                    *and Uwe Maass*
15
16
17
18
19
20
21
22
23
24
25
26
27
28
                                      18