CRAIG A. NEWBY (NSBN 8591)
McDONALD CARANO WILSON LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV  89102
Telephone:     702.873.4100
Facsimile:      702.873.9966
cnewby@mcdonaldcarano.com

RYAN G. BAKER (admitted *pro hac vice*)
BAKER MARQUART LLP
10990 Wilshire Boulevard, Fourth Floor
Los Angeles, CA  90024
Telephone:   424.652.7800
Facsimile:    424.652.7850
rbaker@bakermarquart.com

*Attorneys for Plaintiffs*
*Hologram USA, Inc., Musion Das Hologram*
*Limited and Uwe Maass*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HOLOGRAM USA, INC., a Delaware corporation; MUSION DAS HOLOGRAM LIMITED, a corporation organized under the laws of the United Kingdom; and UWE MAASS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>PULSE EVOLUTION CORPORATION, a Nevada corporation; PULSE ENTERTAINMENT CORPORATION, a Delaware corporation; JOHN C. TEXTOR, an individual; DICK CLARK PRODUCTIONS, INC., a Delaware corporation; JOHN BRANCA and JOHN McCLAIN, Executors of the Estate of Michael J. Jackson; MJJ PRODUCTIONS, INC., a California corporation; MUSION EVENTS LTD., a United Kingdom private company; MUSION3D LTD., a United Kingdom private company; WILLIAM JAMES ROCK, an individual; IAN CHRISTOPHER O'CONNELL, an individual; and DOES 1 through 10,<br><br>Defendants. | Case No.: 2:14-cv-00772-GMN-NJK<br><br>**PLAINTIFFS' MOTION TO DISQUALIFY LARRY BRANTLEY AND BRANTLEY INTELLECTUAL PROPERTY LAW AS COUNSEL** |

**NOTICE OF MOTION AND MOTION**

TO THE CLERK OF COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT plaintiffs Musion Das Hologram, Ltd. ("MDH"), Uwe Maass and Hologram USA, Inc. (collectively "Plaintiffs") will, and hereby do, move for an order disqualifying Larry Brantley and the law firm Brantley Intellectual Property Law from continuing to appear as counsel for defendants Ian O'Connell, Musion Events Ltd. and Musion3D Ltd. (the "O'Connell Defendants") in this action.

Good cause exists to grant this motion. Brantley previously represented plaintiff MDH's predecessor in interest, Musion Systems Limited, in connection with the prosecution of U.S. Patent No. 7,883,212 (the " '212 patent"). MDH subsequently acquired substantially all of MSL's assets, including the '212 patent and any of its children. Pursuant to that acquisition, MDH also acquired the attorney-client privilege, as it relates to the acquired assets. In the present lawsuit, Plaintiffs allege the defendants infringed the '212 patent. Accordingly, the *Nevada Rules of Professional Conduct* preclude Brantley from continuing to represent parties directly adverse to MDH in a patent infringement action concerning the '212 patent.

All of the defendants in this action, including the O'Connell Defendants, have put the validity of the '212 patent at issue in this case. As the attorney responsible for prosecuting the '212 patent, Brantley must be disqualified in order to be prevent privileged and confidential information gained during his representation of MSL from being disclosed.

This motion is based upon this motion; the attached Memorandum of Points and Authorities; the concurrently-submitted Declarations of Giovanni Palma, Uwe Maass and Scott Malzahn; all pleadings and other records on file in this action; and such further evidence and arguments as may be presented at or before any hearing on the motion.

1

PLAINTIFFS' MOTION TO DISQUALIFY BRANTLEY

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

The attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law" and its purpose is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981).  The privilege exists to "protect every person's right to confide in counsel free from apprehension of disclosure of confidential communications." *In re Horn*, 976 F. 2d 1314, 1316-17 (9th Cir. 1992).  By their representation in this case, Larry Brantley ("Brantley") and his law firm, Brantley Intellectual Property Law ("Brantley Law"), not only threaten to deprive plaintiffs of the protections of the attorney-client privilege, that representation also presents an intractable conflict of interest.  Brantley and his law firm should be disqualified from representing defendants Ian Christopher O'Connell ("O'Connell"), Musion Events Ltd. ("MEL") and Musion3D Ltd. ("M3D") (collectively, the "O'Connell Defendants") in this lawsuit.  Although Brantley has not disputed the existence of a conflict, Brantley refuses to voluntarily withdraw from this action.

