GORDON SILVER
Michael N. Feder (NV Bar No. 7332)
  mfeder@gordonsilver.com
Jennifer Ko Craft (NV Bar No. 8038)
  jcraft@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone: 702.796.5555
Facsimile: 702.369.2666

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
Howard Weitzman (*pro hac vice*)
  hweitzman@kwikalaw.com
Gregory Korn (*pro hac vice*)
  gkorn@kwikalaw.com
Jonathan Steinsapir (*pro hac vice*)
  jsteinsapir@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for Defendants John Branca and John
McClain in their capacity as Co-Executors of
the Estate of Michael J. Jackson, deceased; MJJ
Productions, Inc.; and dick clark productions,
inc.

[CONTINUED ON FOLLOWING PAGE]

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HOLOGRAM USA, INC., et al., | Case No. 2:14-cv-00772-GMN-NJK |
| Plaintiffs, | **MOTION TO DISMISS ALL CLAIMS FOR INFRINGEMENT OF U.S. PATENT NO. 5,865,519 PURSUANT TO FED. R. CIV. P. 12(b)(6) OF DEFENDANTS JOHN BRANCA AND JOHN McCLAIN AS EXECUTORS OF THE ESTATE OF MICHAEL J. JACKSON, MJJ PRODUCTIONS, INC., DICK CLARK PRODUCTIONS, INC., PULSE EVOLUTION CORPORATION, PULSE ENTERTAINMENT CORPORATION, JOHN C. TEXTOR, AND WILLIAM JAMES ROCK; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| PULSE ENTERTAINMENT, INC., et al., | |
| Defendants. | |
| | [Fed. R. Civ. P. 12(b)(6)] |

*Sidebar (vertical text):* KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

10386.00247/245157.4

_____

(Hearing Requested)

ATTORNEYS CONTINUED:

CAMPBELL & WILLIAMS
DONALD J. CAMPBELL, ESQ. (1216)
djc@campbellandwilliams.com
J. COLBY WILLIAMS, ESQ. (5549)
jcw@campbellandwilliams.com
700 South Seventh Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile:  (702) 382-0540

LAVELY & SINGER PROFESSIONAL CORPORATION
MARTIN D. SINGER (SBN 78166) (*pro hac vice*)
mdsinger@lavelysinger.com
TODD S. EAGAN (SBN 207426) (*pro hac vice*)
teagan@lavelysinger.com
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone: (310) 556-3501
Facsimile: (310) 556-3615

Attorneys for Defendants Pulse Evolution Corporation,
Pulse Entertainment Corporation, John Textor and
William James Rock

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Defendants John Branca and John McClain in their capacity as Executors of the Estate of Michael J. Jackson, deceased, MJJ Productions, Inc., and dick clark productions, inc., by and through their counsel Gordon Silver and Kinsella Weitzman Iser Kump & Aldisert, LLP, together with Defendants Pulse Evolution Corporation, Pulse Entertainment Corporation, John Textor, and William James Rock, by and through their counsel Campbell & Williams and Lavely & Singer, hereby move for an order, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing all claims in the Second Amended and Supplemental Complaint ("SAC") related to allegations of infringement of U.S. Patent No. 5,865,519 ("the '519 patent") for failure to state a claim upon which relief can be granted.

More specifically, Defendants seek dismissal of the following claims for relief, without leave to amend, in the SAC:

1.      The First Claim for Relief for "Infringement of Patent No. 5,865,519";

2.      The Third Claim for Relief for "Willful Infringement" insofar as it relates to the alleged willful infringement of the '519 patent;

3.      The Fourth Claim for Relief for "Active Inducement" insofar as it relates to the alleged induced infringement of the '519 patent;

4.      The Fifth Claim for Relief for "Contributory Infringement" insofar as it relates to the alleged contributory infringement of the '519 patent; and

5.      The Sixth Claim for Relief insofar as it seeks injunctive relief relating to the alleged infringement of the '519 patent.

This Motion is made and based on the following Memorandum of Points and Authorities, the SAC (including the exhibits thereto and the matters incorporated into the Complaint by reference), the accompanying Request for Judicial Notice and Declaration of Gregory Korn (with attached exhibits), any further briefing on this matter, and any oral argument the Court may permit at a hearing of this matter.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

On May 18, 2014, a computer-animated "virtual" Michael Jackson performed at the Billboard Music Awards ("BMAs") in Las Vegas to a previously unreleased song entitled "Slave To The Rhythm."  Through a stage illusion known as "Pepper's Ghost," a two-dimensional projection of Jackson appeared as a 3D image.

By Plaintiffs' admission, this "Pepper's Ghost" illusion is <u>over 150 years old</u> and has been used for decades in "movies, concerts, magic shows and amusement park rides," including Disney's Haunted Mansion.  Second Amended And Supplement Complaint ("SAC"), ¶ 1.  Nevertheless, Plaintiffs allege that the Billboard Awards performance of Jackson infringed three patents that purport to cover "new incarnation[s] of Pepper's Ghost"—U.S. Patent No. 5,865,519 ("the '519 patent"), U.S. Patent No. 7,883,212 ("the '212 patent"), and U.S. Patent No. 8,328,361 ("the '361 patent").  In fact, not one of these patents was infringed.  And the lack of infringement of the first of the three patents is readily apparent from the face of Plaintiffs' pleading.

Putting aside questions regarding the patentability of Maass's "invention," the '519 patent purports to cover one very specific configuration of the age-old Pepper's Ghost illusion.  Specifically, the '519 patent claims a Pepper's Ghost configuration in which: (i) a projector located at the ceiling (ii) projects an image onto a "reflecting surface" arranged on the floor of the stage, which (iii) reflects the image back into a transparent, reflective "foil" (*e.g.*, Mylar) that leans forward toward the audience.  Maass was not the first to use a projector, or a reflecting surface, or a transparent foil in a Pepper's Ghost illusion.  Thus, the '519 patent merely claims one specific arrangement of these common elements.

