# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

HOLOGRAM USA, INC., *et al.*,           )
                                        )
                    Plaintiffs,         )           Case No.: 2:14-cv-0772-GMN-NJK
        vs.                             )
                                        )           **ORDER**
PULSE EVOLUTION CORPORATION, *et*       )
*al.*,                                  )
                                        )
                    Defendants.         )
_____ )

Pending before the Court is the Partial Motion for Summary Judgment on Non-Infringement, (ECF No. 362), filed by Defendants/Counterclaimants Ian Christopher O'Connell, Musion 3D Ltd., and Musion Events Ltd. ("UK Defendants"). Plaintiffs Hologram USA, Inc., Uwe Maass, and MDH Hologram Limited ("Plaintiffs") filed a Response, (ECF No. 378), and UK Defendants filed a Reply, (ECF No. 393).

Also pending before the Court is UK Defendants' Partial Motion for Summary Judgment on Non-Infringement Based on the Doctrine of Equivalents, (ECF No. 376). Plaintiffs filed a Response, (ECF No. 398), and UK Defendants filed a Reply, (ECF No. 405).[1]

## I.     **BACKGROUND**

This case centers upon allegations that UK Defendants have infringed several of Plaintiffs' patents. In their Second Amended Complaint ("SAC"), Plaintiffs claim that they obtained the exclusive rights to patented technology that creates three-dimensional images which are virtually indistinguishable from real performers ("hologram technology") in

---

[1] Plaintiffs also filed a Motion, (ECF No. 421), requesting leave to file supplemental oppositions to both Motions. The Court GRANTS this Motion for good cause appearing.

February 2014. (SAC ¶¶ 2, 10, ECF No. 188).

Plaintiffs allege that UK Defendants offer to sell and have sold an infringing device, the Musion Eyeliner holographic projection systems ("Eyeliner Systems"), into the United States. (*See e.g.*, *id.* ¶ 2); (Ex. O to Pls.' Mot. Compel at 3, ECF No. 306-5).  Based on these allegations, the SAC states that UK Defendants directly and indirectly infringed three separate patents belonging to Plaintiffs: U.S. Patent Nos. 5,865,519 ("the '519 patent"); 7,883,212 ("the '212 patent"); and 8,328,361 ("the '361 patent) (collectively "the Asserted Patents"). (*Id.* ¶¶ 59-80).  The SAC also sets forth claims for willful infringement, active inducement, contributory infringement, injunctive relief, intentional interference with prospective economic advantage, breach of fiduciary duty, false advertising, and unfair competition. (*Id.* ¶¶ 81-136).

In the instant Motions, UK Defendants seek summary judgment on Plaintiffs' claims of infringement.

## II.    LEGAL STANDARD

### A.    Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported

1   claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

2          In determining summary judgment, a court applies a burden-shifting analysis.  "When

3   the party moving for summary judgment would bear the burden of proof at trial, it must come

4   forward with evidence which would entitle it to a directed verdict if the evidence went

5   uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing

6   the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

7   *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In

8   contrast, when the nonmoving party bears the burden of proving the claim or defense, the

9   moving party can meet its burden in two ways: (1) by presenting evidence to negate an

10  essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

11  party failed to make a showing sufficient to establish an element essential to that party's case

12  on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–

13  24.  If the moving party fails to meet its initial burden, summary judgment must be denied and

14  the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*,

15  398 U.S. 144, 159–60 (1970).

16         If the moving party satisfies its initial burden, the burden then shifts to the opposing

17  party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*

18  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute,

19  the opposing party need not establish a material issue of fact conclusively in its favor.  It is

20  sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

21  parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

22  *Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid

23  summary judgment by relying solely on conclusory allegations that are unsupported by factual

24  data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go

25  beyond the assertions and allegations of the pleadings and set forth specific facts by producing

competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### B.   Patent Infringement Principles

While claim construction is a question of law, infringement is a question of fact. *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1357 (Fed. Cir. 2005). "Thus, summary judgment of non-infringement can only be granted if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

"There are two types of infringement: literal infringement . . . and infringement under the doctrine of equivalents." *Pozen Inc. v. Par Pharm., Inc.*, 696 F.3d 1151, 1167 (Fed. Cir. 2012). "To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). Alternatively, "[t]o find infringement under the doctrine of equivalents, any differences between the claimed invention and the accused product must be insubstantial." *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1346–47 (Fed. Cir. 2013) (citing *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608 (1950)). "One way of proving infringement under the doctrine of equivalents is to show, for each claim limitation, that the accused product 'performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product.'" *Id.* at 1347 (quoting *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312

(Fed. Cir. 2009)).

Broad application of the doctrine of equivalents is limited, however, by prosecution history estoppel. *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1363 (Fed. Cir. 2006).  It does so "by barring an equivalents argument for subject matter relinquished when a patent claim is narrowed during prosecution." *Id.* (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733–34 (2002)).  The Federal Circuit has recognized two types of prosecution history estoppel: (1) amendment-based estoppel, which occurs when the patentee makes "a narrowing amendment to the claim," and (2) argument-based estoppel, which occurs when the patentee "surrender[s] claim scope through argument to the patent examiner." *Id.* (citing *Deering Precision Instruments, LLC v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003)).