Brantley represented Plaintiff Musion Das Hologram's ("MDH's") predecessor in interest, Musion Systems Limited ("MSL"), in the prosecution of U.S. Patent No. 7,883,212 (the " '212 patent").  The '212 patent is at issue in this case.  O'Connell and his co-defendants have challenged the validity of that patent, and Brantley will likely be required to testify in this case.  Pursuant to his representation of MSL, Brantley obtained confidential and privileged information related to the same subject matter at issued in his representation of the O'Connell Defendants.  For this reason, Brantley must be disqualified. *Coles v. Arizona Charlie's*, 973 F. Supp. 971, 973 (D. Nev. 1997); *Dow Chem. Co. v. Mahlum*, 114 Nev. 1468 (1998) (overruled on other grounds) ("A district court has inherent power to enjoin an attorney from representing conflicting interests").

A long-standing rule of patent law prevents attorneys who prosecute patents from later contesting the validity of those patents in litigation. *Asyst Tech. Inc. v. Empak, Inc.*, 962 F. Supp. 1241, 1242 (N.D. Cal. 1997).  Like the rules underlying the conflict of interest rules and the

2

1  attorney-client privilege, this doctrine exists to protect confidential communications between
2  attorneys and their clients during the prosecution of a patent. *Id*. Even if a conflict did not exist
3  between MSL and the Musion Defendants, Brantley cannot be a part of any defense effort to contest
4  the validity of the patent he prosecuted and must be disqualified.

5  Either ground for disqualification by itself is sufficient ground to disqualify Brantley in this
6  litigation. Considered together, they suggest serious misconduct. The conflicts posed by Brantley's
7  representation of Defendants are not hypothetical – Brantley is directly opposed to his prior client's
8  interests concerning the subject matter of the prior representation. There is a real danger that in the
9  course of representing the Musion Defendants and contesting the '212 patent, Brantley will disclose
10 confidential communications with MSL concerning the '212 patent. As MSL's direct successor-in-
11 interest and having acquired substantially all of MSL's assets in a judicial sale, plaintiff MDH owns
12 the privilege between MSL and Brantley and will not agree to waive the conflict or the privilege
13 over MSL's communications with Brantley. The very fact of Brantley's representation of the
14 Musion defendants threatens MSL's control of the privilege. Were attorneys allowed to challenge
15 the validity of patents they prosecuted, technology clients would be perpetually fearful of fully
16 disclosing all relevant facts related to an invention in the prosecution process in the event that their
17 attorney might use that information to later challenge the validity of their patent. Similarly, clients
18 would be afraid to fully and frankly communicate with attorneys concerning representations if the
19 attorneys could later represent directly adverse parties.

20 In an attempt to avoid unnecessary motion practice, Plaintiffs informed Brantley of the
21 impropriety of his representation and requested that he withdraw from this action immediately.
22 Despite expressing concern over his representation, Brantley refused to voluntarily withdraw,
23 forcing Plaintiffs to bring this motion. He and his firm should be disqualified.

24 **II.     PROCEDURAL HISTORY**

25 In May 2014, Plaintiffs brought this action against O'Connell, Rock and their co-defendants
26 for infringement of the '212 patent and U.S. Patent No. 5,865,519 ("the '519 patent") (collectively,
27 the "Patents-In-Suit"). Plaintiffs' patents make it possible to create the illusion of life-size, three-
28

3

dimensional moving images on stage that are nearly indistinguishable from real people. (Dkt. 34, First Amended Complaint ("FAC"), ¶ 2.)  Plaintiffs allege that the defendants infringed the '519 and '212 patents by using their patented technology to create a holographic-like projection of Michael Jackson during the 2014 Billboard Music Awards.  (FAC, ¶¶ 1-3.)  Because the technology defendants used to produce the Michael Jackson performance is covered by Plaintiffs' patents, this case was filed.