The SAC attaches and incorporates by reference a schematic of the accused apparatus from the Billboard Awards.  No amount of verbal gymnastics or sleight-of-hand by Plaintiffs can change what is undeniably shown in the materials attached to their own complaint: Defendants simply did <u>not</u> use the '519 patent's purportedly novel configuration for a Pepper's Ghost illusion.  The accused apparatus did not create the

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

10386.00247/245157.4

1

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

illusion by projecting an image onto a reflecting surface on the floor, as is required to infringe the '519 patent.  Nor did the accused apparatus use a forward angled foil as is required to infringe.  The accused apparatus uses different components in a different configuration, based on prior art techniques that are in the public domain.

Knowing that the Billboard Awards apparatus does not literally infringe the '519 patent (or even come close), Plaintiffs are relegated to asserting infringement under the doctrine of equivalents.  Plaintiffs' equivalence arguments are frivolous and fail as a matter of law.  A finding of infringement under the doctrine of equivalents would (i) vitiate the '519 patent's claim limitations, causing them to cover the antithesis of what was claimed, and (ii) impermissibly expand the patent to encompass the prior art.[1]

Federal Circuit precedent is clear that a district court need not accept a plaintiff's allegations of infringement as true at the pleading stage where, as here, the lack of infringement is established by materials attached to its pleadings.  For the reasons discussed further below, Defendants respectfully request that the Court dismiss with prejudice all claims for direct, contributory, and willful infringement of the '519 patent.

---

[1] Plaintiffs' claims for infringement of U.S. Patent Nos. 7,883,212 (the "'212 patent") and 8,328,361 (the "'361 patent") – which relate to how the foil is held – are similarly baseless.  Because Plaintiffs did not attach any evidence regarding the clamping mechanism in the accused device to the SAC, Defendants do not move to dismiss these claims and instead will be seeking summary judgment shortly.  The inspection ordered by the Court demonstrated that no plausible claim for infringement of the '212 Patent or '361 Patent could be made.

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

## II.     BACKGROUND

### A.     The Purported "Inventions" In This Case Involve A Stage Illusion That Dates Back To The 1860s

The Pepper's Ghost illusion dates back to 19th Century inventors John Pepper and Henry Dircks.  SAC ¶ 1.  Pepper's Ghost "relied . . . on a heavy pane of glass positioned on stage to reflect the image of an actor positioned off-stage."  *Id.* ¶ 28.  The reflection of the off-stage actor on the pane of glass created a ghostly illusion that would appear alongside and could interact with a second actor on stage, as illustrated below:



"[O]ver the last 150 years," the illusion "has appeared in movies, concerts, magic shows and amusement park rides," *id.* ¶ 1, including at Disneyland's Haunted Mansion.  *Id.* ¶ 28. According to Plaintiffs, the '519 patent embodies "a new incarnation of Pepper's Ghost." SAC ¶ 1.  The '519 patent is attached as Exhibit A to the SAC and, for the Court's convenience, as Exhibit 1 to the Declaration of Gregory Korn ("Korn Decl.").

### B.     The '519 Patent Discloses One Specific "Incarnation" Of Pepper's Ghost

The '519 patent's purportedly "new incarnation" of the Pepper's Ghost illusion is shown in Figure 2 of the patent:



FIG.2

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

*See* Dkt. No. 188, Exh. A, p. 36.  In this version of Pepper's Ghost, a projector (12) projects an image onto a mirror (14), which reflects the image toward the floor (30).  '519 patent, Col. 3, lines 61-63.  A "reflecting surface" (18) on the floor reflects the image on to a plastic "foil" (20), such as Mylar.  *Id.*, Col. 3, lines 63-64.  To the audience (38), the image on the plastic foil appears like a virtual image in the background of the stage.  *Id.*, Col. 3, lines 64-66.

The particular placement of the projector, reflecting surface, and foil shown in Figure 2 of the '519 patent was incorporated into the "claims" of the patent, which (as the Court knows) are the portion of the patent which "define[s] the invention to which the patentee is entitled the right to exclude."  *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004).  The '519 patent has one independent claim (claim 1) and several dependent claims (claims 2 through 15).[2]  By law, each of those dependent claims "incorporate[s] by reference all the limitations of the claim to which it refers."  35 U.S.C. § 112(d).  Accordingly, the following limitations from claim 1 of the patent apply equally to every other claim in the patent:

_____

[2] Dependent claims refer to a prior claim of the patent.  For example, claim 2 of the '519 patent starts: "Apparatus as set forth in claim 1 . . . ."

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1.      Apparatus for representing moving images in the background of a
stage using an image source, said stage including a floor, a ceiling
disposed vertically above said floor and a background disposed
therebetween, said apparatus characterised in that <u>a reflecting surface
(18) is arranged on said floor (30) of said stage (28)</u> in the central
region thereof, a transparent smooth foil (20) extends between said
floor (30) and said ceiling (32) at a position <u>which is disposed further
forwardly</u>, and the image source is arranged at the ceiling (32) in front
of the upper end of the foil (2) which is held there, and is directed on
to the reflecting surface (18).

'519 patent, cols. 4:59-5:2  (emphasis added).

As shown in underlined portions of claim 1 above, the '519 patent was <u>not</u> drafted
to cover any type of Pepper's Ghost illusion.  It was <u>not</u> drafted to cover every Pepper's
Ghost illusion using a projector, a reflecting surface, and a foil.  Rather, the '519 patent
only claims as its invention a Pepper's Ghost illusion in which the projector directs an
image onto a reflecting surface that is <u>on the floor of the stage</u>, and in which the plastic foil
on which the image is viewed is "disposed further forwardly" at the ceiling than at the
floor—*i.e.*, the foil is angled forward toward the audience.