As to amendment-based estoppel, "[w]hen a patentee makes a narrowing amendment to a claim, the patent holder has the burden to demonstrate that the reason for the amendment was unrelated to patentability (e.g., to avoid prior art)." *Id.* (citing *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 33 (1997)).  "When the record lacks explanation for the amendment, [courts] presume that the PTO had a substantial reason related to patentability for including the limiting element added by amendment." *Id.*  The presumption is rebuttable. *See id.* at 1363–64.

Regarding argument-based estoppel, the party invoking that doctrine must show "a clear and unmistakable surrender of subject matter." *Id.* at 1364 (quoting *Deering*, 347 F.3d at 1326). Unlike with amendment-based estoppel, no presumption of surrender applies. *Id.* "The relevant inquiry is whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." *Id.* (quoting *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998) (en banc)). Whether amendment-based or argument-based estoppel is invoked, "[p]rosecution history estoppel is a legal question . . . ." *Cybor Corp.*, 138 F.3d at 1460.

III.    **DISCUSSION**

UK Defendants' two Motions seek partial summary judgement of non-infringement on different grounds.  In their First Motion, UK Defendants contend that summary judgment is appropriate on Plaintiffs claims that UK Defendants infringe the Asserted Patents through: (1) direct infringement; (2) indirect contributory infringement; and (3) indirect induced infringement. (Defs.' First Mot. Summ. J. ("First MSJ") 3:3–19, ECF No. 362).  The second Motion seeks summary judgment on Plaintiffs' claims of infringement through the doctrine of equivalents. (*See* Defs.' Second Mot. Summ. J. ("Second MSJ") 2:1–9, ECF No. 376).  The Court considers each Motion in turn.

    A.    **First MSJ (ECF No. 362)**

        1.    *Direct Infringement*

UK Defendants argue that Plaintiffs' claims of infringement fail "because the apparatuses identified in the infringement contentions were all sourced, constructed, and used outside of the United States." (First MSJ 7:1–3).  A person who, without a license, "makes, uses, offers to sell, or sells any patented invention within the United States or imports into the United States" is liable for direct patent infringement. 35 U.S.C. § 271(a).  Direct infringement liability is therefore "limited to infringing activities that occur within the United States." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1375 (Fed. Cir. 2005).

Plaintiffs argue in their Supplemental Response that new discovery conducted after UK Defendants filed the instant Motions has revealed five embodiments of the accused Eyeliner System that were sold to customers in the United States and installed in the United States, including:

> (1) an Eyeliner System in a Reverse Setup with Mirror configuration for Artistry in Motion Holographic, Inc.'s ("AIM") Demonstration Suite in West Palm Beach, Florida on or about November 2015;

> (2) an Eyeliner System in a Reverse Setup with Mirror configuration for Fisher Price in East Aurora, New York on or about August 2014;
>
> (3) an Eyeliner System in a Reverse Setup with Mirror configuration for Media Stage at the 2015 Emerge Americas Conference in Miami, Florida on or about May 2015;
>
> (4) an Eyeliner System in a Reverse Setup configuration for 3LINKS Technologies in Washington on or about September 2014; and
>
> (5) an Eyeliner System in a Front Setup configuration for Louis Vuitton located in Los Angeles on or about February 2015 [(the "Louis Vuitton System")].

(Supp. Resp. First MSJ 3:11–20, ECF No. 421-1).

UK Defendants do not dispute that these systems satisfy the "within the United States" requirement of § 271(a). Instead, UK Defendants assert that the first four Eyeliner Systems practice a "Reverse Setup" configuration disclosed in a separate patent licensed by UK Defendants, U.S. Patent No. 6,783,247 ("'247 Patent"). (Resp. to Mot. Leave 2:12–3:3, ECF No. 427). On this point, UK Defendants provide a picture associating various elements from claim 1 of the '519 Patent with certain features of figure 10 in the '247 Patent with the words "not equal." (*Id.* 2:16–26).

However, it is non sequitur to assert that simply because a product practices one patent, it necessarily does not infringe another. Such a logical fallacy provides no insight on whether or not the accused systems are also encompassed by the asserted patents. *See Pitney Bowes*, 182 F.3d at 1304 ("[S]ummary judgment of non-infringement can only be granted if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims."); *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1573 (Fed. Cir. 1985) ("[C]omparison of a properly interpreted claim with a stipulated or uncontested description of an accused device or process would reflect such an

absence of material fact issue as to warrant summary judgment of infringement or noninfringement.").  The Court therefore concludes that a genuine dispute of material fact remains as to whether UK Defendant's Eyeliner Systems practiced in the United States infringe the Asserted Patents and DENIES summary judgment on the basis of direct infringement.[2]

## 2.    *Indirect Infringement: Contributory Infringement*

UK Defendants next argue that summary judgment is proper on Plaintiffs' claims of contributory noninfringement for UK Defendants' offering for sale or importing biaxially-oriented polyethylene terephthalate ("BoPET") mylar foil. (First MSJ 6:7–15).