Although no defendant has filed an answer in this case,[1] all of the defendants (including the O'Connell Defendants) have stated that they intend to challenge the validity of the '212 patent.  In fact, all of the defendants who have served an initial disclosure of non-infringement, invalidity, and unenforceability contentions under Local Rule 16.1-8 already have asserted that the '212 patent is invalid.[2]  (Declaration of Scott M. Malzahn ("Malzahn Decl."), ¶ 3.)  Likewise, O'Connell's business partner in Musion3D and Musion Events, defendant William Rock, has *already* argued in briefing to this Court that the '212 patent is invalid.  (*See* Dkt. 146 at p. 3 (arguing that the '212 patent is invalid).)  Further, Brantley has stated in meet and confer discussions that the O'Connell Defendants intend to challenge the validity of the '212 patent.  (Malzahn Decl., ¶ 4.)  In addition to challenging the validity of the '212 patent, the defendants have argued in pleadings and discovery that the apparatus used to create the holographic-like projection of Michael Jackson did not infringe on the Patents-In-Suit.  (*See* Dkt. 81 (Motion to Dismiss of defendants John Branca, John McClain, MJJ Productions, Inc. and dick clark productions, inc., at p. 6.)

On November 10, 2014, Larry Brantley ("Brantley") and his law firm Brantley Intellectual Property Law ("Brantley Law") appeared in this action to represent defendants O'Connell, MEL and M3D.  (*See*, e.g., Dkt. 141 (motion to dismiss for lack of personal jurisdiction).

---

[1] At present, there are several motions to dismiss filed by the defendants pending before this Court.  (*See* Dkt. Nos. 54, 81, 141, 146.)  In addition, Plaintiffs filed a motion for leave to amend the complaint on December 5, 2014, to add several new causes of action, including a claim for infringement of U.S. Patent No. 8,328,361 (the " '361 patent").  (*See* Dkt. No. 157.)

[2] To date, O'Connell, Rock, Musion Events and Musion3D have not served non-infringement, invalidity or unenforceability contentions as required by Local Rule 16.1-8. (Malzahn Decl., ¶ 4.) The rest of the defendants served their contentions on November 4, 2014. (*Id*.)

4

Shortly thereafter, on November 17, 2014, Plaintiffs informed Brantley of the impropriety of his representation and requested that he withdraw from this action immediately. (Malzahn Decl., Ex. A.) Plaintiffs wrote in part:

> In short, my clients are extremely concerned that your representation of O'Connell, Musion Events, Musion3D or any defendant in this case already has caused and will continue to cause them serious injury. Accordingly, Maass and MDH demand that you immediately agree in writing to withdraw from your improper representation of any defendant in this case. In the absence of your voluntary withdrawal, my clients will file a motion to disqualify your office . . . .

(*Id*.)

Subsequently, Plaintiffs' counsel engaged in several meet and confer discussions with Brantley about his representation. On December 11, 2014, Mr. Brantley spoke with Plaintiffs' counsel about the conflict. (*Id*., ¶ 7.) Brantley acknowledged in this call that he had concerns about his representation of the O'Connell Defendants, and he requested that Plaintiffs' counsel hold off on filing a motion to disqualify for an additional week while he conducted more due diligence into the alleged conflict. (*Id*.) Brantley acknowledged in this phone call that he had prosecuted the '212 patent, and that the O'Connell Defendants likely would want to challenge the validity of that patent in this litigation. (*Id*.) He represented to Plaintiffs' counsel that he took the alleged conflict seriously and had not yet breached any client confidences. (*Id*.)

A week later, on December 18, 2014 Plaintiffs' counsel spoke with Brantley again about the conflict. (*Id*., ¶ 8.) Brantley advised Plaintiffs' counsel that his clients would not voluntarily consent to his withdrawal. (*Id*.) Although he did not dispute that a conflict existed, Brantley stated that Plaintiffs would need to file their motion to disqualify. (*Id*.) Additionally, Brantley took the position in this discussion that the O'Connell Defendants should not be required to serve their non-infringement, invalidity or unenforceability contentions under Local Rule 16.1-8 until after this motion to disqualify is decided. (*Id*.) He expressed concern that it might be improper for his firm to serve contentions challenging the validity of the '212 patent when he had prosecuted the patent. (*Id*.) He thus has implicitly (if not expressly) acknowledged the impropriety of his continued representation of the O'Connell Defendants.

5

PLAINTIFFS' MOTION TO DISQUALIFY BRANTLEY

### III. FACTUAL BACKGROUND

**A. Brantley's Representation of MSL and Prosecution of the '212 Patent and Its Continuations**

This patent infringement lawsuit stems in large part from a dispute between former business partners. Defendants O'Connell and Rock were former business partners with Plaintiff Maass in a company called Musion Systems Limited ("MSL"), an English corporation. (Declaration of Uwe Maass ("Maass Decl."), ¶ 4.) Rock, Maass and O'Connell each owned one third of MSL. (*Id*. at ¶¶ 4-5, Ex. A (April 3, 2008 Written Resolution of Musion Systems Limited).) Each of them also served as directors of the company. (*Id*. at ¶ 5, Exs. B, C).