It was not an oversight or accident by Plaintiffs to limit the scope of the '519 patent
in this way when they applied for the patent.  As discussed in the following Section, these
limitations on the scope of the claims were absolutely necessary because of the crowded
field of prior art.

**C.      The '519 Patent Narrowly Claimed Its Invention To Avoid Prior Art**

To obtain patent protection, an applicant must claim an invention that is both
"novel" and "non-obvious" over the prior art.  35 U.S.C. §§ 102-103.  One cannot patent
technology that is disclosed in, or obvious in light of, the prior art.  *Id.*; *see also Whitserve,
LLC v. Computer Packages, Inc.*, 694 F.3d 10, 21 (Fed. Cir. 2012); *KSR Intern. Co. v.
Teleflex Inc.*, 550 U.S. 398 (2007).

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Because Pepper's Ghost has existed for over 100 years, there are numerous prior art patents and patent applications concerning the creation of the illusion in a theater space. Three such patents that are particularly on point vis-à-vis the '519 patent, and which are cited in the '519 patent itself, are U.S. Patent No. 4,805,895 to inventor Bob Rogers ("Rogers"), U.S. Patent No. 5,685,625 to inventor Robert Thomas Beaver ("Beaver"), and U.S. Patent No. 5,573,325 to inventor Andrew Lekowski ("Lekowski").[3]  To obtain the '519 patent, Plaintiffs needed to claim an invention that was not already disclosed in Rogers, Beaver, and Lekowski, and that was not obvious in light of this prior art.

As shown in Figure 2 of the Rogers patent below, that prior art reference taught to create a Pepper's Ghost illusion by projecting an image from "projector 34" on to a "rear view projection screen 28," which was then reflected by a "reflecting member 40 [which] is composed preferably of semi reflective and semi transmissive glass":



FIG. 2

*See* Request for Judicial Notice ("RJN"), ¶ 1, Korn Decl., Exh. 2 (Rogers Pat. Col. 6, lines 42-44; Col. 7, lines 7-21).  Rogers described that "[t]he combination of the rear view

---

[3] On a Rule 12(b)(6) motion to dismiss, the Court is entitled to consider materials that may be judicially noticed.  *See infra.*  Prior art patents like Rogers, Beaver, and Lekowski are properly the subject of judicial notice.  *See Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.,* 868 F. Supp. 2d 983, 990 (E.D. Cal. 2012) ("Court have also found the contents of patents to be the appropriate subject of judicial notice because patents are documents issued by the U.S. Patent and Trademark Office, a source whose accuracy cannot be reasonably questioned.").

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

projection screen 28 and the reflecting member 40 locates a virtual image appearing to the audience to be disposed beyond the reflecting member 40." *Id.*, Col. 7, lines 29-33.

As shown in Figure 4 from the Beaver patent (below), that prior art reference taught to create a Pepper's Ghost illusion by projecting an image from projector (40) downward using "rear projection" onto a rear projection screen (34), with the image then being reflected by a "partially silvered mirror" (32), such that the audience in "viewing area" (26) would "see the images reflected in mirror 32" while also seeing "an actor or other selected object(s) through mirror 32":



FIG. 4

*See* RJN ¶ 2, Korn Decl. Exh. 3 (Beaver Pat. Col. 4; Col. 5, lines 20-25).

The Lekowski patent, which is also cited as prior art in the '519 patent, stems from a 1994 application. *See* RJN ¶ 3, Korn Decl. Exh. 4. Figure 2 of Lekowski is shown on the following page:

FIG.2

In this prior art system, "three dimensional imagery" was created with a "projector" (46) that projects an image onto a "mirror" (50), which reflected the image onto a reflecting "screen" (54), and then onto a "beam splitter" (44) that reflected the image toward the audience. *Id.*, Cols. 1-2; Col. 3 lines 25-28.  Lekowski disclosed that instead of using a pane of glass, as in 19th Century illusions, " the beam splitter may comprise a thin flexible material or transparent or semi-transparent film such as Mylar®." *Id.*, Col. 2, lines 28-35.

Notably, Lekowski taught to create a Pepper's Ghost illusion using the <u>exact same</u> components that are used in the '519 patent: (i) a projector, (ii) which projects an image onto a mirror, (iii) which reflects the image into a reflecting surface, (iv) which reflects the image onto an angled foil.  As a result, Plaintiffs could not have obtained patent protection for any and all apparatuses that use these components.  Plaintiffs had to and did seek protection only for a <u>particular configuration</u> of these components.  Specifically, as discussed above, the '519 patent limited its claimed invention to an apparatus in which the reflecting surface is located on the floor of the stage (rather than in the ceiling, as in Lekowski), and in which the Mylar foil is angled forward toward the audience (rather than backward away from the audience, as in Lekowski).  These limitations <u>had</u> to be included in the claims of the '519 patent to distinguish it from the prior art.

### D.     Plaintiffs Ignore The Limitations Of The '519 Patent Claims In Alleging Infringement In This Case

Although Plaintiffs were required to impose the limitations discussed above on their claimed invention when they obtained the '519 patent, now, in alleging infringement, they

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1  act as though the limitations do not exist.  The SAC alleges that "Defendants employed the

2  Plaintiffs' patented technology to produce a three-dimensional image of Michael Jackson

3  during the international television broadcast of the Billboard Music Awards."  SAC ¶ 3.