Section 271(c) defines "contributory infringement" as acts that include the sale or importation into the United States of a non-staple article of commerce that is a "component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process," where the non-staple article constitutes a "material part of the invention" and is known to be made or adapted for the purpose of infringing, within the United States, a patented product or process.  Contributory infringement refers to the "core notion that one who sells a component especially designed for use in a patented invention may be liable as a contributory infringer, provided that the component is not a staple article of commerce suitable for substantial noninfringing use." *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008).  "In order to succeed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that defendant knew that the combination for which its components were especially made was both patented and

---

[2] Regarding the fifth Eyeliner System named by Plaintiffs, UK Defendants argue that Plaintiffs granted O'Connell and MEL a "perpetual irrevocable exclusive sub-licensable license [(the "Eyeliner Agreement")] . . . in any place in the world" to exploit the Louis Vuitton System. (Resp. to Mot. for Leave to File 3:12–4:1) (emphasis removed).  Plaintiffs assert that Maass terminated the Eyeliner Agreement in April 2013. (Reply to Mot. for Leave to File 5:10–11, ECF No. 428).  Although Plaintiffs fail to support this contention with any facts in the record, Plaintiffs have at least demonstrated that UK Defendants practiced four other allegedly infringing embodiments of the Asserted Patents in the United States.  Plaintiffs thus need not prove termination of the Eyeliner Agreement to overcome the instant Motion for Summary Judgment.

infringing and that defendant's components have no substantial non-infringing uses." *Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009).

UK Defendants assert that Plaintiffs cannot prove contributory infringement because "(1) Plaintiffs' infringement contentions fail to identify any direct infringer in the United States using such foil in an infringing apparatus, and alternatively, (2) BoPET mylar foil is suitable for many substantial non-infringing uses." (First MSJ 9:24–26). As discussed above, UK Defendants' first argument is moot in light of new discovery.

Turning to their second argument, UK Defendants contend BoPET mylar foil has a substantial, noninfringing use, specifically, to create holographic displays described in other patents licensed and practiced by UK Defendants. (*Id.* 11:2–7).[3] Plaintiffs fail to identify any evidence to the contrary and consequently fail to show that BoPET mylar foil has no substantial noninfringing uses. *See, e.g.*, *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363 (Fed. Cir. 2006) (noting "burden of proving that there were no substantial non-infringing uses" is on party asserting infringement). Rather, Plaintiffs rely on O'Connell's testimony that the BoPET mylar foil sold by UK Defendants is made "especially clear for us so that we can use it to create amazing, lifelike Musion 3D holographic images." (Ex. D to Resp. First MSJ ("O'Connell Dep., Mar. 11, 2016") at 126, ECF No. 378-1). This statement provides no insight on whether "especially clear" BoPET mylar foil could also be used in non-infringing holographic displays or on whether such uses would be "unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581

---

[3] UK Defendants ask the Court to take judicial notice of various commercial applications of BoPET mylar foil listed in on Wikipedia. (First MSJ 10:12–16). The Court declines this request. *See Castillo–Villagra v. I.N.S.*, 972 F.2d 1017, 1026 (9th Cir. 1992) ("[N]otice may be taken where the fact is 'not subject to reasonable dispute,' either because it is 'generally known within the territorial jurisdiction,' or is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'") (quoting Fed. R. Evid. 201(b)); *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1029 (C.D. Cal. 2015) ("The court agrees with defendants that information appearing on [Wikipedia] is not a proper subject of judicial notice because it is not capable of accurate and ready determination.").

1    F.3d 1317, 1327 (Fed. Cir. 2009).

2         Plaintiffs also point to the report of their expert, Dr. Paul Prucnal ("Dr. Prucnal"),

3    Professor of Electrical Engineering at Princeton University. (Resp. First MSJ 12:22–26).

4    However, Dr. Prucnal offers no opinion on whether BoPET mylar foil has substantial

5    noninfringing uses and instead merely states that "**[i]t is [his] understanding** that the foil

6    provided by the [UK] Defendants is also specially adapted and selected for practicing the

7    inventions claimed in the asserted patents . . . ." (Ex. E to First MSJ at 125, ECF No. 362-7)

8    (emphasis added).

9         Plaintiffs' purported evidence is insufficient to create a genuine dispute of material fact

10   that BoPET mylar foil is "especially made or especially adapted" specifically for use in

11   infringing any of Plaintiffs' claims thereby precluding its use in noninfringing holographic

12   display configurations. *See* 35 U.S.C. § 271(c); *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358,

13   1363 (Fed. Cir. 2012) (finding patent holder failed to meet its burden to prove the lack of

14   substantial non-infringing uses because it "presented no survey, expert, or other evidence").

15   Moreover, as the Supreme Court has recognized, "a finding of contributory infringement is

16   normally the functional equivalent of holding that the disputed article is within the monopoly

17   granted to the patentee." *See Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 441

18   (1984).  The record before the Court does not demonstrate that BoPET mylar foil is within the

19   monopoly granted to Plaintiffs.

20        Accordingly, to the extent UK Defendants seek summary judgment on Plaintiffs'

21   contributory infringement claim as it pertains to BoPET mylar foil, the Motion is GRANTED.