Maass and MSL were the exclusive beneficial owners of certain intellectual property rights relating to a projection system that is capable of creating the illusion of life-like, three-dimensional images on stage. (*Id*., ¶ 3-4.) Mr. Maass is the named inventor of the '519 patent. (*Id*., Ex. B.) Messrs. O'Connell and Rock are the named inventors of the '212 patent. (*See* Malzahn Decl., Ex. C.) During the operation of MSL, O'Connell and Rock executed multiple assignments of their inventions and intellectual property to MSL. Indeed, in September 2006, O'Connell and Rock assigned all their interests in the anticipated application for the '212 patent, including any continuations of the patent, to MSL. (*See id*., Ex. D.)

After O'Connell and Rock executed the assignments, MSL hired Brantley, an intellectual property attorney in the United States, to prosecute the '212 patent, titled "Projection Apparatus And Method For Pepper's Ghost Illusion." (Maass Decl., at ¶ 6). Brantley corresponded with the inventors and the U.S. Patent and Trademark Office about this invention as is reflected in the prosecution history. (Malzahn Decl., ¶ 14, Ex. F.) In fact, O'Connell signed a power of attorney appointing Brantley as "attorney or agent to prosecute [the '212 patent] and to transact all business in the United States Patent and Trademark Office connected therewith." (*Id*.) During the prosecution of the '212 patent, Maass provided Brantley with confidential information relating to the application for the '212 patent. (Maass Decl., ¶ 6.) As a result of Brantley's efforts, the '212 patent was issued on February 8, 2011, by the U.S. Patent and Trademark Office. (Dkt. No. 34-2 (Exhibit B to FAC).)

After the issuance of the '212 patent, Brantley filed applications for a continuation and a divisional patent associated with the '212 patent on behalf of MSL. (Malzahn Decl., ¶ 12, Exs. G, H.) This continuation is U.S. Patent number 8,328,361 (the "'361 patent"), which the U.S. Patent and Trademark Office issued on December 11, 2012. (Malzahn Decl., ¶ 12, Ex. H.)[3] Brantley still lists "Musion Systems Limited" on his website brantleyiplaw.com as a representative client. (*Id*., Ex. E.)

**B.     MDH's Ownership of the '212 Patent and Control of the Privilege Over Communications Between Brantley and MSL**

In September 2013, plaintiff MDH acquired substantially all of the assets of MSL, including the '212 patent and its children. (Declaration of Giovanni Palma ("Palma Decl."), ¶¶ 2-3, Exs. A and B). Earlier that year, due to financial difficulties and mismanagement, MSL entered into insolvency proceedings and its assets were auctioned off to the highest bidder in the United Kingdom. (Maass Decl, ¶ 7.) Four joint administrators were appointed to manage MSL while the company was in administration. (Palma Decl., Ex. A.) During the administration process,[4] MDH bid for the rights to MSL's assets. (*Id*., ¶ 3.) On September 25, 2013, the joint administrators for MSL obtained an order from the London High Court of Justice, Chancery Division, permitting the sale of substantially all of the company's assets, including over 100 patents (the '212 patent included), to MDH. (*Id.*, Ex. C.) The London Court of Appeal affirmed the validity of the sale and dismissed a legal challenge to the sale made by O'Connell. (*Id*., Ex. D.)

As a result of the approved administration sale, MDH owned all of MSL's assets – including all of its intellectual property rights and goodwill. The goodwill assignment defined MDH as the successor entity to MSL, transferring ███████████████████████████████████████

███████████████████████████████████████

---

[3] Plaintiffs have moved to amend the FAC to assert infringement of the '361 patent. (Dkt. 157.) As described in the Second Amended Complaint appended as Exhibit A to the Declaration of May Chan in Support of Plaintiffs Motion for Leave to File a Second Amended Complaint (Dkt. No. 157-1, ¶¶ 2-3), Plaintiffs acquired the rights to the '361 patent in the administration's sale of MSL's intellectual property. Brantley's work prosecuting the '361 patent presents and magnifies the same conflict issues as his prosecution of the '212 patent.