4  Plaintiffs allege that a true and correct "rendition" of the apparatus is shown in Exhibit E to

5  the SAC.  *See id.* ¶ 43.  Exhibit E contains the following diagram of the accused apparatus:



16      Plaintiffs' suggestion that this schematic "confirms that [Defendants] used the

17  Plaintiffs' patented technology" (SAC ¶ 43) is baffling.  This schematic clearly shows that

18  the accused apparatus did <u>not</u> project the image of Michael Jackson on to a reflecting

19  surface on the floor of the stage, as required to infringe the '519 patent.  Instead, like the

20  Rogers and Beaver references discussed above, the image of Jackson was projected

21  through a screen arranged in the <u>ceiling</u> of the apparatus.  The schematic also clearly

22  shows that the foil on which the image was viewed was not angled "forwardly" toward the

23  audience, as required to infringe the '519 patent.  Instead, as in each of the Rogers, Beaver,

24  and Lekowski prior art references, it was angled <u>backward</u> away from the audience.

25      Indisputably, the '519 patent was not infringed, and for the reasons discussed

26  below, the lack of infringement can and should be resolved by motion to dismiss.

27

28

III.   **ARGUMENT**

A.   **Legal Standards For Patent Infringement**

Determining patent infringement is a two-step process:

First, the court construes the patent's claims to ascertain their meaning and scope. Claim construction is a "purely legal question" reserved to the Court, which can be conducted at any stage of the case. *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1451 (Fed. Cir. 1998) (en banc); *Markman v. Westview Instruments, Inc.,* 517 U.S. 370 (1996); *Conoco, Inc. v. Energy & Entl. Int'l, L.C.*, 460 F.3d 149, 1359 (Fed. Cir. 2006) ("district court may engage in claim construction during various phases of the litigation, not just in a *Markman* order"). Courts strive to construe claim terms consistent with "their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc), quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). If an ambiguity exists, courts look "first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics*, 90 F.3d at 1582.

Second, after the claims of the patent are construed, the claims are compared to the allegedly infringing apparatus. *Dawn Equip. Co. v. Kentucky Farms Inc*., 140 F.3d 1009, 1014 (Fed. Cir. 1998). To prove infringement of a patent, "a patentee must supply sufficient evidence to prove that the accused product or process meets <u>every</u> element or limitation of a claim." *Rohm & Haas Co. v. Brotech Co.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997) (emphasis added). "<u>If even one limitation</u> is missing or not met as claimed, there is no literal infringement." *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) (emphasis added).

B.   **Patent Infringement Can Be Decided On The Pleadings**

In adjudicating a motion to dismiss for lack of infringement, the Court "must assess whether the complaint 'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). <u>But</u>, "material

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   which is properly submitted as part of the complaint may be considered on a motion to

2   dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 (9th

3   Cir. 1989). Courts may also consider "matters of which a court may take judicial notice"

4   when ruling on a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.

5   308, 322 (2007).

6        In the copyright context, courts routinely find a lack of substantial similarity on a

7   Rule 12(b)(6) motion to dismiss. *See Christianson v. West Publ'g. Co.*, 149 F.2d 202, 203

8   (9th Cir. 1945) ("[W]hen the copyrighted work and the alleged infringement are both

9   before the court, capable of examination and comparison, non-infringement can be

10  determined on a motion to dismiss."); *Wild v. NBC Universal, Inc.,* 788 F. Supp. 2d 1083,

11  1110 (C.D. Cal. 2011); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1130 (C.D. Cal.

12  2007) ("For fifty years, courts have followed this rather obvious principle and dismissed

13  copyright claims that fail from the face of the complaint (and in light of all matters

14  properly considered on a motion to dismiss)."). In such cases, courts can consider

15  "exhibits submitted with the complaint" in finding a lack of infringement. *Zella*, 529 F.

16  Supp. 2d at 1127. Courts can also base a dismissal on "documents which are not

17  physically attached to the complaint but 'whose contents are alleged in [the] complaint and

18  whose authenticity no party questions,'" as well as "matters subject to judicial notice." *Id.*

19  at 1128.

20       In *Christianson*, *Wild*, and *Zella*, the courts refused to accept conclusory allegations

21  that the copyrighted and accused works were substantially similar because documents

22  which were submitted with the complaint and/or documents that could be judicially

23  noticed demonstrated otherwise. The same occurs in patent infringement cases. Patent

24  infringement can be decided at the pleading stage where the pleading submits documents

25  which demonstrate non-infringement as a matter of law. *See In re Bill of Lading*

26  *Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012).

27       In *Bill of Lading*, the Federal Circuit affirmed a district court's decision dismissing

28  a claim for contributory patent infringement on a Rule 12(b)(6) motion to dismiss. 681

1  F.3d at 1337. The Federal Circuit held that the district court's task on a motion to dismiss

2  was to "analyze the facts pled in the amended complaints <u>and all documents attached</u>

3  <u>thereto</u> with reference to the elements of a cause of action for contributory infringement to

4  determine whether [plaintiff's] claims of contributory infringement were in fact plausible."

5  *Id.* (emphasis added). "To state a claim for contributory infringement," the Court noted, "a

6  plaintiff must, among other things, plead facts that allow an inference that the components

7  sold or offered for sale have no substantial non-infringing uses." *Id.* The district court

8  held that "the amended complaints failed to state a claim for contributory infringement

9  because the facts alleged demonstrated that the Appellee's products <u>do</u> have substantial

10  non-infringing uses." *Id.* (emphasis in original). The Federal Circuit agreed, stating:

> The materials regarding Appellees' products from which [plaintiff] quotes,
> and, which are attached to the amended complaints, contain repeated
> descriptions of non-infringing uses to which the accused products can be put.
> [Plaintiff], thus, supplies the very facts which defeat its claims of
> contributory infringement.

16  *Id.* at 1338.