### 3.    *Indirect Infringement: Induced Infringement*

23        UK Defendants also seek summary judgment on Plaintiffs' claims for induced

24   infringement.  "Whoever actively induces infringement of a patent shall be liable as an

25   infringer." 35 U.S.C. § 271(b).  "To prevail on inducement, the patentee must show, first that

1  there has been direct infringement, and second that the alleged infringer knowingly induced

2  infringement and possessed specific intent to encourage another's infringement." *Kyocera*

3  *Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1353–54 (Fed. Cir. 2008); *see also DSU*

4  *Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc).  UK Defendants' only

5  argument regarding induced infringement is that Plaintiffs failed to identify a directly

6  infringing system made, sold, or used in the United States.  For the reasons discussed above

7  regarding the newly disclosed Eyeliner Systems in the United States, the Court DENIES

8  summary judgment as it pertains to induced infringement.

9  **B.  Second MSJ (ECF No. 376)**

10  Turning to the Second Motion for Summary Judgment, UK Defendants argue that

11  Plaintiffs may not assert the doctrine of equivalents because of narrowing amendments made

12  during prosecution. (*See generally* Second MSJ, ECF No. 376).  Specifically, UK Defendants

13  argue that because the Asserted Patents were amended during prosecution "to support

14  patentability," the Supreme Court's decision in *Festo* bars Plaintiffs from asserting "all alleged

15  equivalents" for certain limitations. (*Id.* 3:14–16).

16  However, the Supreme Court in *Festo* did not construe prosecution history estoppel as

17  rigidly as Defendants suggest.  Rather, the Court expressly rejected the Federal Circuit's

18  interpretation of prosecution history estoppel as a "complete bar" in which "the narrowed

19  element must be limited to its strict literal terms." *Festo*, 535 U.S. at 737.  As a result, "a

20  narrowing amendment made to satisfy any requirement of the Patent Act *may* give rise to an

21  estoppel," but such estoppel is not automatic. *See id.* at 736 (emphasis added).  The Supreme

22  Court explained:

23  > A patentee's decision to narrow his claims through amendment may
24  > be presumed to be a general disclaimer of the territory between the
   > original claim and the amended claim. There are some cases,
   > however, where the amendment cannot reasonably be viewed as
25  > surrendering a particular equivalent.  The equivalent may have been

> unforeseeable at the time of the application; the rationale underlying the amendment may bear no more than a tangential relation to the equivalent in question; or there may be some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question. In those cases the patentee can overcome the presumption that prosecution history estoppel bars a finding of equivalence.

*Id.* at 740–41. In short, *Festo* is wholly inconsistent with UK Defendants' proposition that "prosecution history estoppel bars all equivalents, where amendments relating to patentability are made during prosecution of the patent claims." (Second MSJ 3:4–5, ECF No. 376).

With *Festo* in mind, the Court considers the prosecution history of each Asserted Patent in turn to determine first whether the patentees submitted a narrowing amendment for purposes of patentability, and, if so, whether Plaintiffs successfully rebutted application of prosecution history estoppel. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.* (*Festo II*), 344 F.3d 1359, 1366 (Fed. Cir. 2003).

### 1.     *'519 Patent*

UK Defendants first argue that Plaintiffs may not assert the doctrine of equivalents as to the '519 Patent because of a narrowing amendment during prosecution. (Second MSJ 12:2–12). Generally speaking, an amendment made during patent prosecution estops the patentee from recapturing any subject matter disavowed by the amendment. It follows that, for estoppel to arise, there must be some appreciable disavowal of subject matter. *See Festo*, 535 U.S. at 736–37 (distinguishing between "narrowing amendments," which give rise to estoppel, and merely "cosmetic" amendments, which do not). Thus, "[a] narrowing amendment may occur when a preexisting claim limitation is narrowed by amendment or when a new claim limitation is added by amendment." *Medtronic Navigation, Inc. v. Brainlab Medizinische Computersystems GMBH*, 417 F. Supp. 2d 1188, 1195 (D. Colo. 2006), *aff'd* 222 Fed. Appx. 952 (Fed. Cir. 2007).

Here, during prosecution of the '519 Patent and following an indefiniteness rejection, the patentee[4] amended the claim that would eventually become Claim 1 of the '519 Patent.[5] (*See* Exs. A-2, A-3 to Resp. Second MSJ, ECF No. 398-4).  The amended claim is set forth below, with additions underlined and deletions in brackets:

> Apparatus for representing moving images in the background of a stage using an image source, <u>said stage including a floor, a ceiling disposed vertically above said floor and a background disposed therebetween, said apparatus</u> characterised in that a reflecting surface (18) is arranged on [the] <u>said</u> floor (30) of [the] <u>said</u> stage (28) in the central region thereof, a transparent smooth foil (20) extends between [the] <u>said</u> floor (30) and [the] <u>said</u> ceiling (32) at a position which is disposed further forwardly, and the image source is arranged at the ceiling (32) in front of the upper end of the foil (20) which is held there, and is directed on to the reflecting surface (18).

(*See* Ex. A-3 to Resp. Second MSJ).