[4] An administration is an insolvency procedure under the laws of England.

7

PLAINTIFFS' MOTION TO DISQUALIFY BRANTLEY

█████████████████████████████████████████ (*Id*., Ex. B.)  The intellectual property assignment transferred to MDH ████████████████████████ ███████████████████████████████████████████████████ (*Id*.)  The intellectual property rights transferred to MDH specifically included the '212 patent.  (*Id*. at Appendix B (Schedule of Patents and Applications for Musion Systems Limited).[5]  As case law makes clear, MDH also acquired MSL's attorney-client privilege with respect to all of its patents and intellectual property.

MDH does not have any intention of waiving any attorney-client privilege or authorizing the disclosure of confidential information not specifically required in discovery.  Yet, MDH can no longer communicate with its former counsel to ensure that the appropriate protections are taken.  MDH is therefore concerned that Mr. Brantley's representation of the O'Connell Defendants has already caused, or will cause, MDH irreparable harm.  Specifically, MDH is "worried that Mr. Brantley has disclosed or will disclose confidential client confidences obtained during his representation of MSL even though MDH holds the rights to the privilege."  (Palma Decl., ¶ 4.)   It also is "concerned that Mr. Brantley will attempt to use his knowledge obtained during the course of the prosecution of the '212 patent to wrongfully attempt to invalidate that patent."  (*Id*.)

### III.   ARGUMENT

**A.   Legal Standard**

The Court has the inherent power to disqualify attorneys that violate professional standards of loyalty and confidentiality.  *Coles v. Arizona Charlie's*, 973 F. Supp. 971, 973 (D. Nev. 1997) ("[t]he court has the power to disqualify an attorney from representing a particular client in order to preserve the integrity of its judgment, maintain public confidence in the integrity of the bar, eliminate conflicts of interest, and protect confidential communications between attorneys and their clients").  The local rules of this Court provide that an attorney admitted to practice before this court

---

[5] After purchasing the assets of MSL, MDH entered into a business partnership with Maass who had invented the patented holographic-like projection technology and still owned many patents relating to that technology, including the '519 patent.  (Palma Decl., ¶ 9)  Maass and MDH granted an exclusive license to Hologram USA to practice their patents in the United States and Canada.  (*Id*.)

8

must "adhere to the standards of conduct prescribed by the Model Rules of Professional Conduct as adopted and amended by the Supreme Court of Nevada." L.R. IA 10-7; *see also Coles v. Arizona Charlie's*, 973 F. Supp. 971, 973 (D. Nev. 1997).)  The Court has the inherent power to disqualify attorneys from representing a client in order to preserve the integrity of its judgment, maintain public confidence in the integrity of its bar, eliminate conflicts of interest, and protect confidential communications between attorneys and their clients. *Coles v. Arizona Charlie's*, 973 F. Supp. 971, 973 (D. Nev. 1997); *Dow Chem. Co. v. Mahlum*, 114 Nev. 1468 (1998) (overruled on other grounds) ("A district court has inherent power to enjoin an attorney from representing conflicting interests.")  When deciding whether an attorney's conflicts of interest preclude representation, "any doubt should be resolved in favor of disqualification." *Dow. Chem.*, 114 Nev. 1507. There is a long-standing and settled rule that an attorney cannot represent conflicting interests – after the attorney has been retained and received the confidence of a client, "he cannot accept retainer from, or enter the services of, those whose interests are adverse to his client in the same controversy or in matters so closely allied thereto as to be, in effect, a part thereof." *Hawkins v. Eighth Judicial Dist. Courti, Clark Cnty.*, 67 Nev. 248, 255-56 (1950) (internal quotations omitted).

Under *Nevada Rule of Professional Conduct* 1.9(a), "a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Violation of Rule 1.9(a) results in disqualification. *Coles v. Arizona Charlie's*, 973 F. Supp. 971, 973 (D. Nev. 1997) (attorney for plaintiffs disqualified for previously representing defendants in a substantially related matter); *North Am. Specialty Ins. Co. v. Nat'l Fire & Marine Ins. Co.*, 2011 WL 3957513 at *2 (D. Nev. 2011) (attorney disqualified from representing insurance company in dispute against prior client). A party moving to disqualify an attorney under Rule 1.9(a) must establish: (1) that it had an attorney-client relationship with the lawyer, (2) that the former matter and the current matter are substantially related, and (3) that the current representation is adverse to the party seeking disqualification. *Nevada Yellow Cab Corp. v. Eighth Jud. Dist. Ct.,* 123 Nev. 44, 50 (2007).