17       Here, as in *Bill of Lading*, Plaintiffs' claims for infringement of the '519 patent fail

18  on the face of the SAC. The pleading attaches and incorporates by reference a schematic

19  illustrating the apparatus that Plaintiffs accuse of infringement. As discussed more below,

20  the schematic shows that the accused apparatus does not meet key limitations of the claims

21  of the '519 patent. Plaintiffs "supply the very facts" which defeat their claims for

22  infringement of the '519 patent, and the claims should be dismissed.

23       **C.    The Accused Apparatus Does Not Literally Infringe The '519 Patent**

24       To infringe the '519 patent, the accused apparatus must meet each and every

25  limitation of claim 1 (the only independent claim). At least two limitations are plainly

26  absent from the accused apparatus shown in Exhibit E to the SAC:

27

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850



First, the accused apparatus does not satisfy the patent's requirement concerning the angling of the transparent foil.  The '519 patent requires that "a transparent smooth foil (20) extends between said floor (30) and said ceiling (32) at a position which is disposed further forwardly."  That is, the foil's position at the ceiling is forward of its position at the floor, so that it is angled forward toward the audience.  This limitation is plainly missing from the accused apparatus.  As shown above in Exhibit E to the SAC, the Billboard Awards apparatus used a transparent surface that was angled <u>backward</u> away from the audience.

Second, the accused apparatus does not meet the '519 patent's requirements that a "reflecting surface (18) is arranged on said floor (30) of said stage (28)," and that the "image source" be "directed on to the reflecting surface (18)."  Plaintiffs have asserted that this limitation is met by the "rear-projection screen" shown in Exhibit E to the SAC. Obviously, however, that screen is not on the floor, as the '519 patent claims require.  It is suspended above the apparatus, acting like a <u>ceiling</u>.[4]

_____

[4] The rear projection screen shown in Exhibit E to the SAC does not meet the requirement of a "reflecting surface."  Rear projection screens are used to transmit light, not reflect it.  Nevertheless, because Plaintiffs have proffered a construction of "reflecting surface" which they contend encompasses transmissive rear-projection screens, Defendants focus this Motion on the other limitations described above, as to which there is no claim construction dispute.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   Simply put, the Billboard Awards apparatus used a different, non-infringing method

2   for creating a Pepper's Ghost illusion.  Because the two limitations described above

3   (among others) were not met by the accused apparatus, claim 1 is not infringed, *Rohm &*

4   *Haas Co.*, 127 F.3d at 1092, and each of the remaining dependent claims was not

5   infringed.  *See Jeneric/Pentron, Inc. v. Dillon Co., Inc*., 205 F.3d 1377, 1383 (Fed. Cir.

6   2000) ("'dependent claims cannot be found infringed unless the claims from which they

7   depend have been found to have been infringed'") (citation omitted).

8   **D.   As A Matter Of Law, The Accused Apparatus Cannot Be Held**

9   **Infringing Under The Doctrine Of Equivalents**

10   In opposition to Defendants' prior motion to dismiss the FAC's claims for

11   infringement of the '519 patent, Plaintiffs argued that the Billboard Awards apparatus

12   infringes under the doctrine of equivalents.  "Under the doctrine of equivalents, 'a product

13   or process that does not literally infringe upon the express terms of a patent claim may

14   nonetheless be found to infringe if there is 'equivalence' between the elements of the

15   accused product or process and the claimed elements of the patented invention.'"

16   *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1357 (Fed. Cir. 2005),

17   quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997).

18   Plaintiffs' position is that under the doctrine of equivalents, a transmissive screen in the

19   ceiling of a stage is equivalent to a reflecting screen on the floor of the stage, and a

20   backward angled foil is equivalent to a forward angled foil.  As discussed in detail below,

21   Plaintiffs' equivalence argument fails as a matter of law because (1) it vitiates the

22   limitations of the '519 patent in violation of the Federal Circuit's "all elements rule," (2) it

23   causes the '519 patent to "read on" the prior art, and (3) it impermissibly suggests

24   infringement where, as here, Defendants were merely practicing the prior art.

25   **1.   The Doctrine of Equivalents Cannot Be Invoked To Vitiate**

26   **The Limitations Of A Patent Claim**

27   The Federal Circuit has "two articulations of the test for equivalence."  *Voda v.*

28   *Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008).  "Under the insubstantial differences

Kinsella Weitzman Iser Kump & Aldisert LLP
808 Wilshire Boulevard, 3ʳᴰ Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1   test, '[a]n element in the accused device is equivalent to a claim limitation if the only

2   differences between the two are insubstantial.'" *Id.*, quoting *Honeywell Int'l Inc. v.*

3   *Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004).  "Alternatively, under

4   the function-way-result test, an element in the accused device is equivalent to a claim

5   limitation if it 'performs substantially the same function in substantially the same way to

6   obtain substantially the same result.'" *Id.*, quoting *Schoell v. Regal Marine Indus., Inc.*,

7   247 F.3d 1202, 1209-1210 (Fed. Cir. 2001).

8         There is an inherent risk in allowing patentees to allege infringement for

9   apparatuses that are not covered by the literal language of a patent but are alleged to be

10  substantially similar to the claimed invention.  The doctrine of equivalents could be used

11  by patentees to effectively re-write their patent claims, and to stake out broader protection

12  than they sought, obtained, or could have obtained in the first instance before the USPTO.

13  Expressing such a concern that the doctrine had "taken on a life of its own, unbounded by

14  the patent claims," the Supreme Court in *Warner-Jenkinson* established  the "all elements

15  rule" or "all limitations rule."   520 U.S. at 1048-1049.  The rule has two aspects.