UK Defendants argue that addition of "disposed vertically above said floor" introduced a "narrowing amendment" that "specif[ied] the relationship between the floor, ceiling, and stage as well as the location of the reflecting surface (on the floor) and the location of the image source (at the ceiling)." (Second MSJ 11:13–21).  Based on this amendment, UK Defendants assert that Plaintiffs are barred "from asserting infringement of the '519 patent against, among other configurations, a 'Reverse Front Setup with Mirror' where the reflecting surface is on the ceiling and the image source is below the floor." (Second MSJ 11:22–24).

The Court finds UK Defendants argument that amendment-based estoppel applies to the

---

[4] Plaintiff Maass is the only named inventor on the '519 Patent. (*See* '519 Patent, Ex. A to SAC at 33, ECF No. 188).

[5] Specifically, the Examiner found "no antecedent for 'the floor', 'the stage' . . ., 'the ceiling', 'the background.'" (Ex. A-2 to Resp. Second MSJ at 22).  The patentee then amended the preamble of the claim to add an antecedent basis for these terms by, *inter alia*, changing the definitive article "the" to "said." (Ex. A-3 to Resp. Second MSJ).  These amendments do not implicate prosecution history estoppel. *See also Slimfold Mfg. Co. v. Kinkead Properties, Inc.*, 626 F. Supp. 493, 498 (N.D. Ga. 1985), *aff'd sub nom. Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 810 F.2d 1113 (Fed. Cir. 1987) (finding amendment during reissue proceeding to provide an antecedent basis for phrase did not alter substantive scope of claims).

'519 Patent unpersuasive because, although amendment occurred, UK Defendants fail to demonstrate either that the amendments narrowed the claim or that they added a new limitation or claim term.  First, the amendments do not introduce a spatial limitation, for the claim already contained one, namely, a floor and a ceiling separated by transparent smooth foil.  Second, the concept of "a ceiling disposed vertically above said floor" is not appreciably narrower than the concept of a ceiling and a floor separated by a transparent smooth foil.  Both the original claim and the amended claim require the following configuration: "a reflecting surface is arranged on said floor (30) of said stage," "the image source is arranged at the ceiling (32)," and "a transparent smooth foil extends between said floor (30) and said ceiling (32)." ('519 Patent 4:63–67, Ex. A to SAC, ECF No. 188); (Ex. A-3 to Resp. Second MSJ).  These amendments do not alter the location of the reflecting surface or the image source.  Moreover, UK Defendants articulate no reason why the amendment was necessary to secure patentability and instead rely on the mere occurrence of an amendment to the claim language.  The existence of an amendment alone does not illuminate why the amendments were necessary for patentability, if they were.

The Court therefore DENIES UK Defendants' Motion for Summary Judgment of non-infringement based on prosecution history estoppel of the '519 Patent.

### 2.    *'212 Patent*

Turning to the '212 Patent, UK Defendants assert that prosecution history estoppel applies to claims 1 and 14 based on a series of narrowing amendments. (Second MSJ 12:14–16).  Prior to any office action, the patentees[6] submitted a Preliminary Amendment to their application.[7] (Ex. B-1 to Resp. Second MSJ, ECF No. 398-4).  During prosecution, the

---

[6] The named inventors of the '212 Patent are Defendant O'Connell and James Rock. (*See* '212 Patent, Ex. B to SAC at 44, ECF No. 188).

[7] UK Defendants do not argue prosecution history estoppel based on this amendment.

Examiner issued a restriction requirement, identifying seven groups of claims. (Ex. B-2 to Resp. Second MSJ, ECF No. 398-4).  An examiner may issue a restriction requirement if he or she believes that the patent application includes multiple inventions that should be separated into multiple applications. *See, e.g.*, *Boehringer Ingelheim Int'l GmbH v. Barr Labs., Inc.*, 592 F.3d 1340, 1354 (Fed. Cir. 2010).  In the case of the '212 Patent, the Examiner identified seven groups of claims based upon their subject matter. (Ex. B-2 to Resp. Second MSJ).  Ultimately, the patentees elected to proceed with Group I, which the Examiner characterized as claims "drawn to the problem of reducing wrinkles on the partially transparent screen, which is solved by tension members, tensioning straps and fixing means." (Ex. B-3 to Resp. Second MSJ, ECF No. 398-4).

Rather than proceed on the Group I claims identified by the Examiner as presented in the Preliminary Amendment, the patentees submitted what Plaintiffs describe as "new" independent claims, two of which are relevant here: claims 7 and 51. (*Id.*).  In drafting claim 7, the patentees rewrote independent claim 1 of the Preliminary Amendment to incorporate limitations from several dependent claims, resulting in addition of the following limitation: "the first and second retention members comprising respective openings therethrough arranged to collocate with respective openings in the screen, wherein the openings are arranged to receive a fixing means so as to clamp the screen between the first and second retention members." (*Id.*). The Examiner rejected claim 7, but stated that claim 12, dependent on claim 7, would be allowable if rewritten in independent form. (Ex. B-4 to Resp. Second MSJ, ECF No. 398-4).  In response, the patentees amended independent claim 7 to include the limitation from dependent claim 12—"wherein at least one of the first and second retention members is attached to tensioning straps"—and cancelled claim 12. (Ex. B-5 to Resp. Second MSJ, ECF No. 398-4). The Examiner subsequently allowed claim 7, (Ex. B-6 to Resp. Second MSJ, ECF No. 398-4), which issued as claim 1, (Ex. B-9 to Resp. Second MSJ, ECF No. 398-4).