1  Because each of these requirements is satisfied in this case, Larry Brantley and his law firm should
2  be disqualified.
3      In addition to these general conflict rules, a rule of law also exists that automatically
4  disqualifies an attorney challenging the validity of a patent by the lawyer who prosecuted the patent.
5  *Asyst Tech. Inc. v. Empak, Inc.*, 962 F. Supp. 1241, 1242 (N.D. Cal. 1997)

**B.     Brantley's Prior Representation of MSL Disqualifies Him From Representing Defendants**

8      Nevada's conflict of interest rules apply in the context of corporate transfers.  Where a
9  business succeeds to the interests of a predecessor entity, it succeeds to the prior corporation's right
10 to protect confidential information transmitted to the prior corporation's counsel.  Counsel to the
11 predecessor entity will be disqualified from representations adverse to the successor entity in
12 matters substantially related to the prior representation.  *Waid v. Eight Judicial Dist. Ct.*, 121 Nev.
13 605, 612 (2005) (attorney disqualified where she represented predecessor corporation in lawsuit
14 involving Ponzi scheme allegations relevant to collection action).  When ownership of patents is
15 transferred, the company acquiring the patents is able to assert the attorney-client privilege where
16 the transfer of the patent assets results in transfer of control of the business.  *Soverain Software LLC*
17 *v. Gap, Inc.*, 340 F. Supp. 2d 760, 762 (E.D. Tex. 2004) (successor entity could assert attorney-
18 client privilege over communications between former owners of three patents and their counsel);
19 *Parus Holdings, Inc. v. Banner & Witcoff Ltd.*, 585 F. Supp. 2d 995, 1000 (N.D. Ill. 2008)
20 (attorney-client privilege transferred with acquisition of patents and corporate division).
21     For example, in *Soverain*, the successor entity acquired patent assets of a software company
22 in a bankruptcy proceeding and continued to sell the patented product and serviced customers with
23 contracts to that product, and therefore was able to assert the privilege over communications
24 between the predecessor software company and its counsel.  *Id*.  An assignment of patent assets
25 which constitute substantially all of a business' assets also transfers the attorney-client privilege
26 relating to those assets.  *SimpleAir, Inc. v. Microsoft Corp.*, 2013 WL 4574594 at *2-3 (E.D. Tex.
27 2013).  Furthermore, the assignment of the "entire right, title, claim, and interest in" a patent is

10

sufficient to transfer the right to assert the attorney-client of the patent's original owner in the documents relating to the patent. *Karl Storz Endoscopy-Am., Inc. v Stryker Corp.,* 2010 WL 727220, at *1 (N.D. Cal. Mar. 1, 2010); *see also City of Rialto v. U.S. Dept. of Defense,* 492 F Supp 2d 1193, 1201 (C.D.Cal.2007) (holding that former corporation's attorney-client privilege transferred to the successor of the sole shareholder that acquired "substantially all" of dissolved corporation's assets). These principles concern not only the power to assert privilege over communications, but also to disqualify attorneys from adverse representations. *See*, *Parus Holdings*, 585. F. Supp. 2d 762 (noting that transfer of privilege issues arise where party seeks to disqualify adversary's counsel); *Tekni-Plex, Inc. v. Meyner and Landis*, 89 N.Y. 2d 123 (1996) (law firm disqualified from representing former owner of predecessor corporation in arbitration initiated by successor alleging breach of warranties in merger agreement).

Brantley and his firm must be disqualified because he represented MSL with respect to the '212 patent. (Malzahn Decl., ¶¶ 12, 14 Exs. F-I.) An attorney-client relationship existed between Brantley and MSL. Plaintiff MDH is MSL's successor in interest – all of MSL's patent assets were transferred to MDH, and MDH was expressly granted the right to ▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Palma Decl., Ex. B.)