16  *Freedman*, 420 F.3d at 1358.  "First, the all limitations rule requires that equivalence be

17  assessed on a limitation-by-limitation basis, as opposed to from the perspective of the

18  invention as a whole." *Id.*  "Second, an element of an accused product or process is not, as

19  a matter of law, equivalent to a limitation of the claimed invention if such a finding would

20  entirely vitiate the limitation."  *Id*, citing *Warner-Jenkinson*, 520 U.S. at 29; *see also*

21  *Carnegie Mellon Univ. v. Hoffman-La Roche Inc.,* 541 F.3d 1115, 1129 (Fed. Cir. 2008)

22  ("[T]he 'all limitations rule' restricts the doctrine of equivalents by preventing its

23  application when doing so would vitiate a claim limitation."); *Novartis Pharm. Corp. v.*

24  *Abbott Labs.*, 375 F.3d 1328, 1339 (Fed. Cir. 2004) ("When the substitution of one feature,

25  however, for another into an element of the accused product places it outside the scope of

26  the recited claim element, the doctrine of equivalents may not be applied.").

27        There are clear circumstances in which the all elements rule applies to preclude

28  infringement under the doctrine of equivalents.  If a claim limitation is drafted narrowly to

1   cover a specific iteration of a feature, the patent cannot be construed to cover other types

2   of the same feature that were impliedly excluded.  For example, in *Carnegie Mellon*, an

3   asserted claim in a patent required the use of a "bacterial source" and specified that "the

4   'bacterial source [is] *E. coli*.'"  541 F.3d at 1129.  The plaintiff argued that another bacteria

5   called "*Taq*" was an equivalent.  *Id.*  The Federal Circuit affirmed the district court's

6   finding that this argument "would essentially render the 'bacterial source [is] *E. coli*' claim

7   limitation meaningless, and would thus vitiate that limitation of the claims."  *Id.*; *see also*

8   *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998) (regarding a claim limitation

9   requiring a "'generally conical outer surface,'" rejecting that "<u>any</u> shape would be

10  equivalent to the conical limitation" because the argument "would write the 'generally

11  conical outer surface' limitation out of the claims").

12      The all elements rule also clearly applies where a patentee claims equivalence

13  between features in the accused and in the patent which are the "antithesis" of each other.

14  For example, in *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091 (Fed. Cir.

15  2000), the patent contained a limitation requiring an adhesive to extend the "majority of

16  the lengths" between two margins.  *Id.* at 1105-1106.  In the accused product, the adhesive

17  extended only "'about 48%'" of the length.  *Id.* at 1106.  The patentee argued that 48%

18  was "insubstantially different" from 50.001% (*i.e.*, a majority).  *Id.*  Even though the

19  distinction might seem trivial at first blush, the district court and Federal Circuit disagreed.

20  The Federal Circuit explained:

21      [T]he applicant's use of the term "majority" is not entitled to a scope of

22      equivalents covering a minority for at least two reasons.  First, to allow what

23      is undisputedly a minority (*i.e.*, 47.8%) to be equivalent to a majority would

24      vitiate the requirement that the ' . . . adhesive . . . extend the majority of the

25      lengths . . . .'" If a minority could be equivalent to a majority, this limitation

26      would hardly be necessary . . . . Second, it would defy logic to conclude that

27      a minority—the very antithesis of a majority—could be insubstantially

28      different from a claim limitation requiring a majority . . . .

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1   *Id.* at 1106.

2        Similarly, in *Planet Bingo, LLC v. GameTech Intern., Inc.*, 472 F.3d 1338 (2006),

3   the asserted patent covered a "method of playing a game of bingo" in which a winning

4   combination of numbers was "predetermined." *Id.* at 1341-1342. "The district court

5   determined that GameTech did not infringe either literally or under the doctrine of

6   equivalents because the accused device does not determine the winning combination until

7   <u>after</u> the first bingo ball is drawn . . . ." *Id.* at 1343 (emphasis added). The patentee argued

8   that the doctrine of equivalents should apply because the defendant's game "incorporates

9   only an insubstantial variation" in which the "predetermined winning combination appears

10  right after, rather than right before, the first bingo ball is drawn." *Id.* at 1344. The district

11  court and Federal Circuit disagreed. The Federal Circuit noted that the all elements rule

12  can apply to "small variations" and stated:

13        In this case, the proposed application of the doctrine of equivalents would

14        change 'before' to 'after,' a more marked difference. This court has refused

15        to apply the doctrine in other cases where the accused device contained the

16        antithesis of the claimed structure.

17  *Id.* at 1345.

18        In *Asyst Tech., Inc. v. Emtrak, Inc.*, 402 F.3d 1188 (Fed. Cir. 2005), the Federal

19  Circuit held that a claim limitation requiring a feature to be "mounted" was "binary in

20  nature"—"[t]hat is, the [feature] must be either mounted or unmounted." *Id.* at 1195. As a

21  result, "[t]o hold that 'unmounted' is equivalent to 'mounted' would effectively read the

22  'mounted on' limitation out of the patent." *Id.* Stated another way, "the term 'mounted'

23  can fairly be said to specifically exclude objects that are 'unmounted.'" *Id.*

24        ## 2.   Plaintiffs' Argument Violates The All Elements Rule

25        Plaintiffs' equivalence argument violates the all elements rule and must be rejected.

26  To infringe the '519 patent, the accused apparatus must utilize "a reflecting surface . . .

27  arranged on said floor . . . of said stage . . . in the central region thereof," with the image

28  being "directed on to the reflecting surface." The Billboard Awards apparatus did not use

10386.00247/245157.4

17

Kinsella Weitzman Iser Kump & Aldisert LLP
808 Wilshire Boulevard, 3ʳᴰ Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1  this feature.  Instead, the accused apparatus projected the image of Michael Jackson

2  through a rear projection screen suspended from the ceiling.  Even assuming (incorrectly)

3  that the rear projection screen in the Billboard Awards apparatus was a reflecting surface,

4  "ceiling" and "floor" are the antithesis of each other.  The latter cannot be construed to

5  cover the former.  To find that the requirement of a reflecting surface on the floor was

6  satisfied by a projection screen in the ceiling would vitiate the claim limitation altogether.