1    Similarly, in drafting claim 51, the patentees rewrote independent claim 1 of the

2  Preliminary Amendment to incorporate limitations from other dependent claims and added new

3  limitations.  Among the new limitations, the patentees claimed "a plurality of fixing means pass

4  through the first retention member and through the screen." (Ex. B-3 to Resp. Second MSJ).

5  The Examiner rejected claim 51 as anticipated. (Ex. B-4 to Resp. Second MSJ).  In response,

6  the patentees amended, *inter alia*, dependent claim 61 "to include all of the limitations of its

7  base claim, which was Claim 51." (Ex. B-5 to Resp. Second MSJ).  The Examiner rejected

8  independent claim 61, advising that dependent claim 64 would be allowable if written in

9  independent form. (Ex. B-6 to Resp. Second MSJ).  The only limitation added by claim 64 over

10  claim 61 was "the first and second retention members comprise respective openings

11  therethrough arranged to collocate with openings in respective jaws of clamping members

12  attached to tensioning straps." (Ex. B-5 to Resp. Second MSJ).  The patentees incorporated this

13  additional limitation from claim 64 into claim 61, which was renumbered as claim 60. (Ex. B-7

14  to Resp. Second MSJ, ECF No. 398-4).  Claim 60 was then allowed, (Ex. B-8 to Resp. Second

15  MSJ, ECF No. 398-4), and issued as claim 14. (Ex. B-9 to Resp. Second MSJ).

16    UK Defendants argue that these series of amendments estop Plaintiffs from asserting a

17  doctrine of equivalents theory for infringement of limitations that require "openings" in the

18  retention members to receive a "fixing means" or the use of "tensioning straps" in claims 1 and

19  14 of the '212 Patent. (Second MSJ 12:13–14).  The Federal Circuit's decision in *Honeywell*

20  *International Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004), is instructive

21  in determining the import of this aspect of the prosecution history.  There, the Federal Circuit

22  addressed whether "a dependent claim [that] is merely rewritten into independent form" gives

23  rise to a presumption of surrender. *Id.* at 1141.  The appellant in *Honeywell* argued that

24  "although it surrendered its broader independent claims, there is no presumption of surrender

25  because the scope of the rewritten claims themselves has not been narrowed." *Id.*  The Federal

Circuit disagreed, reasoning:

> It necessarily follows that the presumption of surrender applies only to the amended or newly added limitation; there is no surrender of territory as to unamended limitations that were present in the original claim.  Thus, when a claim is rewritten from dependent into independent form and the original independent claim is cancelled, 'the correct focus is on whether [the] amendment surrendered subject matter.'  Under such circumstances, the surrendered subject matter is defined by the cancellation of independent claims that do not include a particular limitation and the rewriting into independent form of dependent claims that do include that limitation.  Equivalents are presumptively not available with respect to that added limitation.

*Id.* at 1143.

This is exactly what occurred during prosecution of the '212 Patent on two occasions.  First, the patentees voluntarily amended the Group I claims to add limitations or incorporate cancelled dependent claims within a single independent claim.  No reason was given for these voluntary amendments, and the Court may therefore presume the amendment to have been due to patentability.  *See Warner–Jenkinson*, 520 U.S. at 33.  Second, the patentees rewrote independent claims 7 and 61 to incorporate the narrower limitations in dependent claims 12 and 64—"wherein at least one of the first and second retention members is attached to tensioning straps" and "the first and second retention members comprise respective openings therethrough arranged to collocate with openings in respective jaws of clamping members attached to tensioning straps"—and cancelled the dependent claims.  Further, these amendments were made in response to the Examiner's rejection of claims 7 and 61 as anticipated or obvious.  Under *Honeywell*, therefore, a presumption of surrender arises to the above limitations in claims 1 and 14 of the '212 Patent.

Plaintiffs can rebut that presumption by showing "that the alleged equivalent would have been unforeseeable at the time of the narrowing amendment, that the rationale underlying the

narrowing amendment bore no more than a tangential relation to the equivalent in question, or that there was some other reason suggesting that the patentee could not reasonably have been expected to have described the alleged equivalent." *Festo II*, 344 F.3d at 1368 (quoting *Festo*, 535 U.S. at 741). Plaintiffs proffer no evidence that any of these circumstances exists, asserting only that "the record readily discloses that the patentees amended the claims in response to a restriction requirement" and "[s]uch an amendment is not intended to surrender subject matter." (Resp. Second MSJ 22:15–17). This explanation does not explain why the patentees elected to proceed on amended Group I claims rather than the claims as presented in the Preliminary Amendment. In addition, Plaintiffs do not present any arguments to rebut the presumption of surrender associated with the *Honeywell* amendments. Consequently, the Court finds that Plaintiffs have failed to rebut the presumption of surrender and cannot assert infringement either of limitations that require "openings" in the retention members to receive a "fixing means" or the use of "tensioning straps" in claims 1 and 14 of the '212 Patent under the doctrine of equivalents.