Brantley's representation of MSL is also "substantially related" to his current representation of the O'Connell Defendants. To determine whether an attorney is subject to disqualification based on the representation of a former client in the same or a substantially related matter, the Court must: (1) make a factual determination concerning the scope of the former representation; (2) evaluate whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters; and (3) determine whether that information is relevant to the issues raised in the present litigation. *Waid v. Eight Judicial District Ct.,* 121 Nev. 605, 610 (2005); *see also Sanchez v. Am. Family Mut. Ins. Co.,* 2012 WL 4498226, *2 (D. Nev. Sept. 28, 2012) (applying the *Waid* test to determine whether two matters were "substantially related"). Here, Brantley was retained by MSL in connection with the prosecution of the '212

11

1  patent and other matters related to the patented projection technology at issue. (Malzahn Decl., ¶¶

2  12, 14 Exs. F-I.; Maass Decl., ¶ 6.)  In this case, it is not only reasonable to <u>infer</u> confidential

3  information concerning the '212 patent was provided to Brantley by MSL[6], <u>the communications

4  between MSL and Brantley concerning the '212 patent are protected by the attorney-client privilege

5  belonging to MDH</u>.  The confidential and privileged information is as a matter of logic inherently

6  related to Plaintiffs' claim that the defendants infringed the '212 patent.

7      Brantley's representation is materially adverse to Plaintiffs, as he presently represents

8  defendant entities and individuals accused of infringing the very patent he prosecuted for Plaintiffs'

9  predecessor-in-interest.  Brantley should therefore be disqualified from representing the O'Connell

10 Defendants.

11 **B.   Brantley Cannot Challenge the Validity of The '212 Patent**

12     Any challenge to the validity of a patent by the lawyer who prosecuted the patent is grounds

13 for automatic disqualification.  *Asyst Tech. Inc. v. Empak, Inc.*, 962 F. Supp. 1241, 1242 (N.D. Cal.

14 1997) ("All courts of which I am aware and which have applied California and Ninth Circuit law

15 have disqualified a law firm that has challenged the validity of a patent one of the firm's lawyers

16 prosecuted for a former client.")  The result of disqualification is "equally compelling" where, for

17 example, affirmative defenses and counterclaims allege improper conduct in prosecuting the

18 patents.  *Id*.  The party seeking to disqualify prior patent counsel need not even show the

19 confidential information the prosecuting attorney possessed, as working on the patent and

20 exchanging documents with the Patent Office makes it "inconceivable" that the attorney did not

21 have confidential information.  *Id*. at FN 4.

22     Here, there is a real danger that Brantley will use confidential information gained during the

23 prosecution of the '212 patent to attack its validity or allege inequitable conduct by Plaintiffs.  In

24 meet and confer discussions, Brantley has admitted that his clients intend to challenge the validity

---

[6] An attorney filing patents on behalf of a client necessarily receives confidential information about the patent during that process.  As one court noted, "few people are more likely to have confidential information with which to attack the validity of a patent than the lawyers who prosecuted it." *Asyst Tech., Inc. v. Empak, Inc*. 962 F. Supp. 1241, 1242 (N.D. Cal. 1997).

of the '212 patent.  Likewise, Rock has already argued in briefing to this Court that the '212 patent is invalid, and <u>he is a 50% owner of the two companies represented by Brantley</u>.  (Malzahn Decl., Ex. J).  Plaintiffs also believe the defendants are coordinating their defense with each other, and that Brantley will share confidential information about the patents with other counsel in order to attack the patents by proxy.  For all these reasons, Brantley and his law firm must be disqualified.

## IV.    CONCLUSION

For the foregoing reasons, Brantley and Brantley Intellectual Property Law should be disqualified from representing any defendant in this case.

DATED this 22nd day of December 2014.

                              McDONALD CARANO WILSON LLP

                              By: <u>/s/ Ryan G. Baker</u>
                                   CRAIG A. NEWBY (#8591)
                                   2300 W. Sahara Avenue, #1200
                                   Las Vegas, Nevada 89102
                                   Telephone: 702.873.4100
                                   Facsimile: 702.873.9966
                                   cnewby@mcdonaldcarano.com

                                   RYAN G. BAKER (admitted *pro hac*)
                                   BAKER MARQUART LLP
                                   10990 Wilshire Boulevard
                                   Fourth Floor
                                   Los Angeles, CA  90024
                                   Telephone:   424.652.7800
                                   Facsimile:   424.652.7850
                                   rbaker@bakermarquart.com

                                   *Attorneys for Plaintiffs*
                                   *Hologram USA, Inc., Musion Das Hologram Limited*
                                   *and Uwe Maass*