7  *See Warner-Jenkinson*, 520 U.S. at 29 ("It is important to ensure that the application of the

8  doctrine [of equivalents], even as to an individual element, is not allowed such broad play

9  as to effectively eliminate the element in its entirety.").

10      Likewise, to infringe the '519 patent, the accused apparatus must use a transparent

11  foil that "extends between said floor . . . and said ceiling . . . at a position which is disposed

12  further forwardly."  That is, the foil's placement at the ceiling must be forward of its

13  placement at the floor, such that the foil is angled forward toward the audience.  *See also*

14  '519 patent, Fig. 2.  The doctrine of equivalents cannot be used to expand this claim

15  limitation to cover a foil that is angled <u>backward</u> away from the audience, as in the

16  Billboard Awards apparatus.  This feature of the accused apparatus is the <u>antithesis</u> of the

17  '519 patent's claim limitation.  To find infringement under the doctrine of equivalents

18  would vitiate this claim limitation as well.  *Asyst*, 402 F.3d at 1195 ("[T]he doctrine of

19  equivalents does not apply if applying the doctrine would vitiate an entire claim

20  limitation").

21      In opposing Defendants' prior motion, Plaintiffs called the differences between the

22  accused apparatus and '519 patent "unimportant and insubstantial."  Not at all.  Plaintiffs

23  did not invent Pepper's Ghost, nor the use of projectors, mirrors, reflecting surfaces, and

24  plastic foils in a Pepper's Ghost illusion.  Plaintiffs only obtained patent protection for a

25  narrow, specific configuration of these components; and the Billboard Awards apparatus

26  did not use that configuration or anything like it.

27      This case epitomizes the concerns that the Supreme Court expressed in *Warner-*

28  *Jenkinson*—patentees using the doctrine of equivalents to claim widespread rights

10386.00247/245157.4

18

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3RD Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1   "unbounded by the patent claims."  Although the claims of the '519 patent require a

2   reflecting surface on the floor, Plaintiffs ask this Court to hold that the surface can be

3   located anywhere (and not even be reflective).  Although the claims of the '519 patent

4   require that the foil be angled forward, Plaintiffs ask this Court to hold that the foil could

5   be angled backward (or not at all).  Plaintiffs placed limitations on their claimed invention

6   in order to induce the USPTO to issue a patent, but now, according to Plaintiffs, all of

7   those limitations are "unimportant."

8          The all elements rule forbids this duplicity.  The "distinct limitations" contained in

9   the '519 patent's claims were "part of the bargain when the patent issued."  *Planet Bingo*,

10  472 F.3d at 1344.  If Plaintiffs desired and believed they were entitled to broader patent

11  protection, they could have drafted claims which omitted the requirement that a reflecting

12  surface be on the floor, and that the foil be angled forward.  *Cf. Sage Products*, 126 F.3d at

13  1425 ("If Sage desired broad patent protection for any container that performed a function

14  similar to its claimed container, it could have sought claims with fewer structural

15  encumbrances.").  They did not do so and cannot now use the doctrine of equivalents to

16  "recapture . . . subject matter excluded by a deliberate and foreseeable claim drafting

17  decision."  *Id.*

18          **3.      Plaintiffs' Equivalence Argument Impermissibly Expands**

19          **The Scope Of The '519 Patent To Cover The Prior Art**

20          A second, independent basis exists for rejecting Plaintiffs' equivalence argument as

21  a matter of law.  If the Court accepts the argument that the '519 patent can be infringed by

22  an apparatus without a reflecting surface on the floor and without a forward angled foil,

23  then the patent is indistinguishable from the prior art and is invalid.

24          It is a fundamental principle of patent law that "the doctrine of equivalents cannot

25  allow a patent to encompass subject matter existing in the prior art."  *K-2 Corp. v. Salomon*

26  *S.A.*, 191 F.3d 1356, 1367 (Fed. Cir 1999).  "[A] patentee should not be able to obtain,

27  under the doctrine of equivalents, coverage which he could not lawfully have obtained

28  from the PTO by literal claims."  *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*,

10386.00247/245157.4

19

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   904 F.2d 677, 684 (Fed. Cir. 1990).  "The doctrine of equivalents exists to prevent a fraud

2   on a patent, [citation omitted], not to give a patentee something which he could not

3   lawfully have obtained from the PTO had he tried."  *Id.*

4          The Federal Circuit uses a "hypothetical claim methodology" to aid in determining

5   whether the assertion of infringement under the doctrine of equivalents impermissibly

6   causes the patent to encompass prior art.  *See Streamfeeder, LLC v. Sure-Feed Sys., Inc.*,

7   175 F.3d 974, 981 (Fed. Cir. 1999).  Under this methodology, the Court considers a

8   "hypothetical claim which is broad enough in scope to <u>literally</u> read on the accused

9   device."  *Id.* (emphasis in original).  If this hypothetical claim would <u>not</u> have been

10  patentable—either because it would have been anticipated by a single prior art reference or

11  rendered obvious by references in combination—then the doctrine of equivalents cannot be

12  invoked to find infringement.  *Id.* at 982; *see also Wilson*, 904 F.2d at 684-685.  Otherwise,

13  the doctrine of equivalents will have granted plaintiff protection for something that was not

14  patentable in the first place.