Plaintiffs' argument suffers from an additional, more fundamental problem—the fact that Plaintiffs have failed to identify an equivalent in the accused systems that performs the same function as the device claimed in claims 1 and 14 of the '212 Patent. While Plaintiffs dispute UK Defendants' assertion that Plaintiffs are estopped to assert infringement under the doctrine of equivalents, Plaintiffs offer no explanation as to why the doctrine otherwise applies. "To avoid a grant of summary judgment of non-infringement by equivalents, the patentee must present 'particularized evidence and linking argument as to the "insubstantiality of the differences" between the claimed invention and the accused device, or with respect to the "function, way, result" test.'" *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1382–83 (Fed. Cir. 2007) (quoting *PC Connector Sols. LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005) ("[T]he patentee has the burden to present particularized evidence

that links the accused products to the patent on a limitation by limitation basis.").  This Plaintiffs have not done.[8]

Because prosecution history estoppel forecloses Plaintiffs from asserting infringement of the "openings," "fixing means," and "tensioning straps" limitations under the doctrine of equivalents, and because Plaintiffs have not made particularized arguments or proffered evidence concerning equivalence, the Court concludes that Plaintiffs may not assert infringement of these limitations under an equivalents theory.

### 3.    '361 Patent

Finally, UK Defendants present both argument-based and amendment-based theories of estoppel with regard to the '361 Patent.  First, UK Defendants contend that the patentees'[9] arguments during prosecution that "an abrasive coating was 'counter-intuitive' to 'one of ordinary skill in the art' . . . clearly show . . . an intent to surrender alternatives such as neoprene or vulcanized rubber coatings." (Second MSJ 16:10–14).  Second, UK Defendants argue that the patentees' addition of "tensioning straps as the tensioning means, and friction locking buckle arrangements for tensioning the tensioning straps [bar Plaintiffs] . . . from asserting the doctrine of equivalents for these elements." (*Id.* 17:28–18:2).  The Court considers each argument in turn.

---

[8] In their Response, Plaintiffs complain that "Defendants have refused to provide discovery on any other embodiment of the Eyeliner System in the United States other than the BMA Device." (Resp. Second MSJ 13:2–4).  Since filing their original Response, Plaintiffs have now received discovery on five other embodiments of the Eyeliner System. (*See* Mot. for Leave to File 4:3–13, ECF No. 421).  Neither response filed by Plaintiffs articulates how the Eyeliner System infringes the '212 Patent under the doctrine of equivalents.  Indeed, Plaintiffs' original Response states in reference to the BMA Device that "[t]hus far, Plaintiffs have relied on *literal* infringement for [the limitations 'openings,' 'fixing means' and 'tensioning straps.']." (Resp. Second MSJ 22:21).  Accordingly, the instant Order only impacts the embodiments of the Eyeliner System presently known to Plaintiffs.  Plaintiffs may argue an equivalents-based infringement theory regarding the '212 Patent and any new embodiments revealed through discovery.

[9] The named inventors of the '361 Patent are Defendant O'Connell and James Rock. (*See* '361 Patent, Ex. C to SAC at 57, ECF No. 188).

1    *i.*      ***Argument-Based Estoppel—"Abrasive Coating"***

2          As discussed above, "[t]o invoke argument-based estoppel, the prosecution history must

3    evince a clear and unmistakable surrender of subject matter." *Deering*, 347 F.3d at 1326.  This

4    surrender is evaluated under an objective test that asks whether the reasonable competitor

5    would view the argument as having surrendered the subject matter. *Pharmacia & Upjohn Co. v.*

6    *Mylan Pharm., Inc.*, 170 F.3d 1373, 1377 (Fed. Cir. 1999).  Statements by applicants that

7    characterize the unexpected properties of the invention, distinguish the prior art, and identify

8    critical attributes of the invention give rise to argument based estoppel and may limit the scope

9    of available equivalents. *See, e.g.*, *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1368 (Fed.

10   Cir. 2007); *Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305, 1314 (Fed. Cir. 2001); *Bayer AG*

11   *v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1252 (Fed. Cir. 2000); *Pharmacia & Upjohn*,

12   170 F.3d at 1378–79, 1379 n.3 (Fed. Cir. 1999).

13         Here, there has been a "clear and unmistakable" surrender of equivalents of "abrasive

14   coating."  To overcome the Examiner's rejection for obviousness, the patentees emphasized

15   that a crucial feature of the '361 Patent is the use of an "abrasive coating" to solve a problem

16   not addressed in the prior art; "namely, how to tension a polymeric film adequately in order to

17   avoid bowing and corresponding distortions, while preventing ripping of the film by the

18   tensioning mechanism." (Ex. C-5 to Resp. to MSJ at 173, ECF No. 398-4).  In particular, the

19   patentees claimed that "the only disclosure related to the use of an abrasive coating for

20   retaining a foil is [the patentees'] own disclosure" and that "not even ordinary knowledge and

21   skill would be a viable substitute for such a teaching." (Ex. C-3 to Resp. to MSJ at 150, ECF

22   No. 398-4).  Further, according to the patentees, prior art "appears to teach away from the use

23   of an abrasive coating." (*Id.*).  These statements would be understood by an objective observer

24   to have surrendered equivalents to an abrasive coating. *See, e.g.*, *PODS*, 484 F.3d at 1367–68

25   (finding plaintiff's statements during prosecution distinguishing patent claiming "rectangular

shaped frame" from non-rectangular prior art "surrendered any claim to a frame that was not rectangular or four-sided in shape").