15         Here, the "hypothetical claim" resulting from Plaintiffs' equivalence argument lacks

16  the limitations requiring that the reflecting surface be on the floor and that the foil be

17  angled forward.  In that case, <u>any</u> apparatus which uses a projector to direct an image onto

18  a reflecting surface and thereafter onto a reflective foil would be infringing.  Clearly, the

19  apparatus from the Lekowski patent, which is prior art to the '519 patent, would be

20  covered by that hypothetical claim:

21

22

23

24  

25

26

27

28

As shown in Figure 2 from Lekowski above, that apparatus uses a projector (46) to direct an image onto a reflecting surface (54) and then onto a foil (44) which extends between the floor of the stage and ceiling.  Under Plaintiffs' doctrine of equivalents argument, the claims of the '519 patent are indistinguishable from the Lekowski patent.

The same is true of the Rogers and Beaver prior art patents if the Court accepts Plaintiffs' construction of the term "reflecting surface."  Plaintiffs contend that the rear projection screen suspended in the ceiling of the Billboard Awards apparatus is a "reflecting surface" within the meaning of the '519 patent.  Defendants contest that construction, but if it is accepted as true, then the '519 patent is no different from Rogers and Beaver.  As shown in the figures from Rogers and Beaver below, they both use projectors in the ceiling which project an image through a rear projection screen, onto a surface that reflects the image so as to create a virtual image appearing in the background of the stage:



FIG. 2



FIG. 4

Here too, Rogers and Beaver disclose everything in the '519 patent if, as Plaintiffs argue, we can dispense with the requirements that the reflecting surface be on the floor and that the foil be angled forward.[5]

---

[5] Admittedly, Rogers and Beaver did not teach to use a plastic foil like Mylar, but that is of no moment because Lekowski taught this before the '519 patent.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Kinsella Weitzman Iser Kump & Aldisert LLP
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1    In sum, when the claims of the '519 patent are expanded under Plaintiffs' doctrine

2  of equivalents argument, they become indistinguishable from what was already disclosed

3  in Lekowski, Rogers, and Beaver.  Plaintiffs' doctrine of equivalents argument in effect

4  deletes two of the key limitations of the '519 patent's claims which had to be drafted into

5  the claims to try to distinguish them from the prior art.  Plaintiffs are trying to use the

6  doctrine of equivalents to obtain a scope of protection that they neither sought nor could

7  have received from the USPTO.  As a matter of law, therefore, the doctrine of equivalents

8  argument fails.

### 4.    The Doctrine Of Equivalents Cannot Apply When The Defendant Is Merely Practicing The Prior Art

11    A third basis compels the rejection of Plaintiffs' equivalence argument.  It is an

12  established principle of patent law that "practicing the prior art" is a "complete defense" to

13  infringement under the doctrine of equivalents.  *Sextant Avionique, S.A. v. Analog Devices,*

14  *Inc.*, 172 F.3d 817, 827 (Fed. Cir. 1999); *see also C.R. Bard, Inc. v. U.S. Surgical Corp.*,

15  107 F. Supp. 2d 489, 493 (D. Del. 2000) (noting that accused infringers are "free to

16  practice technology disclosed in the prior art").  That defense plainly applies here.  As

17  shown in the side-by-side images below, the accused apparatus from the Billboard Awards

18  show was comparable to the apparatus disclosed by Beaver:

 

26    Both apparatuses create a Pepper's Ghost illusion on a stage.  Both do so using a

27  projector which projects the image through a rear projection screen suspended in the

28  ceiling.  In both apparatuses, a backward angled surface reflects the image toward the

1   audience.  And in both cases, the reflected image appears as a virtual image in the

2   background.

3          Manifestly, Defendants were not using Plaintiffs' purported technology.  They were

4   using a prior art method for creating a Pepper's Ghost illusion that was known years before

5   the '519 patent (and which, notably, was in the public domain).  The doctrine of

6   equivalents cannot apply to cover an apparatus that was practicing the prior art, and for this

7   additional reason, Plaintiffs' infringement claim fails as a matter of law.

8   **IV.    CONCLUSION**

9          For the reasons set forth herein, Defendants respectfully request that the Court grant

10  this motion and order the following claims dismissed with prejudice and without leave to

11  amend: the First Claim for Relief for Infringement of the '519 patent and the Third through

12  Sixth Claims for Relief insofar as they relate to any alleged infringement of the '519

13  patent.

14  Dated: March 13, 2015                  KINSELLA WEITZMAN ISER
                                                KUMP & ALDISERT LLP
15

16

17                                      By:  /s/ Gregory Korn
                                            Gregory Korn
18                                          Attorneys for Defendants John Branca and
                                            John McClain, in Their Capacity as Co-
19                                          Executors of the Estate of Michael J. Jackson,
                                            deceased, MJJ Productions, Inc., and dick
20                                          clark productions, inc.

21  Dated: March 13, 2015                  LAVELY & SINGER P.C.

22

23                                      By:  /s/ Todd Eagan
24                                          Todd Eagan
                                            Attorneys for Defendants Pulse Evolution
25                                          Corporation, Pulse Entertainment
                                            Corporation, John Textor and William James
26                                          Rock

27

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

10386.00247/245157.4

23

## CERTIFICATE OF SERVICE

The undersigned, counsel of record for Defendants John Branca and John McClain, in Their Capacity as Co-Executors of the Estate of Michael J. Jackson, deceased, MJJ Productions, Inc., and dick clark productions, inc., hereby certifies that on the 13th day of March, 2015, I caused a copy of the foregoing motion to dismiss to be served electronically to counsel of record for all parties who have appeared in this action through the Court's CM/ECF system (as all such counsel appear to be registered CM/ECF users).


By:  /s/ Michael N. Feder
     Michael N. Feder

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850