This conclusion is supported by the patentees' statements during prosecution of parent application 10/599,553, which ultimately issued as the '212 Patent. *See, e.g.*, *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999) ("When multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain the same claim limitation."); *Jonsson v. Stanley Works*, 903 F.2d 812, 819 (Fed. Cir. 1990) (holding that statements made in prosecution history of parent application are "relevant to an understanding" of the use of the same claim term in related patents). There, the patentees explained that "[t]he applicant's decision to use an abrasive surface on at least one of the retention members was counter-intuitive to the knowledge of one of ordinary skill in the art at the time of the applicant's invention." (Ex. B-5 to Resp. to MSJ at 102). Based on this record, a reasonable competitor could only conclude that the patentees had disclaimed equivalents.

Accordingly, summary judgment of non-infringement based on the doctrine of equivalents is GRANTED as to the "abrasive coating" limitation in the '361 Patent.

### ii.   *Amendment-Based Estoppel—"Tensioning Straps"*

UK Defendants next argue that a series of narrowing amendments during prosecution of the '361 Patent bars Plaintiffs from asserting the doctrine of equivalents for the "tensioning straps" and "friction locking buckle arrangements" limitations. (Second MSJ 17:5–18:2). During prosecution of the '361 Patent, the patentees responded to the Examiner's obviousness rejection by amending claim 1 to include the limitation "the flexible tensioning means comprising tensioning straps and corresponding friction locking buckle arrangements for tightening the tensioning straps." (Ex. C-7 to Resp. Second MSJ at 195, ECF No. 398-4). The patentees also amended the claim that would eventually become claim 10 of the '361 Patent by

adding the limitations "<u>tensioning straps and corresponding friction locking buckle</u>

<u>arrangements for tightening the tensioning straps</u>" and "the tension on the retention members

and the foil being applied <u>by the tensioning straps</u> in the common inclined plane." (*Id.* at 197–

98).

Regarding these amendments, the patentees explained that "the use of tensioning straps

and corresponding friction locking buckle arrangements for tightening the tensioning straps is

not taught or reasonably suggested by the cited art (either individually or in combination)." (*Id.*

at 202)  Further, the patentees stated that "tensioning straps provide significant advantages

over [prior art] in that the tension applied by individual tensioning straps may be adjusted as

needed," thus "offer[ing] marked improvements, particularly in commercial installations which

may often short-notice [sic] adjustments across a range of tensions for properly mounting the

polymeric film." (*Id.*).

Following these amendments, the Examiner filed a Notice of Allowability. (Ex. C-8 to

Resp. Second MSJ at 211, ECF No. 398-4).  Because the amendments narrowed the scope of

claims 1 and 10 to overcome prior art, the patentees presumptively surrendered the territory

between the original claims and the amended claims. *Festo II*, 344 F.3d at 1367.

To rebut this presumption, Plaintiffs argue that "the amendment has nothing more than a

tangential relation to the accused equivalent [turnbuckles, shackles, eyebolts and mole grip

clamps]" because "the reason for amending the claims had nothing to do with the specific ***type***

of tensioning kit." (Supp. Resp. Defs.' Second MSJ 6:9–11); (*see also id.* 5:3).  This argument

is belied by the patentees' statements during prosecution and the Examiner's Notice of

Allowance, which advised that "[p]rior art does not teach the use of a tensioning strap and a

friction locking buckle arrangement." (Ex. C-8 to Resp. Second MSJ at 211, ECF No. 398-4).

Plaintiffs also argue that "there was no way for the inventors to foresee the equivalent in

question." (Supp. Resp. Defs.' Second MSJ 6:11–12).  Plaintiffs offer no evidence on this point

except to point out that "Mr. O'Connell (the defendant here) is himself one of the named inventors on the patents [and] had he foreseen this equivalent, presumably he would have described it in the patent." (*Id.* 6:12–14). Because the standard of foreseeability is an objective one, such an assumption has little, if any, bearing on a *Festo* inquiry. *See Festo II*, 344 F.3d at 1369.

The Court therefore GRANTS summary judgment of non-infringement based on the doctrine of equivalents as to the "tension straps" and "friction locking buckle arrangement" limitations in the '361 Patent.

## IV.   <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Leave, (ECF No. 421), is **GRANTED**.

**IT IS FURTHER ORDERED** that UK Defendants' First and Second Partial Motions for Summary Judgment, (ECF Nos. 362, 376), are **GRANTED in part and DENIED in part** pursuant to the foregoing.

**DATED** this _____ 31 _____ day of January, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court